## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| PLASTRONICS SOCKET PARTNERS, LTD. | § | |
| AND | § | |
| PLASTRONICS H-PIN, LTD. | § | |
| | § | Civil Action No. _____ |
| Plaintiffs, | § | |
| | § | JURY TRIAL DEMANDED |
| vs. | § | |
| | § | |
| DONG WEON HWANG, AND | § | |
| HICON CO. LTD. | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTION

Plaintiff Plastronics Socket Partners, Ltd. ("Plastronics Socket") and Plaintiff Plastronics H-Pin, Ltd. ("Plastronics H-Pin") (collectively, "Plaintiffs") file this Plaintiffs' Original Complaint against Defendants Mr. Dong Weon Hwang ("Hwang") and HiCon Co., Ltd. ("HiCon") (collectively, "Defendants") and allege as follows:

## INTRODUCTION

1.      Plastronics Socket is a leading global provider of technology and innovation for the semiconductor industry, including burn-in sockets and related components.  Plastronics H-Pin is a current assignee of U.S. Patent No. 7,025,602, issued April 11, 2006, entitled "Contact for Electronic Devices" (the "'602 Patent").

2.      Plastronics Socket entered into an assignment agreement and a royalty agreement with Hwang that provides that each of Plastronics Socket and Hwang is an assignee of the '602 Patent.  Through a merger, Plastronics H-Pin and Hwang are the current assignees of the '602 Patent.  Each agreement further provides that Hwang shall not transfer or license the technology

covered by the claims of the '602 Patent without the consent of Plastronics Socket, and now Plastronics H-Pin.

3.    Hwang has breached each of these agreements by transferring or licensing the technology covered by the claims of the '602 Patent to HiCon.  HiCon has directly infringed the '602 Patent by making, using, importing, providing, supplying, distributing, selling, and/or offering for sale contacts for electronic devices, namely the "Hi-CONTACT" pin, the "Hs-CONTACT" pin, and the "Hr-CONTACT" pin (collectively, the "Accused Devices") that are covered by claim 1 of the '602 Patent.  HiCon has induced patent infringement by engaging HighRel, Inc., a corporation organized under the laws of the State of Arizona, having a principal place of business at 1335 North Hobson Street, Gilbert, Arizona 85233 ("HighRel") to be an exclusive distributor throughout the United States of products manufactured by HiCon, including inducing HighRel to make, use, import, provide, supply, distribute, sell, and/or offer for sale contacts for electronic devices, namely the Accused Devices that are covered by claim 1 of the '602 Patent.  Plaintiffs seek damages for patent infringement, breach of contract, and related causes of action further described below.

## THE PARTIES

4.    Plaintiff Plastronics Socket is a limited partnership organized and existing under the laws of the State of Texas, having an assumed name of Plastronics Socket Partners LP, with a principal place of business at 2601 Texas Drive, Irving, Texas 75062.

5.    Plaintiff Plastronics H-Pin is a limited partnership organized and existing under the laws of the State of Texas with a principal place of business at 2601 Texas Drive, Irving, Texas 75062.

6.     Defendant Hwang is a citizen of the Republic of Korea, having a residence at 78-1203, Hyundai Apt., 456, Apgujeong-Dong, Gangnam-Gu Seoul, Republic of Korea 135-788. Hwang can be served with process, by serving in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, in accordance with FED. R. CIV. P. 4(f).

7.     Defendant HiCon is a Korean company with a principal place of business at 9th floor, Star Tower, 37, Sagimakgol-ro 62 beon-gil, Jungwon-gu, Seongnam-si, Gyeonggi-do, Republic of Korea, 13211.   On information and belief, Hwang is the sole owner of HiCon. HiCon can be served with process, by serving in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, in accordance with FED. R. CIV. P. 4(f).

## JURISDICTION AND VENUE

8.     This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271 and 281-285

9.     The Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

10.    This is a further action for breach of contract, tortious interference with business relations, assisting and encouraging, and conspiracy.

11.    The Court has supplemental jurisdiction over the breach of contract, tortious interference with business relations, assisting and encouraging, and conspiracy claims under 28 U.S.C. § 1367 because these claims are so related to the patent infringement claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12.    In the alternative, the Court has original jurisdiction over the breach of contract, tortious interference with business relations, assisting and encouraging, and conspiracy claims

under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum value of $75,000, each of Plaintiff Plastronics Socket and Plaintiff Plastronics H-Pin is a Texas limited partnership, Defendant Hwang is a citizen of the Republic of Korea, and Defendant HiCon is a company of the Republic of Korea.  Hence, diversity jurisdiction exists under 28 U.S.C. § 1332.

13.     Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to each Defendant's substantial business in this forum, including: (i) at least a portion of the actions alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

14.     This Court has personal jurisdiction over Hwang.  Hwang has conducted and continues to conduct business within the State of Texas.  Hwang has directly or indirectly taken actions in Texas giving rise to the present case or controversy, including at least entering into two contracts, which are the subject of this dispute, with Plastronics Socket in Texas, each of which is currently in force between Hwang and Plastronics H-Pin.  On information and belief, Hwang held an H1-B visa to work in the United States, including in the State of Texas.  Hwang was an employee of Plastronics Socket in Texas.

15.     This Court has personal jurisdiction over HiCon.  On information and belief, HiCon has entered into an exclusive agreement with HighRel making HighRel the sole distributor of HiCon products throughout the United States, including the Eastern District of Texas.  HiCon has conducted and continues to conduct business within the State of Texas. HiCon, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ship, distribute, offer for sale, sell, design, manufacture, and advertise products and/or

services that infringe the '602 Patent in the United States, the State of Texas, and the Eastern District of Texas.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because each Defendant is not a resident of the United States and may be sued in this District.

## FACTUAL BACKGROUND

17.     Since 1969, Plastronics Socket has been a leading provider of technology for the semiconductor industry by supporting back-end testing for burn-in test sockets.

18.     A team at Plastronics Socket invented the first open top socket for production burn-in of leadless chip carrier ("LCC") and plastic leaded chip carrier ("PLCC") packages.  For its efforts Plastronics Socket was awarded U.S. Patent No. 4,491,377, issued January 1, 1985, entitled "Mounting Housing for Leadless Chip Carrier".

19.     On February 28, 1989, Plastronics Socket was again rewarded for its innovation when the United States Patent Office ("USPTO") issued U.S. Patent No. 4,808,119 entitled "Zero Insertion Force Mounting Housings for Electronic Device Packages".

20.     Since that time, Plastronics Socket was awarded two (2) more patents for innovation, U.S. Patent Nos. 5,108,302 and 5,419,710.  It was this type of innovation that led Hwang to join Plastronics Socket as an employee on or about October 2004.

21.     Hwang is the listed inventor of the '602 Patent.  The application from which the '602 Patent issued was filed on September 30, 2005 and received U.S. Application No. 11/240,438 (the "'438 Application").   The '438 Application claimed priority to Korean Application No. 10-2004-0079649, filed October 6, 2004 (the "Korean Application").

22.     Prior to filing the '438 Application on September 30, 2005, Hwang and Plastronics Socket executed the royalty agreement on September 24, 2005 with an effective date

of September 21, 2005 (the "Royalty Agreement").  Under the Royalty Agreement, Plastronics Socket agreed to pay for the development of the invention disclosed in the Korean Application (the "H-Pin Project") and worldwide patent rights where needed and Plastronics Socket to be assigned the patent in all worldwide areas jointly with Hwang except Korea.  Further, under the Royalty Agreement, neither Plastronics Socket nor Hwang can grant a license for the H-Pin Project without approval from the other party.  The Royalty Agreement further provides that: in the event that patent royalties are paid by a third party, Plastronics Socket and Hwang will split the royalties 50%/50% respectively; in the event when Hwang works directly for another entity, Plastronics Socket will be entitled to 1.5% of the royalties (Plastronics Socket and Hwang will split royalty 50%/50% respectively) of gross sales of patented products from the H-Pin Project from this entity; if socket is sold with H-Pin contact included, this rate is also 3/2% of socket price.  All royalties due to Plastronics Socket were to be made twice annually within 45 days of the close of books on June 30th and December 31st with calculated results with back data.

23.     On October 4, 2005, Hwang and Plastronics Socket executed an assignment agreement, to which the parties agreed to assign to Plastronics Socket one-half (50%) of the entire right, title and interest in and to the invention in the '438 Application and any letters patent that may issue thereon (the "Assignment Agreement"). The remaining one-half of the entire right, title and interest in and to the invention in the '438 Application and any letters patent that may issue thereon would be assigned to Hwang.

24.     The Assignment Agreement further provides that the Assignees, both Hwang and Plastronics Socket, agree to not transfer any interest in or license the invention disclosed in the '438 Application in the United States and throughout the world, without the written consent of all Assignees, and that each Assignee shall be entitled to accounting for any revenue received,

and for profits, if any, made from the invention, for the term of any patents which may issue for the invention, in the United States and throughout the world.

25.    The '602 Patent was duly and legally issued on April 11, 2006.  The '602 Patent is drawn to a contact for electronic devices (the "H-Pin").   In one embodiment, the H-Pin includes an upper contact pin (110) which includes a contact part (111) having a predetermined shape and contacting a lead of an object to be tested, that is, an integrated circuit (IC) (1), two support protrusions (112, 113) and a body (118); a lower contact pin (130) coupled to the upper contact pin (110) to be orthogonal to the upper contact pin (110); and a spring (190) fitted over a predetermined area between the upper and lower contact pins (110, 130).   The '602 Patent, Abstract.



The '602 Patent, Fig. 5.              The '602 Patent, Fig. 6.



FIG. 7a

The '602 Patent, Fig. 7a.

26.     Claim 1 of the '602 Patent is exemplary and recites:   A contact for electronic devices, comprising: an upper contact pin, comprising: a contact part having a predetermined shape and contacting a lead of an object to be tested, two support protrusions, and a body; a lower contact pin coupled to the upper contact pin to be orthogonal to the upper contact pin; a spring fitted over a predetermined area between the upper and lower contact pins; the body of the upper contact pin including inclined surfaces and hooks provided on an end of the body, and two elastic parts provided to be symmetrical with respect to each other; a first channel defined by the two elastic parts, and providing a space to allow movement of the lower contact pin, when the lower contact pin is coupled to the upper contact pin; and a second channel defined in the body of the upper contact pin to accommodate hooks of the lower contact pin therein such that the lower contact pin is movable, the second channel being in electrical contact with hooks and side contact surfaces of the lower contact pin.  A copy of the '602 Patent is attached as Exhibit A.

27.     On or about October 2006, Plastronics Socket began manufacturing the H-Pin and selling the H-Pin, during which Hwang was an employee.  As an employee of Plastronics Socket,

Hwang was exposed to and gained knowledge of the manufacturing process and the strategy of Plastronics Socket to market and sell the H-Pin, including Plastronics Socket's distribution channels and customers of Plastronics Socket, including HighRel.   HighRel is a customer of Plastronics Socket, who sells the H-Pin to HighRel.   On or about April 2008, Hwang left Plastronics Socket.

28.     On information and belief, on or about April 30, 2008, Hwang founded HiCon to manufacture and sell competing products, including test sockets and the Accused Devices.   On information and belief, Hwang is the Chief Executive Officer ("CEO") of HiCon.   As part of its product offerings, HiCon lists the Accused Devices as the "Hi-CONTACT" pin, the "Hr-CONTACT" pin, and the "Hs-CONTACT" at least on its website at http://hi-connector.com/.   A copy of the home page is attached hereto as Exhibit B.



The "Hi-Contact Concept".  http://hi-connector.com/bbs/board.php?bo_table=sub020&wr_id=1.

*See also* Exhibit C.



The "Hi-CONTACT" pin.  http://hi-connector.com/bbs/board.php?bo_table=sub02&wr_id=2.

*See also* Exhibit D.



The "Hr-CONTACT" pin.  http://hi-connector.com/bbs/board.php?bo_table=sub02&wr_id=3.

*See also* Exhibit E.



The "Hs-CONTACT" pin.  http://hi-connector.com/bbs/board.php?bo_table=sub02&wr_id=4.

*See also* Exhibit F.

29.     On or about December 31, 2012. Plastronics Socket formed Plastronics H-Pin through a divisive merger. As a result, Plastronics H-Pin acquired all assignment rights of the '602 Patent and all rights and obligations of the Royalty Agreement and the Assignment Agreement.  Plastronics H-Pin is now the current assignee of the '602 Patent, along with Hwang, and is the successor-in-interest to Plastronics Socket in each of the Royalty Agreement and the Assignment Agreement.

30.     Since the merger in 2012, Plastronics H-Pin manufactures and sells the H-Pin to Plastronics Socket.  In turn, Plastronics Socket sells the H-Pin to customers alone or included with test sockets.  On information and belief, HiCon is a competitor of Plastronics Socket and Plastronics H-Pin.

31.     On or about August 24, 2017, HighRel contacted Plastronics Socket to inform Plastronics Socket that HighRel had just signed an exclusive agreement to be the sole distributor in the United States for HiCon Company, which includes the Accused Devices.

32.     On information and belief, Hwang has transferred and/or licensed the invention disclosed and covered by the claims of the '602 Patent to HiCon.  Plastronics Socket has not consented to this transfer or license in any way, shape, or form.  Hence, this transfer and/or license is improper.

33.     On information and belief, Hwang and/or HiCon transferred or licensed the invention disclosed and covered by the claims of the '602 Patent to HighRel.  Plaintiffs have not consented to this transfer or license in any way, shape, or form. Hence, this transfer and/or license is improper.

34.     On or about September 20, 2017, counsel for Plaintiffs sent a cease-and-desist letter to Hwang and HiCon, informing Hwang and HiCon of the breach of the Assignment Agreement and the Royalty Agreement.

35.     After a confirmation letter sent to counsel for Plaintiffs on or about October 20, 2017, Hwang and HiCon responded on or about November 11, 2017, in which HiCon and/or Hwang admitted to executing the exclusive distributorship agreement with HighRel to make, use, import, provide, supply, distribute, sell, and/or offer for sale the Accused Devices in the United States.

36.     As a result, Plastronics Socket has lost customers and revenue including at least NXP Semiconductors ("NXP"), Intel Corporation ("Intel"), and others, which are now customers of HiCon.  For example, Plastronics Socket's longtime customer, NXP, periodically purchases over $150,000 worth of test sockets from Plastronics Socket.  As a result of Hwang's, HiCon's,

and/or HighRel's actions, NXP switched to competing products sold and distributed by HiCon and HighRel.  On information and belief, NXP has purchased competing products, including test sockets that include at least one of the Accused Devices from HiCon through HighRel.  Hence, Plastronics Socket lost a potential order from NXP.   As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

37.     On information and belief, the Defendant HiCon, through its CEO Hwang, was well aware of the '602 Patent since  the '602 Patent issued on April 30, 2008.

38.     Neither Plastronics Socket nor Plastronics H-Pin has received any accounting or royalty payment from Hwang as of the filing date of this Original Complaint.

## COUNT I – PATENT INFRINGEMENT BY HICON

39.     Plaintiffs restate and re-allege each of the allegations set forth herein and incorporate them herein.

40.     On April 11, 2006, the '602 Patent entitled "Contact for Electronic Devices" was duly and legally issued by the USPTO.

41.     Plastronics H-Pin owns the '602 Patent, and possesses rights of recovery under the '602 Patent, including the right to sue for infringement, recover damages, and obtain injunctive relief.

42.     Plastronics H-Pin has not licensed or otherwise authorized, explicitly or implicitly, the '602 Patent in any way to HiCon.

43.     HiCon, directly or through intermediaries, has been and is now, among other things, making, using, importing, providing, supplying, distributing, selling, and/or offering for sale apparatuses including, without limitation, the Accused Devices that are covered by claim 1 of the '602 Patent, in the State of Texas, in this judicial district, and elsewhere in the United

States.  In doing so, HiCon infringes one or more claims of the '602 Patent, literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), including claim 1 of the '602 Patent.

44.     For example, each of the Accused Devices directly infringes claim 1 of the '602 Patent because each Accused Device is a contact for electronic devices, comprising: an upper contact pin, comprising: a contact part having a predetermined shape and contacting a lead of an object to be tested, two support protrusions, and a body, i.e., each Accused Device has an upper contact pin, having at least: a contact part having a predetermined shape and contacting a lead of an object to be tested, two support protrusions, and a body; a lower contact pin coupled to the upper contact pin to be orthogonal to the upper contact pin, i.e., each Accused Device has a lower contact pin coupled to the upper contact pin to be orthogonal to the upper contact pin; a spring fitted over a predetermined area between the upper and lower contact pins, i.e., each Accused Device has a spring fitted over a predetermined area between the upper and lower contact pins; the body of the upper contact pin including inclined surfaces and hooks provided on an end of the body, and two elastic parts provided to be symmetrical with respect to each other, i.e., in each Accused Device the body of the upper contact pin includes inclined surfaces and hooks provided on an end of the body, and two elastic parts provided to be symmetrical with respect to each other; a first channel defined by the two elastic parts, and providing a space to allow movement of the lower contact pin, when the lower contact pin is coupled to the upper contact pin, i.e., each Accused Devices has at least a first channel defined by the two elastic parts, and provides a space to allow movement of the lower contact pin, when the lower contact pin is coupled to the upper contact pin; and a second channel defined in the body of the upper contact pin to accommodate hooks of the lower contact pin therein such that the lower contact pin is movable, the second channel being in electrical contact with hooks and side contact

surfaces of the lower contact pin, i.e., each Accused Devices has at least a second channel defined in the body of the upper contact pin to accommodate hooks of the lower contact pin therein such that the lower contact pin is movable, the second channel being in electrical contact with hooks and side contact surfaces of the lower contact pin.  *See* Exhibits A-F.

45.     On information and belief, HiCon has infringed the '602 Patent by inducing others, including at least HighRel and users of the Accused Devices, through its exclusive distribution agreement with HighRel, advertising, publications, instructions, manuals, solicitation of distributors, resellers, and/or agents, and/or technical support to infringe claim 1 of the '602 Patent in violation of 35 U.S.C. § 271(b).  *See* Exhibits B-F.

46.     HiCon aided, instructed, or otherwise acted with the intent to cause acts by HighRel that would constitute direct infringement of the '602 Patent.  On information and belief, HiCon takes active steps to induce infringement of claim 1 of the '602 Patent by others, including HighRel, its customers, authorized resellers, distributors, and users of the Accused Devices, and HiCon takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others, namely HighRel.  Such active steps include, but are not limited to, entering into exclusive distributions agreements, encouraging, advertising (including by internet websites, television, store displays, etc.), promoting, and instructing others to use and/or how to use at least the Accused Devices.  *See* Exhibits B-F.

47.     HiCon knew of the '602 Patent, or showed willful blindness to the existence of the patent, at the time of HighRel's infringement.  On information and belief, Hwang is the CEO of HiCon and is the listed inventor of the '602 Patent and thereby HiCon knew of the '602 Patent.

48.     HiCon knew, or showed willful blindness that the actions of the HighRel would infringe claim 1 of the '602 Patent.  On information and belief, HiCon knows or should know that such activities induce others, including HighRel to directly infringe claim 1 of the '602 Patent, including for example, by encouraging them to use and/or how to use at least the Accused Devices.

49.     HighRel has directly infringed at least one claim of the '602 Patent, namely claim 1 of the '602 Patent.

50.     Plastronics H-Pin has not licensed or otherwise authorized, explicitly or implicitly, the '602 Patent in any way to HighRel.

51.     HighRel, directly or through intermediaries, have been and are now, among other things, making, using, importing, providing, supplying, distributing, selling, and/or offering for sale apparatuses including, without limitation, the Accused Devices that are covered by claim 1 of the '602 Patent, in the State of Texas, in this judicial district, and elsewhere in the United States.  In doing so, HighRel infringes one or more claims of the '602 Patent, literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), including claim 1 of the '602 Patent.

52.     For example, each of the Accused Devices directly infringes claim 1 of the '602 Patent because each Accused Device is a contact for electronic devices, comprising: an upper contact pin, comprising: a contact part having a predetermined shape and contacting a lead of an object to be tested, two support protrusions, and a body, i.e., each Accused Device has an upper contact pin, having at least: a contact part having a predetermined shape and contacting a lead of an object to be tested, two support protrusions, and a body; a lower contact pin coupled to the upper contact pin to be orthogonal to the upper contact pin, i.e., each Accused Device has a lower contact pin coupled to the upper contact pin to be orthogonal to the upper contact pin; a

spring fitted over a predetermined area between the upper and lower contact pins, i.e., each Accused Device has a spring fitted over a predetermined area between the upper and lower contact pins; the body of the upper contact pin including inclined surfaces and hooks provided on an end of the body, and two elastic parts provided to be symmetrical with respect to each other, i.e., in each Accused Device the body of the upper contact pin includes inclined surfaces and hooks provided on an end of the body, and two elastic parts provided to be symmetrical with respect to each other; a first channel defined by the two elastic parts, and providing a space to allow movement of the lower contact pin, when the lower contact pin is coupled to the upper contact pin, i.e., each Accused Devices has at least a first channel defined by the two elastic parts, and provides a space to allow movement of the lower contact pin, when the lower contact pin is coupled to the upper contact pin; and a second channel defined in the body of the upper contact pin to accommodate hooks of the lower contact pin therein such that the lower contact pin is movable, the second channel being in electrical contact with hooks and side contact surfaces of the lower contact pin, i.e., each Accused Devices has at least a second channel defined in the body of the upper contact pin to accommodate hooks of the lower contact pin therein such that the lower contact pin is movable, the second channel being in electrical contact with hooks and side contact surfaces of the lower contact pin. *See* Exhibits A-F.

53. On information and belief, HiCon contributes to the infringement of claim 1 of the '602 Patent by others, including HighRel, its customers, authorized resellers, and distributors, and users of the Accused Devices. Acts by HiCon that contribute to the infringement by others include, but are not limited to, the sale, offer for sale, and/or import by HiCon of at least the Accused Devices for use in the claimed inventions of the '602 Patent, which are not staple articles or capable of substantial non-infringing uses, and constitute a material part of the

inventions claimed in claim 1 of the '602 Patent.  HiCon knew or should have known that at least the Accused Devices were especially made or adapted for use in an infringement of claim 1 of the '602 Patent.

54.     HiCon undertook and continue infringing actions despite that such activities infringe the '602 Patent, which has been duly issued by the USPTO, and is presumed valid.  For example, since at least the filing of this action, HiCon has been aware that its actions constituted and continue to constitute infringement of the '602 Patent, and that the '602 Patent is valid. Despite its knowledge that its actions constitute infringement, HiCon has continued its infringing activities in a willful, wanton, malicious, bad-faith, deliberate, consciously wrongful or flagrant manner, which is an egregious case of culpable behavior.  As such, HiCon willfully infringes the '602 Patent.

55.     Plastronics H-Pin has been injured and has been caused significant financial damage as a direct and proximate result of the HiCon's infringement of the '602 Patent.

56.     Unless enjoined by this Court, HiCon will continue to infringe the '602 Patent, and thus cause irreparable injury and damage to Plastronics H-Pin.

57.     Plastronics H-Pin is entitled to recover from HiCon the damages sustained by Plastronics H-Pin as a result of the HiCon's wrongful acts in an amount subject to proof at trial.

58.     Plastronics H-Pin has been irreparably injured and is entitled to seek injunctive relief, in addition to all other legal and equitable remedies.

**COUNT II – BREACH OF CONTRACT, THE ROYALTY AGREEMENT, BY HWANG**

59.     Plaintiffs restate and re-allege each of the allegations set forth herein and incorporate them herein.

60.     From on or about September 21, 2005 to on or about December 31, 2012, the Royalty Agreement between Plastronics Socket and Hwang, in which each party agrees not to license the invention of the '602 Patent without the consent of Plastronics Socket, constituted a valid and enforceable contract between the parties.

61.     From on or about September 21, 2005 to on or about December 31, 2012, Plastronics Socket fully performed, tendered performance, or was excused from performing its obligations under the contract.

62.     From on or about September 21, 2005 to on or about December 31, 2012, Plastronics Socket, a party to the Royalty Agreement, is a proper party to sue for breach of contract by Hwang during this time period.

63.     Hwang, individually or through an intermediary, breached the Royalty Agreement by licensing the invention of the '602 Patent to HiCon without obtaining the consent of Plastronics Socket from on or about April 30, 2008 to on or about December 31, 2012.

64.     Hwang, individually or through an intermediary, further breached the Royalty Agreement by not paying any royalties to Plastronics Socket as prescribed by the Royalty Agreement from on or about September 21, 2005 to on or about December 31, 2012.

65.     From on or about September 21, 2005 to on or about December 31, 2012, Hwang's breaches have caused injury to Plastronics Socket due to lost revenue, lost royalties, lost profits, lost business relationships, and related costs and expenses.

66.     On or about December 31, 2012, Plastronics H-Pin, through a divisive merger, was allocated the '602 Patent and the Royalty Agreement and became a party to the Royalty Agreement by operation of law.

67.     From on or about December 31, 2012 to present, the Royalty Agreement between Plastronics H-Pin and Hwang, in which each party agrees not to license the invention of the '602 Patent without the consent of Plastronics H-Pin, constitutes a valid and enforceable contract between the parties.

68.     From on or about December 31, 2012 to present, Plastronics H-Pin fully performed, tendered performance, or was excused from performing its obligations under the contract.

69.     From on or about December 31, 2012 to present, Plastronics H-Pin, a party to the Royalty Agreement, is a proper party to sue for breach of contract by Hwang during this time period.

70.     Hwang, individually or through an intermediary, breached the Royalty Agreement by licensing the invention of the '602 Patent to HiCon without obtaining the consent of Plastronics Socket from on or about December 31, 2012 to present.

71.     Hwang, individually or through an intermediary, breached the Royalty Agreement again by licensing the invention of the '602 Patent to HighRel without obtaining the consent of Plastronics H-Pin.

72.     Hwang, individually or through an intermediary, further breached the Royalty Agreement by not paying any royalties to Plastronics H-Pin as prescribed by the Royalty Agreement from on or about December 31, 2012 to present.

73.     Hwang's breaches have caused injury to Plastronics Socket and Plastronics H-Pin due to lost revenue, lost royalties, lost profits, lost business relationships, and related costs and expenses.  For example, Plastronics Socket has lost customers and revenue including at least NXP, Intel, and others, which are now customers of HiCon.  For example, Plastronics Socket's

longtime customer, NXP, periodically purchases over $150,000 worth of test sockets from Plastronics Socket.  As a result of Hwang's, HiCon's, and/or HighRel's actions, NXP switched to competing products sold and distributed by HiCon and HighRel.  On information and belief, NXP has purchased competing products, including test sockets that include at least one of the Accused Devices from HiCon through HighRel.  Hence, Plastronics Socket lost a potential order from NXP.  As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

74.     Hwang is liable for all damages due to his breaches of contract.

### COUNT III – BREACH OF CONTRACT, THE ASSIGNMENT AGREEMENT, BY HWANG

75.     Plaintiffs restate and re-allege each of the allegations set forth herein and incorporate them herein.

76.     From on or about October 4, 2005 to on or about December 31, 2012, the Assignment Agreement between Plastronics Socket and Hwang, in which each party agrees not to transfer any interest in or license the invention of the '602 Patent without the written consent of all assignees, including Plastronics Socket, constitutes a valid and enforceable contract between the parties.

77.     From on or about October 4, 2005 to on or about December 31, 2012, Plastronics Socket fully performed, tendered performance, or was excused from performing its obligations under the contract.

78.     From on or about October 4, 2005 to on or about December 31, 2012, Plastronics Socket, a party to the Assignment Agreement, is a proper party to sue for breach of contract during this time period.

79.     Hwang, individually or through an intermediary, breached the Assignment Agreement by transferring an interest in and/or licensing the invention of the '602 Patent to HiCon without obtaining the written consent of Plastronics Socket from on or about April 30, 2008 to on or about December 31, 2012.

80.     Hwang, individually or through an intermediary, further breached the Assignment Agreement by not providing an accounting to Plastronics Socket as prescribed by the Assignment Agreement from on or about October 4, 2005 to on or about December 31, 2012.

81.     From on or about October 4, 2005 to on or about December 31, 2012, Hwang's breaches have caused injury to Plastronics Socket due to lost revenue, lost royalties, lost profits, lost business relationships, and related costs and expenses.

82.     On or about December 31, 2012, Plastronics H-Pin, through a divisive merger, was allocated the '602 Patent and the Assignment Agreement and became a party to the Assignment Agreement by operation of law.

83.     From on or about December 31, 2012 to present, the Assignment Agreement between Plastronics H-Pin and Hwang, in which each party agrees not to transfer any interest in or license the invention of the '602 Patent without the written consent of all assignees, including Plastronics H-Pin, constitutes a valid and enforceable contract between the parties.

84.     From on or about December 31, 2012 to present, Plastronics H-Pin fully performed, tendered performance, or was excused from performing its obligations under the contract.

85.     From on or about December 31, 2012 to present, Plastronics H-Pin, a party to the Assignment Agreement, is a proper party to sue for breach of contract during this time period.

86.     Hwang, individually or through an intermediary, breached the Assignment Agreement by transferring an interest in and/or licensing the invention of the '602 Patent to HiCon without obtaining the written consent of Plastronics H-Pin from on or about December 31, 2012 to present.

87.     Hwang, individually or through an intermediary, further breached the Assignment Agreement by not providing an accounting to Plastronics H-Pin as prescribed by the Assignment Agreement from on or about December 31, 2012 to present.

88.     Hwang, individually or through an intermediary, breached the Assignment Agreement again by transferring an interest in and/or licensing the invention of the '602 Patent to HighRel without obtaining the written consent of Plastronics H-Pin.

89.     Hwang's breaches have caused injury to Plastronics Socket and Plastronics H-Pin due to lost revenue, lost business relationships, and related costs and expenses.  For example, Plastronics Socket has lost customers and revenue including at least NXP, Intel, and others, which are now customers of HiCon.  For example, Plastronics Socket's longtime customer, NXP, periodically purchases over $150,000 worth of test sockets from Plastronics Socket.  As a result of Hwang's, HiCon's, and/or HighRel's actions, NXP switched to competing products sold and distributed by HiCon and HighRel.  On information and belief, NXP has purchased competing products, including test sockets that include at least one of the Accused Devices from HiCon through HighRel.  Hence, Plastronics Socket lost a potential order from NXP.  As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

90.     Hwang is liable for all damages due to his breaches of contract.

**COUNT IV – TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS BY HICON**

91.    Plaintiffs restate and re-allege each of the allegations set forth herein and incorporate them herein.

92.    On information and belief, there was a reasonable probability that Plastronics Socket would have continued a business relationship with HighRel, among others.  HiCon, through its CEO Hwang, had knowledge of the continuing relationship between Plastronics Socket and HighRel, in which HighRel would periodically purchase test sockets from Plastronics Socket that include at least one of the Accused Devices, thereby forming a contract between Plastronics Socket and HighRel.

93.    HiCon intentionally interfered with the relationship between Plastronics Socket and HighRel.  HiCon, through its CEO Hwang, had knowledge of the continuing relationship between Plastronics Socket and HighRel and interfered by negotiating and entering into an exclusive distribution agreement with HighRel to sell to HighRel competing products, including test sockets which include at least one of the Accused Devices.

94.    HiCon's conduct was independently tortious or unlawful due to its infringement of the '602 Patent.

95.    HiCon's interference proximately caused Plastronics Socket and Plastronics H-Pin injury.  On information and belief, the exclusive distribution agreement between HiCon and HighRel obligates HighRel to distribute competing products of HiCon, including test sockets that include the Accused Devices, instead of Plastronics Socket's products.  As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

96.    Plastronics Socket incurred actual damages or loss in the form of lost revenue, lost customers, lost profits, and/or business relationships.  For example, Plastronics Socket has

lost customers and revenue including at least NXP, Intel, and others, which are now customers of HiCon.  For example, Plastronics Socket's longtime customer, NXP, periodically purchases over $150,000 worth of test sockets from Plastronics Socket.  As a result of Hwang's, HiCon's, and/or HighRel's actions, NXP switched to competing products sold and distributed by HiCon and HighRel.   On information and belief, NXP has purchased competing products, including test sockets that include at least one of the Accused Devices from HiCon through HighRel.  Hence, Plastronics Socket lost a potential order from NXP.   As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

### COUNT V – ASSISTING OR ENCOURAGING BY HWANG

97.     Plaintiffs restate and re-allege each of the allegations set forth herein and incorporate them herein.

98.     HiCon committed a tort, namely tortious interference with prospective relations as described in COUNT IV above.

99.     Hwang had knowledge that HiCon's conduct constituted a tort, namely tortious interference with prospective relations as described in COUNT IV above.  Hwang knew of the ongoing relationship between Plastronics Socket and HighRel from his knowledge and experience gained as an employee at Plastronics Socket.  Hwang knew that HiCon's distribution agreement with HighRel to distribute, make, use, import, provide, supply, sell, and/or offer for sale competing products, including test sockets that include at least one of the Accused Devices, would interfere with the ongoing relationship between Plastronics Socket and HighRel.

100.    Hwang had the intent to assist HiCon in committing the tort, namely tortious interference with prospective relations as described in COUNT IV above.  Hwang intended to interfere with the ongoing relationship between Plastronics Socket and HighRel by improperly

transferring and/or licensing the invention claimed by the '602 Patent to HiCon in order for HiCon to improperly enter into the exclusive distribution agreement with HighRel.

101.    Hwang gave HiCon assistance or encouragement, by improperly transferring and/or licensing the invention claimed by the '602 Patent to HiCon.

102.    Hwang's assistance or encouragement was a substantial factor in causing the tort, namely tortious interference with prospective relations as described in COUNT IV above because the improper transferring and/or licensing of the invention claimed by the '602 Patent to HiCon was a necessary prerequisite to HiCon improperly entering into the exclusive distribution agreement with HighRel.

103.    Plastronics Socket incurred actual damages or loss in the form of lost revenue, lost customers, lost profits, and/or business relationships.  For example, Plastronics Socket has lost customers and revenue including at least NXP, Intel, and others, which are now customers of HiCon.  For example, Plastronics Socket's longtime customer, NXP, periodically purchases over $150,000 worth of test sockets from Plastronics Socket.  As a result of Hwang's, HiCon's, and/or HighRel's actions, NXP switched to competing products sold and distributed by HiCon and HighRel.  On information and belief, NXP has purchased competing products, including test sockets that include at least one of the Accused Devices from HiCon through HighRel.  Hence, Plastronics Socket lost a potential order from NXP.  As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

## COUNT VI – CONSPIRACY BY HWANG

104.    Plaintiffs restate and re-allege each of the allegations set forth herein and incorporate them herein.

105.    Hwang was a member of a combination of two or more persons or entities, namely Hwang, HiCon, and HighRel.

106.    The object of the combination of Hwang, HiCon, and HighRel was to accomplish: (1) an unlawful purpose, namely to commit patent infringement as described in COUNT I above, breaches of contract as described in COUNTS II and III above, and/or tortious interference with prospective relations as described in COUNT IV above; or (2) a lawful purpose by unlawful means, namely to improperly enter into the exclusive distribution agreement[1,2] by committing patent infringement as described in COUNT I above, breaches of contract as described in COUNTS II and III above, and/or tortious interference with prospective relations as described in COUNT IV above.

107.    Hwang, HiCon, and HighRel had a meeting of the minds on the object or course of action.  Hwang and HiCon had a meeting of the minds to improperly transfer and/or license of the invention claimed by the '602 Patent to HiCon.  HiCon and HighRel had a meeting of the minds to improperly enter into the exclusive distribution agreement to distribute, make, use, import, provide, supply, sell, and/or offer for sale competing products, including test sockets that include at least one of the Accused Devices in the United States.  Hwang, HiCon, and HighRel had a meeting of the minds to first improperly transfer and/or license of the invention claimed by the '602 Patent to HiCon in order to then improperly enter into the exclusive distribution agreement with HighRel.

108.    One of the members committed an unlawful, overt act to further the object or course of action.  HiCon committed patent infringement as described COUNT I above, HighRel committed patent infringement as described in COUNT I above, Hwang committed breaches of

---

[1] That is to say that the act of entering into a contract in general is not in and of itself unlawful.
[2] Plaintiffs do not admit in any way, shape, or form that the exclusive distribution agreement between HiCon and HighRel is to any extent proper, or not null and void.

contract as described in COUNTS II and III above, HiCon committed tortious interference with prospective relations as described in COUNT IV, and/or Hwang assisted or encouraged HiCon in committing a tort as described in COUNT V above.

109.    Plastronics Socket and Plastronics H-Pin suffered injury as a proximate result of the wrongful acts by Hwang at least in the form of damages or loss in the form of lost revenue, lost customers, lost profits, and/or business relationships.  For example, Plastronics Socket has lost customers and revenue including at least NXP, Intel, and others, which are now customers of HiCon.  For example, Plastronics Socket's longtime customer, NXP, periodically purchases over $150,000 worth of test sockets from Plastronics Socket.  As a result of Hwang's, HiCon's, and/or HighRel's actions, NXP switched to competing products sold and distributed by HiCon and HighRel.   On information and belief, NXP has purchased competing products, including test sockets that include at least one of the Accused Devices from HiCon through HighRel.  Hence, Plastronics Socket lost a potential order from NXP.   As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

### COUNT VII – CONSPIRACY BY HICON

110.    Plaintiffs restate and re-allege each of the allegations set forth herein and incorporate them herein.

111.    HiCon was a member of a combination of two or more persons or entities, namely Hwang, HiCon, and HighRel.

112.    The object of the combination of Hwang, HiCon, and HighRel was to accomplish: (1) an unlawful purpose, namely to commit patent infringement as described in COUNT I above, breaches of contract as described in COUNTS II and III above, and/or tortious interference with prospective relations as described in COUNT IV above; or (2) a lawful purpose by unlawful

means, namely to improperly enter into the exclusive distribution agreement[3,4] by committing

patent infringement as described in COUNT I above, breaches of contract as described in

COUNTS II and III above, and/or tortious interference with prospective relations as described in

COUNT IV above.

113.    Hwang, HiCon, and HighRel had a meeting of the minds on the object or course

of action.  HiCon and Hwang had a meeting of the minds to improperly transfer and/or license of

the invention claimed by the '602 Patent to HiCon.  HiCon and HighRel had a meeting of the

minds to improperly enter into the exclusive distribution agreement to distribute, make, use,

import, provide, supply, sell, and/or offer for sale competing products, including test sockets that

include at least one of the Accused Devices in the United States.  Hwang, HiCon, and HighRel

had a meeting of the minds to first improperly transfer and/or license of the invention claimed by

the '602 Patent to HiCon in order to then improperly enter into the exclusive distribution

agreement with HighRel.

114.    One of the members committed an unlawful, overt act to further the object or

course of action.  HiCon committed patent infringement as described COUNT I above, HighRel

committed patent infringement as described in COUNT I above, Hwang committed breaches of

contract as described in COUNTS II and III above, HiCon committed tortious interference with

prospective relations as described in COUNT IV, and/or Hwang assisted or encouraged HiCon in

committing a tort as described in COUNT V above.

115.    Plastronics Socket and Plastronics H-Pin suffered injury as a proximate result of

the wrongful acts by HiCon at least in the form of damages or loss in the form of lost revenue,

lost customers, lost profits, and/or business relationships.  For example, Plastronics Socket has

---

[3] That is to say that the act of entering into a contract in general is not in and of itself unlawful.
[4] Plaintiffs do not admit in any way, shape, or form that the exclusive distribution agreement between HiCon and HighRel is to any extent proper, or not null and void.

lost customers and revenue including at least NXP, Intel, and others, which are now customers of HiCon.  For example, Plastronics Socket's longtime customer, NXP, periodically purchases over $150,000 worth of test sockets from Plastronics Socket.  As a result of Hwang's, HiCon's, and/or HighRel's actions, NXP switched to competing products sold and distributed by HiCon and HighRel.   On information and belief, NXP has purchased competing products, including test sockets that include at least one of the Accused Devices from HiCon through HighRel.  Hence, Plastronics Socket lost a potential order from NXP.   As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

## EXCEPTIONAL CASE

116.    Plaintiffs restate and re-allege each of the allegations set forth herein and incorporate them herein.

117.    This is an exceptional case warranting an award of attorney's fees to Plastronics H-Pin under 35 U.S.C. § 285.

118.    HiCon has willfully and deliberately infringed, induced others to infringe, and/or contributed to the infringement of the '602 Patent with full knowledge and wanton disregard of Plastronics H-Pin rights thereunder, rendering this an "exceptional" case within the meaning of 35 U.S.C. § 285.

119.    Plastronics H-Pin has incurred attorneys' fees, costs, and expenses in the prosecution of this action. Pursuant to 35 U.S.C. § 285, Plastronics H-Pin is entitled to recover its reasonable and necessary fees and expenses.

## EXEMPLARY DAMAGES

120.    Plaintiffs restate and re-allege each of the allegations set forth herein and incorporate them herein.

121.     Pursuant to Chapter 41 of the Texas Civil Practice & Remedies Code, Plastronics Socket seeks exemplary damages from Hwang and/or HiCon, as Hwang's and/or HiCon's actions were grossly negligent and/or malicious, and were of such a nature and character, and committed with such a degree of culpability, as to justify the award of exemplary damages. Indeed, Hwang's and/or HiCon's conduct here offends the public sense of justice and propriety, and justice will be well served by the imposition of exemplary damages against Hwang and/or HiCon.

122.     Hwang had intimate and personal knowledge of the business relationships of Plastronics Socket, including its existing relationship with HighRel due to his employment with Plastronics Socket.

123.     Hwang's assistance, encouragement, and/or conspiracy to interfere with this business relationship with HighRel, when viewed objectively from Hwang's standpoint at the time of such interference, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plastronics Socket, namely the risk of loss of business, profits, revenue, and customers to Plastronics Socket, which did occur.

124.     Hwang had actual, subjective awareness of this risk due to his intimate and personal knowledge of the business relationships of Plastronics Socket, but proceeded with conscious indifference to the rights of Plastronics Socket.

125.     Hwang further had a specific intent to cause substantial injury or harm to Plastronics Socket by assisting, encouraging, and/or conspiring to interfere with the business relationships of Plastronics Socket, specifically usurping a longtime customer of Plastronics Socket, namely HighRel, for his own financial gain.   As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

126.    HiCon, through its CEO Hwang, had intimate and personal knowledge of the business relationships of Plastronics Socket, including its relationship with HighRel due to his employment with Plastronics Socket.

127.    HiCon's interference and conspiracy to interfere, through its CEO Hwang, with this existing business relationship with HighRel, when viewed objectively from HiCon's standpoint at the time of such interference, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plastronics Socket, namely the risk of loss of business, profits, revenue, and customers to Plastronics Socket, which did occur.

128.    HiCon, through its CEO Hwang, had actual, subjective awareness of this risk due to its intimate and personal knowledge, via its CEO Hwang, of the existing business relationships of Plastronics Socket, but proceeded with conscious indifference to the rights of Plastronics Socket.

129.    HiCon, through its CEO Hwang, further had a specific intent to cause substantial injury or harm to Plastronics Socket by interfering and conspiring to interfere with the existing business relationships of Plastronics Socket, specifically usurping a longtime customer of Plastronics Socket, namely HighRel, for its own financial gain.  As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

## ATTORNEY'S FEES UNDER TEXAS CIVIL PRACTICE AND REMEDIES CODE 38

130.    Plaintiffs restate and re-allege each of the allegations set forth herein and incorporate them herein.

131.    Section 38.001 of the Texas Civil Practice & Remedies Code provides that "a person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for … (8) an oral or written contract."

132.     It is necessary for Plaintiffs to be represented by attorney to pursue the remedies sought in this complaint.   The party breaching the contracts at issue is liable for Plaintiffs' attorney's fees in the prosecution of this action.   Demand and presentment of a claim for attorney's fees is hereby made.

## DEMAND FOR TRIAL BY JURY

133.     Plaintiffs specifically request a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

134.     WHEREFORE, Plaintiffs respectfully request that judgment be entered in its favor and against Defendants and that the Court grant the following relief to Plaintiffs:

A.     Judgment that HiCon has infringed the '602 Patent;

B.     That the Court award general and special damages to Plastronics H-Pin for HiCon's infringing activities, which include but are not limited to Plastronics H-Pin a reasonable royalty;

C.     Judgment that this case is exceptional;

D.     That this Court award Plastronics H-Pin increased damages in an amount not less than three times the amount of damages found by the jury or assessed by this Court, for HiCon's willful infringement pursuant to 35 U.S.C. § 285;

E.     That the Court enter a preliminary and thereafter a permanent injunction against HiCon, its officers, directors, agents, servants, employees, parent companies, affiliates, subsidiaries, divisions, branches, attorneys, representatives, and all others acting in concert or privity with them, from infringement of the '602 Patent;

F.      That the Court enter a preliminary and thereafter a permanent injunction against HiCon's active inducements of infringement and/or contributory infringements of the '602 Patent by others;

G.      That this Court enter an order directing HiCon to deliver to Plastronics H-Pin, and serve upon Plastronics H-Pin's counsel, within thirty (30) days after entry of the order of injunction, a report setting forth the manner and form in which HiCon has complied with each injunction;

H.      That this Court award pre-judgment and post-judgment interest;

I.      Judgment that Hwang has breached the Royalty Agreement;

J.      Judgment that Hwang has breached the Assignment Agreement;

K.      That this Court order Hwang to provide an accounting to Plastronics Socket and Plastronics H-Pin of any and all revenue received for improperly transferring and/or licensing the invention claimed by the '602 Patent;

L.      That this Court award general and special damages to Plastronics Socket and Plastronics H-Pin for Hwang's breaches of contract;

M.      That this Court award Plaintiffs' costs and attorney fees incurred in this action;

N.      That this Court award general and special damages for HiCon's tortious interference with business relations;

O.      That this Court award general and special damages for Hwang's assistance or encouragement;

P.      That this Court award general and special damages for conspiracy by Hwang;

Q.      That this Court award general and special damages for conspiracy by HiCon;

R.      Judgment that any Defendant who did not directly commit the underlying breach of contract or tort are vicariously liable for the acts of the other Defendant described herein or share, jointly and severally or otherwise, in liability and the damages owed to any of the Plaintiffs based on the theories pleaded herein;

S.      That this Court award exemplary damages under chapter 41 of the Texas Civil Practice and Remedies Code that are not capped by chapter 41 of the Texas Civil Practice and Remedies Code;

T.      That this Court award such further and other relief and the Court may deem just and proper.

Date:   January 19, 2018                    Respectfully submitted,

                                            */s/ Katarzyna Brozynski*_____
                                            Katarzyna Brozynski
                                            Texas State Bar No. 24036277
                                            kasia.brozynski@strasburger.com
                                            Antonio S. Devora
                                            Texas State Bar No. 24074133
                                            antonio.devora@strasburger.com
                                            STRASBURGER & PRICE, LLP
                                            901 Main Street, Suite 6000
                                            Dallas, Texas 75201
                                            (214) 651-4300 Telephone
                                            (214) 651-4330 Fax