IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PLASTRONICS SOCKET PARTNERS, LTD. ET AL, | § § § § | |
| Plaintiff, | § § | Case No. 2:18-cv-00014-JRG-RSP |
| v. | § § | |
| DONG WEON HWANG ET AL, | § § | |
| Defendant. | § § | |

## REPORT AND RECOMMENDATION

This is a patent infringement case brought by Plaintiffs Plastronics Socket Partners, Ltd. and Plastronics H-Pin, Ltd. ("Plastronics") against Defendants Dong Weon Hwang, HiCon Co., Ltd., and HiCon Company ("Defendants"). Defendants have, in turn, brought counterclaims against Plastronics for infringement of U.S. Patent No. 7,025,602 ("'602 Patent"), promissory estoppel, and unjust enrichment.[1] Defs.' Am. Answer and Countercl. [Dkt. #84]. Now before the Court is Plastronics' Motion to Dismiss these counterclaims for failure to state a claim upon which relief can be granted under Rule 12(b)(6) [Dkt. #92].[2]

---

[1] While this Report and Recommendation addresses counterclaims brought Dong Weon Hwang, HiCon Co., Ltd., and HiCon Company, the Report and Recommendation will refer to Dong Weon Hwang, HiCon Co., Ltd., and HiCon Company as Defendants rather than Counter-Plaintiffs.

[2] Defendants also filed a Response [Dkt. #105], Plastronics filed a Reply [Dkt. #111], and Defendants filed a Sur-Reply [Dkt. #114].

After consideration of the briefing, the Court recommends that this Motion to Dismiss be **GRANTED IN PART**. The Motion should be **GRANTED** to dismiss counterclaims for patent infringement of the '602 Patent but **DENIED** in all other respects.

## I. Defendant Hwang's Counterclaim for Patent Infringement of the '602 Patent Should be Dismissed under Rule 12(b)(6).

Hwang entered into an Assignment and Agreement with Plastronics Socket Partners, Ltd., which assigned to Hwang and Plastronics Socket Partners, Ltd. equal ownership shares in the application that would result in the '602 Patent. *See* Assignment and Agreement [Dkt. #105-1]. This Assignment and Agreement states that

> [t]he Assignees do hereby jointly agree to not transfer any interest in or license the invention disclosed in said application, in the United States and throughout the World, without the written consent of all Assignees, and that each Assignee shall be entitled to accounting for any revenue received, and for profits, if any, made from the invention, for the term of any patents which may issue for the invention, in the United States and throughout the World.

*Id*. at ¶ 5. Plastronics contends that Plastronics Socket Partners, Ltd. transferred its rights in the '602 Patent to Plastronics H-Pin, Ltd. by operation of law through a divisive merger and that it therefore did not violate this provision of the Assignment and Agreement. Pls.' Mot. at 4–6. Hwang contends that the transfer of patent rights violated the provision prohibiting transfers and that Plastronics H-Pin therefore does not hold any ownership rights in the '602 Patent. Defs.' Resp. at 3.

Hwang contends that this case, which involves an allegation of improper assignment of patent ownership, can be analogized to other cases where entities have attempted to

transfer or convey patent licenses. Defs.' Mot. at 4–5. Questions regarding the assignability of a patent license are controlled by federal law. *Vapor Point LLC v. Moorhead*, 832 F.3d 1343, 1347 (Fed. Cir. 2016) (citing *PPG Industries, Inc. v. Guardian Industries Corp.*, 597 F.2d 1090, 1093 (6th Cir. 1979)). The default rule under federal law is that a patent license is not transferable unless the license agreement explicitly allows for such a transfer. *Unarco Industries, Inc. v. Kelley Co., Inc.*, 465 F.2d 1303, 1306 (7th Cir. 1972). Hwang argues that the assignment of patent ownership can be analogized to the assignment of a license and that a similar default rule should apply for the assignment of patent ownership, making rights unassignable here unless the Assignment and Agreement explicitly allows for such a transfer.

The effort to analogize the law regarding licensing to the law regarding assignment of ownership is unconvincing. The restrictions that are in place for patent licensing are largely present to protect the rights of patent owners and to preserve the value of patent rights. *See In re CFLC, Inc.*, 89 F.3d 673, 679 (9th Cir. 1996) (stating that allowing free assignability of patent licenses "would undermine the reward that encourages invention because a party seeking to use the patented invention could either seek a license from the patent holder or seek an assignment of an existing patent license from a licensee"). Imposing similar restrictions upon assignments of patent ownership would make that ownership less transferable, which would actually decrease the value of patent rights. Further, the Federal Circuit has stated that "state law, not federal law, typically governs patent ownership." *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed. Cir.

2008). Because this case involves an assignment of patent ownership, preemption does not apply, and state law will apply rather than federal law.

Under Texas law, "'[m]erger' means . . . the division of a domestic entity into two or more new domestic entities or other organizations or into a surviving domestic entity and one or more new domestic or foreign entities or non-code organizations. . . ." Tex. Bus. Orgs. Code Ann. § 1.002(55). "When a merger takes effect . . . all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested, subject to any existing liens or other encumbrances on the property, in one or more of the surviving or new organizations as provided in the plan of merger without . . . any transfer or assignment having occurred. . . ." Tex. Bus. Orgs. Code Ann. § 10.008(a)(2)(C). "[T]he Texas Legislature intended by its amendments to the Business Corporations Act that a prohibited transfer would not be implied by merger but would only occur in the event the parties agreed that merger specifically violated an anti-assignment provision." *TXO Prod. Co. v. M.D. Mark, Inc.*, 999 S.W.2d 137, 143 (Tex. App.—Houston [14th Dist.] 1999).

Under Texas law, the division of Plastronics constitutes a divisive merger and the transfer of rights therefore occurred by operation of law, so no prohibited transfer occurred. The division of Plastronics Socket into Plastronics Socket and Plastronics H-Pin falls squarely within the definition of merger. *See* Tex. Bus. Orgs. Code Ann. § 1.002(55). As a result, "all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested . . . in one or more of the surviving or new organizations as provided in the plan of merger *without . . . any*

*transfer or assignment having occurred.*" Tex. Bus. Orgs. Code Ann. § 10.008(a) (emphasis added). While the parties could have specifically stated that a "merger specifically violated an anti-assignment provision," they did not do so. *TXO Prod.*, 999 S.W.2d at 143. Accordingly, the "prohibited transfer [should] not be implied by merger . . . ." *Id.*

Because no prohibited transfer occurred, Plastronics H-Pin possesses rights in the '602 Patent and therefore has authority to practice the patent. Accordingly, it may not infringe. *See* 35 U.S.C. § 271 ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."). Therefore, Plastronics' Motion to Dismiss should be **GRANTED** with respect to Defendant Hwang's counterclaim for patent infringement of the '602 Patent.

## II. Plastronics Motion to Dismiss Should be Denied with Respect to Defendant Hwang's Counterclaim for Promissory Estoppel.

Plastronics provides three arguments for why Defendant Hwang's Promissory Estoppel Counterclaim should be dismissed under Rule 12(b)(6): (1) that promissory estoppel cannot constitute the basis of a claim for affirmative relief[3]; (2) that a valid contract exists and the promises were part of that contract[4]; and (3) that Hwang failed to satisfy the pleading requirements of *Twombly* and *Iqbal*.[5]

---

[3] Pls.' Mot. at 9–10.
[4] Pls.' Mot. at 9–12.
[5] Pls.' Mot. at 11–12.

Plastronics contends that promissory estoppel cannot constitute the basis of a claim for affirmative relief. While courts are divided on this issue, the majority of Texas courts that have addressed the issue conclude that promissory estoppel can constitute a basis of a claim for affirmative relief. *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 163 (Tex. App.–San Antonio 2008); *Kelly v. Rio Grande Computerland Group*, 128 S.W.3d 759, 769 (Tex. App.–El Paso 2004, no pet.); *MCN Energy Enters., Inc. v. Omagro de Colombia, L.D.C.*, 98 S.W.3d 766, 774 (Tex. App.–Fort Worth 2003, pet. denied); *Frost Crushed Stone Co. v. Odell Geer Const. Co.*, 110 S.W.3d 41, 44 (Tex. App.–Waco 2002, no pet.); *Reyna v. First Nat'l Bank*, 55 S.W.3d 58, 70 n.4 (Tex. App.–Corpus Christi 2001, no pet.); *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 166 (Tex. App.–Houston [14th Dist.] 2000, pet. denied); *Bailey v. City of Austin*, 972 S.W.2d 180, 193 (Tex. App.–Austin 1998, pet. denied); *but see Stanley v. CitiFinancial Mortgage Co.*, 121 S.W.3d 811, 820 (Tex. App.–Beaumont 2003, pet. denied); *Robbins v. Payne*, 55 S.W.3d 740, 747 (Tex. App.–Amarillo 2001, pet. denied). The Court adopts the majority rule that promissory estoppel can constitute a basis of a claim for affirmative relief.

Plastronics also argues that the promises made are part of a valid contract and that the promissory estoppel counterclaims fail on that basis. Plastronics' Mot. at 9–12. Plastronics argues that "[i]f an alleged promise is part of a valid contract, the promisee cannot disregard the contract and sue for reliance damages under the doctrine of promissory estoppel." *Id.* at 10 (quoting *Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App.—Austin 2001)). Hwang argues that he appropriately pleaded the promissory-estoppel counterclaim in the alternative, Defs.' Resp. at 11, and the Court

agrees. Even if the Royalty Agreement and the Assignment and Agreement are determined to be unenforceable, these claims could survive because promissory estoppel can constitute a basis of a claim for affirmative relief. Accordingly, the Court rejects this argument and concludes that the presence of these contracts does not negate the promissory estoppel counterclaim.

Plastronics also argues that Hwang failed to satisfy the pleading requirements established in *Twombley* and *Iqbal*. Plastronics' Mot. at 11–12. Promissory estoppel requires "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment . . . . and (4) a definite finding that injustice can be avoided only by the enforcement of the promise." *Clardy Manufacturing Co. v. Marine Midland Business Loans, Inc.*, 88 F.3d 347, 360 (5th Cir. 1996) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 137 (Tex. App.—Beaumont 1993, writ denied)). Plastronics focuses on the requirement of a promise and argues that Hwang's statements about promises within the Amended Counterclaims constitute "broad, categorical conclusory statements" and that they do not meet the requirements for specificity. Pls.' Mot. at 11, 12. The Amended Counterclaims state that

> [w]hile Mr. Hwang was employed by Plastronics Socket, David Pfaff, on behalf of Plastronics Socket, made promises to Mr. Hwang concerning Mr. Hwang's invention disclosed in the '602 Patent, the current and future relationship between Mr. Hwang and Plastronics, the nature and intent of the Royalty Agreement, and the nature and intent of the Assignment and Agreement.

Defs.' Am. Countercl. at ¶ 319.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court concludes that the Amended Counterclaims provide sufficient facts to give "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Defendant provided a clarification of the topic that the promise was related to, so these statements were not conclusory. Sufficient facts are present to allow the Court to draw the reasonable inference that promises were made. Accordingly, the Court recommends that Plastronics Motion to Dismiss be **DENIED** with respect to the promissory estoppel counterclaim.

### III. Plastronics Motion to Dismiss Should be Denied with Respect to Defendant's Counterclaims for Unjust Enrichment.

Plastronics provides two primary arguments for dismissal of Defendant Hwang's counterclaim for unjust enrichment under Rule 12(b)(6): (1) that a valid, express contract governing the subject matter of a dispute exists, making the unjust enrichment claim unavailable; and (2) that heightened pleading requirements of Fed. R. Civ. P. 9 are required

for this claim because fraud is alleged and Hwang failed to meet these heightened pleading requirement.[6] However, the Court recommends that Plastronics' Motion to Dismiss be denied with respect to the unjust enrichment claim.

Plastronics argues that "[a] claim for unjust enrichment is unavailable when a valid, express contract governing the subject matter of a dispute exists." Pls.' Mot. at 13 (citing *Burlington N.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996)). Defendant Hwang concedes this point, Defs.' Resp. at 11, and points out that "Hwang challenges the validity and enforceability of the Royalty Agreement and Assignment and Agreement." *Id.* However, if this challenge is successful, then no express contract would exist and an unjust enrichment claim would be available. Defendant Hwang therefore properly asserts this claim in the alternative. *See also Baisden v. I'm Ready Prods., Inc.*, H-08-0451, 2008 WL 2118170, at *10 (S.D. Tex. May 16, 2008) (citing *Isofoton, S.A. v. Giremberk*, CV–04–0798–PHX–ROS, 2006 WL 1516026 (D. Ariz. 2006)) ("[A] claim for unjust enrichment may properly be pleaded in addition and/or as an alternative to a breach of contract claim.").

A heightened pleading standard is required, but it is only required to evaluate whether Defendant Hwang sufficiently alleged underlying fraudulent conduct. "To recover under the theory of unjust enrichment, the claimant must establish that the other party has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Fitzgerald v. Water Rock Outdoors, LLC*, 536 S.W.3d 112, 118 (Tex. App.—Amarillo

---

[6] Pls.' Mot. at 13.

2017). "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This Court has applied the heightened pleading standard under 9(b) for the underlying fraudulent conduct that served as the basis for an unjust enrichment claim. *METX, LLC v. Wal-Mart Stores Texas, LLC*, 62 F. Supp. 3d 569, 586 (E.D. Tex. 2014). Thus, the Court will apply a heightened pleading standard under 9(b) only in evaluating the whether Defendant Hwang has sufficiently alleged the underlying fraudulent conduct.

Applying the 9(b) standard, the Court concludes that Hwang has adequately pleaded facts related to the underlying fraudulent conduct. A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Huawei Techs. Co. v. Huang*, No. 4:17-CV-00893, 2018 WL 2463800 (E.D. Tex. June 1, 2018) (citing *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)); *see also United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (stating that Rule 9(b)'s requires that the pleader must set forth the "who, what, when, where, and how" of the fraud alleged). Defendants rely on certain facts that were asserted in the original counterclaims but that are not present in the amended counterclaims. However, the Court will not dismiss this counterclaim on the basis of such a mistake and will therefore consider the information from the original counterclaims.

The counterclaims within the original answer states that "Mr. Hwang had limited English skills and no prior experience living in the U.S., but accepted Mr. Pfaff's offer and

relocated his family from Korea to Texas in September 2004." Defs.' Original Countercl. [Dkt. #26] at 23. Defendants also stated that

> [o]n or around October 4, 2005, Mr. Pfaff presented Mr. Hwang with a document entitled 'Assignment and Agreement.' Mr. Pfaff explained to Mr. Hwang that the Assignment and Agreement was a standard document for use by Plastronics Socket's patent attorney in the filing of a U.S. patent application in accordance with the Royalty Agreement. With this understanding, Mr. Hwang executed the Assignment and Agreement on October 4, 2005 . . . .

*Id*. at 24.

The amended counterclaims also state that "[w]hile Mr. Hwang was employed by Plastronics Socket, David Pfaff, on behalf of Plastronics Socket, made representations to Mr. Hwang concerning Mr. Hwang's invention disclosed in the '602 Patent, the current and future relationship between Mr. Hwang and Plastronics, the nature and intent of the Royalty Agreement, and the nature and intent of the Assignment [and] Agreement." Am. Countercl. at 33. Defendants also stated that "Mr. Pfaff's representations to Mr. Hwang on these issues included false statements of facts, false statements of opinion, and false promises of future performance." *Id*.

Defendant Hwang has sufficiently pleaded facts related to fraudulent conduct. Hwang has provided the "who, what, when, where, and how" of the fraud alleged. Further, Defendant provides sufficient facts regarding the benefit conferred to Plastronics based on this conduct. Am. Countercl. at ¶ 325 ("Mr. Hwang conferred a benefit upon Plastronics, namely assigning Plastronics rights to the '602 Patent and related patents.") Accordingly, the Court concludes that the Defendants have adequately pleaded their counterclaim for

unjust enrichment, and recommends that Plastronics' Motion to Dismiss be **DENIED** with respect to the unjust enrichment counterclaim.

IV. Conclusion

The Court recommends that Plastronics' Motion to Dismiss be **GRANTED IN PART** to dismiss counterclaims for infringement of the '602 Patent, but **DENIED** in all other respects.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 13th day of February, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE