# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| PLASTRONICS SOCKET PARTNERS, LTD. ET AL, | § § § | |
| Plaintiffs, | § § | Case No. 2:18-CV-00014-JRG-RSP |
| v. | § § | |
| DONG WEON HWANG ET AL, | § § § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Plaintiffs Plastronics Socket Partners, Ltd. ("Plastronics Socket") and Plastronics H-Pin, Ltd. ("Plastronics H-Pin") (collectively, "Plastronics") filed an Opposed Motion to Strike Expert Reports of James Woods, which is now before the Court. (Dkt. No. 205.) This Motion seeks to strike portions of Woods' reports and exclude testimony regarding: (1) non-infringing substitutes and the relevant market under *Panduit* factor two; (2) manufacturing and marketing capacity under *Panduit* factor three; (3) the economic impact of the 2012 divisive merger between Plastronics Socket and Plastronics H-Pin; and (4) assumptions used by Woods regarding disputed terms of the contracts in question to structure his damages calculations. After consideration, the Court **DENIES** Plaintiffs' Motion.

### I. APPLICABLE LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993). Questions about the bases and sources of an expert's opinion generally relate to the weight that should be given to that opinion rather than the opinion's admissibility. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

Rule 703 of the Federal Rules of Evidence provides that

[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

In determining whether a patentee is entitled to lost profits, "[o]ne useful, but non-exclusive method to establish the patentee's entitlement to lost profits" is the *Panduit* test, which is set forth in *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)). *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1241 (Fed. Cir. 2017) (quoting *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284

(Fed. Cir. 2017)). "The *Panduit* test requires the patentee to show: (1) 'demand for the patented product'; (2) 'absence of acceptable noninfringing substitutes'; (3) 'manufacturing and marketing capability to exploit the demand'; and (4) 'the amount of profit that . . . would have [been] made.'" *Georgetown Rail*, 867 F.3d at 1241 (quoting *Panduit*, 575 F.2d at 1156).

## II. ANALYSIS

### a. Woods' opinions about non-infringing substitutes and the relevant market under *Panduit* factor two

Woods' opinions about the presence of non-infringing substitutes and the relevant market under *Panduit* factor two should not be excluded. Chase Perry provided a report for Plaintiffs opining that the H-Pin market is a two-player market. (*See* Dkt. No. 210-1 at 12–13 ("[S]ales of Accused Devices and sockets with Accused Devices by Defendants are sales lost by Plaintiffs.").) Woods is attempting to rebut Perry's opinions in Woods' rebuttal report. (Dkt. No. 205-2 at 9–14.)

Plaintiffs assert that Woods "fails to base his opinion on reliable facts." (Dkt. No. 205 at 4.) Plaintiffs assert that Woods did not conduct an independent investigation into the products offered by other participants in the market or consult with other technical experts on the issue of non-infringing substitutes. (*Id*.) Plaintiffs later assert that Woods relied entirely upon conversations with others and that he did not perform any of his own research, making his opinions on this issue unhelpful to the jury. (Dkt. No. 231 at 2.)

Woods' testimony on these issues is sufficiently reliable. Defendants state that Woods relied conversations with Defendant Hwang and Defendants' Expert Paul

Schubring, who have substantial experience in the relevant market, and Plaintiffs have not challenged the experience of Hwang or Schubring. (Dkt. No. 220 at 5.) It was reasonable for Woods to rely on these conversations in forming his opinions under Rule 703 of the Federal Rules of Evidence. The Court concludes that Woods' testimony will be helpful to the jury—Defendants state that Woods relied upon his own research, reviewed of hundreds of Plastronics' documents, and sat through a deposition of Plastronics' 30(b)(6) representative in the discussion of the relevant market and non-infringing substitutes. (Dkt. No. 220 at 6.) Further, Woods' rebuttal report itself contains sufficient support for his conclusions to permit him to testify. (Dkt. No. 205-2 at 9–14.) Consequently, Woods is permitted to testify on non-infringing substitutes at trial, and Plaintiffs are free to challenge Woods opinions through cross-examination.

### b. Woods' opinions about Plastronics H-Pin's manufacturing and marketing capacity under Panduit factors three

Woods' opinions about Plastronics H-Pin's manufacturing and marketing capacity under *Panduit* factor three should not be excluded. Defendants earned substantial profits on the accused product in 2015, and Plaintiffs' Expert, Chase Perry, asserts that Plaintiffs' are entitled to all of this money as lost profits. (Dkt. No. 210-1 at 12–13 ("[S]ales of Accused Devices and sockets with Accused Devices by Defendants are sales lost by Plaintiffs.").) Woods contends that Plastronics H-Pin "did not have sufficient manufacturing capacity to make all the sales Mr. Perry alleges it would have made." (Dkt. No. 205-2 at 15.) To support this contention, Woods highlights a statement in Perry's report that "Mr. Pfaff and Mr. Furman confirmed that Plastronics H-Pin has not had any

constraints on its ability to manufacture and sell two to three times as many additional units during the damages period."[1] (Dkt. No. 205-2 at 15 (citing Dkt. No. 210-1 at App. 0014).) Woods then attempts to show that even if Plaintiffs sold three times as many additional units during the damages period as Pfaff stated that Plaintiffs could, then this figure would still be less than the final lost profits value reached by Perry for 2015. (Dkt. No. 205-2 at 15–16.)

Plaintiffs argue that Woods has no background in engineering or product manufacturing to render any opinion about manufacturing capabilities on his own and that he is therefore unqualified to provide opinions regarding Plaintiffs manufacturing capacity. (Dkt. No. 205 at 5.) Plaintiffs also argue that Woods did not undertake a meaningful investigation into this matter and did not consult other witnesses with knowledge of Plaintiffs' factories, personnel, raw material inventory or other technical knowhow. (*Id.*) In their Reply, Plaintiffs argue that by performing rote arithmetic, Woods calculation is not helpful to the jury. (Dkt. No. 231 at 3.)

Woods, having a background in economics, is sufficiently qualified to conduct this analysis. The Court also concludes that this calculation is helpful to the jury—Woods identifies the appropriate data to be used in the calculations and then calculates resulting damages using that data and deductive reasoning from Mr. Pfaff's statements. "There is not . . . an implicit requirement in Fed. R. Evid. 702 for the proffered expert to make complicated mathematical calculations." *WWP, Inc. v. Wounded Warriors Family Support,*

---

[1] David Pfaff is Plastronics Socket's CEO, and Larry Furman is the Managing Director of Plastronics Socket. (Dkt. No. 205-2 at 2.)

*Inc.*, 628 F.3d 1032, 1040 (8th Cir. 2011) (citing *In re Prempro Prod. Liab. Litig.*, 514 F.3d 825, 831 (8th Cir. 2008) (concluding that an admission of an expert opinion was not an abuse of discretion where the expert performed calculations utilizing "basic math" and "simple deductive reasoning")). Plaintiffs are free to challenge Woods analysis during cross-examination, but Woods is permitted to provide testimony regarding these opinions at trial as the opinions are sufficiently reliable.

### c. Woods' opinions regarding the economic impact of the 2012 divisive merger between Plastronics Socket and Plastronics H-Pin

Plaintiffs seek to strike Section VII of Woods' opening report, contending that it improperly opines on the purpose of the 2012 divisive merger. (Dkt. No. 205 at 6–7.) This section of Woods' opening report provides an economic analysis of the divisive merger royalty obligations owed to Hwang. (Dkt. No. 205-1 at 10–14.) Hwang states that "Dr. Woods will not offer any testimony on [Plastronics Socket's] intent or purpose." (Dkt. No. 237 at 3 n.4 (citing Dkt. No. 220 at 9 ("Dr. Woods is not attempting to make a conclusion regarding Plastronics Socket's purpose in pursuing the divisive merger.")).)

Woods is qualified to testify on the economic impact of the divisive merger, and his report provides sufficient support to make his testimony reliable. Woods should not offer testimony on Plastronics Socket's intent or purpose for the divisive merger, but Woods is permitted to discuss the impact of the divisive merger on royalty obligations owed to Hwang. The jury is then free to make any inferences that it wishes about the intent or purpose for the divisive merger from Woods' testimony. Consequently, the Court will not strike any portion of his report with respect to this argument.

### d. Woods' assumptions regarding disputed terms of the contracts in question that are used to structure his damages calculations

Hwang states that Woods' report "merely explains the framework he bases his damages opinion on and then calculates the appropriate damages award under that framework." Hwang argues that this explanation is appropriate. (Dkt. No. 220 at 10 (citing *Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-CV-463-ALM, 2015 WL 4722144, at *4 (E.D. Tex. Aug. 7, 2015) ("The Court also finds that Edwards' Audit Report does not contain impermissible legal conclusions. Instead, it states what he believes the damages would be if Feld's interpretation of the License Agreement prevails at trial.")).) Plaintiffs argue that certain sections of Woods' report improperly attempt to construe disputed contractual language and that these sections should be excluded. (Dkt. No. 205 at 7–8.)

Woods is not permitted to testify at trial about how the jury should resolve any disputed contractual interpretation issues, since these issues are questions of law that should be resolved by the Court. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000). However, Woods is permitted to testify about assumptions that he has made in calculating damages, even if those assumptions involve his understanding of relevant contract provisions. *Feld Motor Sports*, 2015 WL 4722144, at *4. These assumptions are necessary here to appropriately tie the damages model to the language of the contract. With this understanding in mind, the Court **DENIES** Plaintiffs' Motion with respect to this argument because Woods' report is appropriately limited to providing assumptions for the damages model.

## I. CONCLUSION

The Court therefore **DENIES** Plaintiffs' Motion.

**SIGNED this 20th day of May, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE