**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| PLASTRONICS SOCKET PARTNERS, LTD. | § | |
| AND | § | |
| PLASTRONICS H-PIN, LTD. | § | |
| | § | Civil Action No. 2:18-cv-00014-JRG |
| Plaintiffs, | § | |
| | § | JURY TRIAL DEMANDED |
| vs. | § | |
| | § | |
| DONG WEON HWANG, AND | § | |
| HICON CO. LTD. | § | |
| | § | |
| Defendants. | § | |
| | § | |

## JOINT FINAL PRE-TRIAL ORDER

Pursuant to the Court's Second Amended Docket Control Order (Dkt. No. 161) and Rule 16 of the Federal Rules of Civil Procedure, Plaintiffs Plastronics Socket Partners, Ltd. ("Plastronics Socket") and Plastronics H-Pin, Ltd. ("Plastronics H-Pin") (collectively, "Plastronics" or "Plaintiffs") and Defendants Dong Weon Hwang ("Hwang"), HiCon Co., Ltd. ("HiCon Ltd."), and HiCon Company ("HiCon") (collectively "Hwang" or "Defendants") hereby submit their Joint Final Pre-Trial Order. Subject to the other rulings made at the June 18, 2019 Pretrial Conference in Marshall, Texas, the Court enters this Order.[1,2]

---

[1] In their portions of this Joint Pretrial Order, Defendants refer to themselves as follows: HiCon Co., Ltd. is "HiCon Co., Ltd.;" Dong Weon Hwang is "Mr. Hwang;" and Mr. Hwang's sole proprietorship is "HiCon." Collectively, Defendants are "Hwang." As set forth in Hwang's portions of this Pretrial Order, Mr. Hwang and his sole proprietorship, HiCon, are legally the same and indistinguishable. That said, Plastronics has made different allegations against Mr. Hwang and HiCon. Therefore, Hwang will use "Mr. Hwang" or "HiCon" in a manner that corresponds to how Plastronics has asserted its claims. In doing so, Hwang does not concede that Mr. Hwang and HiCon are separate persons or entities for any purpose and maintains that Mr. Hwang and HiCon are legally the same and indistinguishable for all purposes.

Hwang objects to Plastronics' characterization of HiCon as a "company" or other business entity other than a sole proprietorship as inaccurate and unsupported and contends that allowing Plastronics to reference HiCon as a "company" during trial will mislead and confuse the jury.

[2] Plastronics objects to Defendants' inclusion of the argument that "Mr. Hwang and his sole proprietorship, HiCon,

## A. COUNSEL FOR THE PARTIES

**Plaintiffs:**

Katarzyna Brozynski
Texas State Bar No. 24036277
kbrozynski@spencerfane.com
Antonio S. Devora
Texas State Bar No. 24074133
adevora@spencerfane.com
Bart Dalton
Texas State Bar No. 24043418
bdalton@spencerfane.com
SPENCER FANE, LLP
5800 Granite Parkway, Suite 800
Plano, Texas 75024
(972) 324-0300 Telephone
(972) 324-0301 Fax

Brian T. Bear (pro hac vice)
Missouri State Bar No. 61957
bbear@spencerfane.com
SPENCER FANE, LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106
(816) 474-8100 Telephone
(816) 474-3216 Fax

Andrew W. Lester
Texas State Bar No. 12235260
alester@sepencerfane.com
SPENCER FANE, LLP
9400 North Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114
(405) 844-9900 Telephone
(405) 844-9958 Fax

Robert Christopher Bunt
State Bar No. 00787165
Charles L. Ainsworth
State Bar No. 00783521
Parker Bunt & Ainsworth, PC

---

are legally the same and indistinguishable" throughout this Pretrial Order. The Court has specifically stricken this argument from the pleadings. Dkt. No. 223. Consequently, any such mention of this argument should likewise be stricken. Plastronics further objects to Defendants' needless and confusing use of "Hwang" to refer to Defendants collectively.

100 E. Ferguson, Suite 418
Tyler, Texas 75702
903-531-3535
rcbunt@pbatyler.com
charley@pbatyler.com

**Defendants:**

John R. Emerson
Texas Bar No. 24002053
russ.emerson@haynesboone.com
Debra J. McComas
Texas Bar No. 00794261
debbie.mccomas@haynesboone.com
Charles M. Jones II
Texas Bar No. 24054941
charlie.jones@haynesboone.com
Stephanie N. Sivinski
Texas Bar No. 24075080
stephanie.sivinski@haynesboone.com
Tiffany M. Cooke
Texas Bar No. 24087340
tiffany.cooke@haynesboone.com
Jamie Raju
Texas Bar No. 24095717
jamie.raju@haynesboone.com

Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000 (telephone)
(214) 200-0615 (fax)

Samuel Lee
(Admitted *pro hac vice*)
samuellee@yulchon.com
Jay Hoon Byun
(Admitted *pro hac vice*)
jhbyun@yulchon.com

YulChon LLC
Parnas Tower, 38F, 521 Teheran-ro
Gangnam-gu, Seoul 06164
Republic of Korea
Tel +82-2-528-5200
Fax +82-2-528-5228

**B.     STATEMENT OF JURISDICTION**

**Plaintiffs:**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(c) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 et seq.  This Court has supplemental jurisdiction over the breach of contract, tortious interference with business relations, assisting and encouraging, and conspiracy claims under 28 U.S.C. § 1367 because these claims are so related to the patent infringement claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Plastronics object to Defendants' below attempt to reargue standing for Plastronics' patent infringement claims.  The Court has ruled on the issue of standing with respect to Plastronics' patent infringement claims finding that "Hwang's presence as a defendant within the case eliminates prudential concerns and gives Plaintiffs standing."  Dkt. No. 165 at 7; *see also* Dkt. No. 192.

Plaintiffs object to Defendants' below attempt to recast the divisive merger issue (again) as a "standing" issue.  The Court has ruled on this issue.   The Court found that "the division of Plastronics constitutes a divisive merger and the transfer of rights therefore occurred by operation of law, so no prohibited transfer occurred. The division of Plastronics Socket into Plastronics Socket and Plastronics H-Pin falls squarely within the definition of merger…Because no prohibited transfer occurred, Plastronics H-Pin possesses rights in the '602 Patent". Dkt. No.  168 at 4-5; *see also* Dkt. No. 183.  Defendants failed to object to the Magistrate Judge's Report and Recommendation.  Dkt. No. 183.  Further, only now have Defendants brought forth a "standing" issue with respect to the Royalty Agreement and the Assignment Agreement.  This is merely an

attempt by Defendants to recast and reallege their breach of contract claims as "standing" issues. *See, e.g.,* Section D, Defendants' Contentions, ¶¶188-189, ¶¶209-210, *infra*.

The Court has personal jurisdiction over the parties. None of Plastronics Socket, Plastronics H-Pin, Defendant Hwang, and HiCon Co. dispute personal jurisdiction over them. The Court has ruled that this Court has personal jurisdiction over HiCon Ltd. *See* Dkt. No. 136; *see also* Dkt. No. 163.

**Defendants:**

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because a portion of this action arises under the patent laws of the United States, including 35 U.S.C. §§ 1 *et seq.* Provided the patent-infringement claims remain in this case, this Court has subject-matter jurisdiction over the non-patent claims the parties have asserted in this action pursuant to 28 U.S.C. § 1367 because such claims are so related to the claims in this action that are within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Hwang disputes that Plastronics has standing to assert any claim under the '602 Patent because all of the owners of the patent—namely Mr. Hwang/HiCon—have not joined in the suit. Hwang further contends that Plastronics H-Pin lacks standing to assert any claim under the Royalty Agreement, the Assignment Agreement, or the '602 Patent because it has no rights under or legal interest in the Agreements or the '602 Patent. Otherwise, subject-matter jurisdiction and venue are not disputed in this case, provided that the patent-infringement claims remain in the case. If the Court agrees with Hwang that Plastronics lacks standing to assert infringement of the '602 Patent and dismisses the infringement claims then Hwang respectfully suggests that the Court should decline to exercise and supplemental jurisdiction under 28 U.S.C § 1367. Defendant HiCon Co., Ltd. disputes that this Court has

personal jurisdiction over HiCon Co., Ltd. Plastronics Socket Partners, Ltd., Plastronics H-Pin, Ltd., Dong Weon Hwang, and his sole proprietorship HiCon do not dispute that the Court has personal jurisdiction over them.

## C.      NATURE OF ACTION

**Plastronics' Description of the Action:**

This is the case of patent infringement, breach of contract, tortious interference with prospective and ongoing relations, assisting or encouraging, and conspiracy by Defendants. Plastronics H-Pin alleges that each of HiCon Ltd. and HiCon Co. has directly infringed, contributed to the infringement, and induced others to infringe U.S. Patent No. 7,025,602, issued April 11, 2006, entitled "Contact for Electronic Devices" (the "'602 Patent"). The application from which the '602 Patent issued was filed on September 30, 2005 and received U.S. Application No. 11/240,438 (the "'438 Application"). The '438 Application claimed priority to Korean Application No. 10-2004-0079649, filed October 6, 2004 (the "Korean Application").

Plastronics H-Pin contends that each of HiCon Ltd. and HiCon Co. has infringed the '602 Patent by making, using, importing, providing, supplying, distributing, selling, and/or offering for sale in the United States contacts for electronic devices, namely the "Hi-CONTACT" pin, the "Hs-CONTACT" pin, and the "Hr-CONTACT" pin (collectively, the "Accused Devices") that are covered by claim 1 of the '602 Patent. Plastronics H-Pin further contends that each of HiCon Ltd. and HiCon Co. has willfully infringed the '602 Patent.

Plastronics H-Pin seeks damages under 35 U.S.C. § 284 in the form of lost profits or a reasonable royalty for past sales of the Accused Devices, and also contends that this case is "exceptional" within the meaning of 35 U.S.C. § 284 entitling Plastronics to enhancement of those damages. Plastronics also seeks a permanent injunction enjoining future sales of the Accused

Devices, and a recovery of its costs, expenses, and attorneys' fees under 35 U.S.C. § 285.

Prior to filing the '438 Application on September 30, 2005, Hwang and Plastronics Socket executed the royalty agreement on September 24, 2005 with an effective date of September 21, 2005 (the "Royalty Agreement"). Under the Royalty Agreement, Plastronics Socket agreed to pay for the development of the invention disclosed in the Korean Application (the "H-Pin Project") and worldwide patent rights where needed and Plastronics Socket to be assigned the patent in all worldwide areas jointly with Hwang except Korea. The Royalty Agreement further provides that: in the event that patent royalties are paid by a third party, Plastronics Socket and Hwang will split the royalties 50%/50% respectively; in the event when Hwang works directly for another entity, Plastronics Socket will be entitled to 1.5% of the royalties (Plastronics Socket and Hwang will split royalty 50%/50% respectively) of gross sales of patented products from the H-Pin Project from this entity; if socket is sold with H-Pin contact included, this rate is also 3/2% of socket price.

On October 4, 2005, Hwang and Plastronics Socket executed an assignment agreement, to which the parties agreed to assign to Plastronics Socket one-half (50%) of the entire right, title and interest in and to the invention in the '438 Application and any letters patent that may issue thereon (the "Assignment Agreement").

Hwang has breached each of the Royalty Agreement and the Assignment Agreement by improperly transferring or licensing the invention to the H-Pin, including that described in and claimed in the '602 Patent and/or the Korean Application to HiCon Ltd., HiCon Co., and HiCon USA, LLC, an Arizona limited liability company ("HiCon USA"), which is a wholly owned subsidiary of HighRel, Inc., an Arizona corporation ("HighRel"), to be an exclusive distributor throughout the United States of products manufactured by HiCon Ltd. Hwang has further breached the Royalty Agreement by failing to pay any royalties due to Plastronics under the Royalty

Agreement and provide accounting under the Assignment Agreement. Hwang has further breached the Assignment Agreement by failing to disclose his filing of U.S. Patent No. 8,715,015, which Plastronics contend is an improvement to the '602 Patent under the Assignment Agreement. Plastronics seeks damages for breach of contract claims in the form of lost profits or reasonable royalty. Plastronics further seeks attorneys' fees under Texas Civil Practice and Remedies Code 38.

Plastronics further contends that HiCon Ltd. tortiously interfered with Plastronics Socket's pre-existing business relationship with at least HighRel. HiCon Ltd., through its President and CEO Hwang, had knowledge of the continuing relationship between Plastronics Socket and HighRel and intentionally interfered by negotiating and entering into an exclusive distribution agreement with HiCon USA and/or HighRel to sell to HiCon USA and/or HighRel competing products, including test sockets, which include at least one of the Accused Devices. Plastronics seeks damages in the form of lost profits.

Plastronics further contends that Hwang assisted or encouraged HiCon Ltd. to tortiously interfere with Plastronics Socket's relationships with at least HighRel by improperly transferring or licensing the invention to the H-Pin, including that described and claimed in the '602 Patent and/or the Korean Application to HiCon Ltd. which in turn entered into the Distribution Agreement with HiCon USA to sell the Accused Devices and sockets that include the Accused Devices. Plastronics seeks damages in the form of lost profits and other damages that are ascertainable and proximately caused by Defendants' wrongful actions

Plastronics further contends that each of Hwang and HiCon Ltd. conspired in that each of Hwang and HiCon Ltd. was a member of a combination of two or more persons or entities, namely Hwang, HiCon Ltd., HiCon Co., HiCon USA, and/or HighRel. The object of the combination of

Hwang, HiCon Ltd., and HiCon USA and/or HighRel was to accomplish: (1) an unlawful purpose, namely to commit patent infringement as described above, breaches of contract as described above, and/or tortious interference with prospective relations as described above; or (2) a lawful purpose by unlawful means, namely to improperly enter into the exclusive distribution agreement by committing patent infringement as described above, breaches of contract as described above, and/or tortious interference with prospective and ongoing relations as described above.

Hwang, HiCon Ltd., HiCon Co., HiCon USA, and/or HighRel had a meeting of the minds on the object or course of action. Hwang and HiCon Ltd. had a meeting of the minds to improperly transfer or license the invention to the H-Pin, including that described and claimed in the '602 Patent and/or the Korean Application to HiCon Ltd. and/or HiCon Co., HiCon USA, and/or HighRel had a meeting of the minds to improperly enter into the Distribution Agreement to distribute, make, use, import, provide, supply, sell, and/or offer for sale competing products, including test sockets that include at least one of the Accused Devices in the United States. Hwang, HiCon Ltd., HiCon Co., HiCon USA, and/or HighRel had a meeting of the minds to first improperly transfer and/or license of the invention to the H-Pin, including that described and claimed in the '602 Patent and/or the Korean Application to HiCon Ltd. and/or HiCon Co. in order to then improperly enter into the Distribution Agreement with HiCon USA and/or HighRel.

One of the members committed an unlawful, overt act to further the object or course of action. HiCon Ltd. committed patent infringement as described above, HiCon Co. committed patent infringement as described above, HiCon USA and/or HighRel committed patent infringement as described above, Hwang committed breaches of contract as described above, HiCon Ltd. committed tortious interference with prospective relations as described above, and/or Hwang assisted or encouraged HiCon Ltd. in committing a tort as described above.

Defendants originally filed several counterclaims against Plastronics, but all that remains are Hwang's counterclaims for breach of the Royalty Agreement against Plastronics H-Pin, Ltd and breach of the Assignment Agreement against Plastronics Socket Partners Ltd. Plastronics contends that it has not breached either of the two agreements and that to the extent it had, its actions are excused.

Plastronics object to Defendants' description of the action below. In particular, Plastronics object to Defendants' inclusion of the argument that "HiCon" is "indistinguishable" from Hwang. This specific argument has been stricken by the Court. *See* Dkt. No. 223 at 3. Consequently, any such mention of the argument should be stricken.

Plastronics further object to Defendants' description due to the inclusion of the claim that Plastronics "fraudulently induced" Hwang. Defendants expressly abandoned any claim for fraudulent inducement. Hwang originally had a counterclaim for fraudulent inducement in his original answer. *See* Dkt. No. 12 at 30-32. Upon answering Plastronics' First Amended Complaint, Hwang expressly abandoned any such claim for fraudulent inducement by not including it in his amended answer. *See generally* Dkt. No. 84. Any arguments as to fraudulent inducement or fraud in the inducement should be stricken.

Plastronics further object to Defendants' below description of the action due to its inclusion of causes of action that have been abandoned by Defendants. Specifically, Defendants' inclusion of "Hwang contends Plastronics Socket further breached the Royalty Agreement by assigning rights in the '602 Patent to Plastronics H-Pin without Mr. Hwang's approval or consent." Defendants have abandoned this cause of action. *See* Dkt. No. 191 at 1 ("Mr. Hwang concedes that the licensing portion of his counterclaim involving the Royalty Agreement should be dismissed and will therefore voluntarily dismiss those parts of his counterclaim."). Consequently,

this portion of the description should be stricken.

Plastronics further objects to Defendants' description of the action because it includes new defenses that were never before pleaded. Specifically, Defendants argue that "Plastronics has not shown that 'assisting and encouraging' is a viable cause of action in Texas". *See infra*, n.3. Nevertheless, "[t]he Texas Supreme Court has not yet adopted the Restatement's formulation of aiding and abetting. However, Texas courts have assumed aiding and abetting is an appropriate theory for imposing joint liability and in doing so have been guided by Section 867 of the Restatement." *8000 Del Donore HOA-8000 Inc. v. Mid-Century Ins. Co.*, No. SA-17-CV-01226-FB, 2018 WL 2222847, at *4 (W.D. Tex. Apr. 30, 2018), report and recommendation adopted, No. CV SA-17-CA-1226-FB, 2018 WL 6930898 (W.D. Tex. June 6, 2018) (citing *Juhl v. Arlington*, 936 S.W.2d 640, 643–45 (Tex. 1996). Further, "[s]ubsection (b) of Section 876 of the Restatement requires the provision of 'substantial assistance or encouragement' to another. In evaluating whether a given defendant 'substantially assisted' a wrongdoer, Texas courts have referred to the elements set forth in Comment d to Section 876 and referenced by the Texas Supreme Court in *Juhl* in analyzing a claim under subsection (b)." *Id.*

**Defendants' Description of the Action:**

HiCon Co., Ltd. manufactures and sells the Accused Devices in Korea. Mr. Hwang then exports the Accused Devices through his sole proprietorship, HiCon, from which he is legally indistinguishable. Because HiCon Co., Ltd. does not conduct business in or export items to the United States, it cannot infringe the '602 Patent and needs no license. Because HiCon is legally indistinguishable from Mr. Hwang, HiCon is authorized to practice the '602 Patent because Mr. Hwang's owns the '602 Patent. Because neither HiCon Co., Ltd. nor HiCon have or need a license to the '602 Patent, Plastronics' patent-infringement claims and most of its breach-of-contract

claims must fail.

Hwang denies that HiCon Co., Ltd. and HiCon have directly or indirectly infringed the '602 Patent and deny that they have contributed to or induced any third party's alleged infringement of the '602 Patent. Hwang denies that HiCon Co., Ltd. tortiously interfered with any alleged prospective business relations of Plastronics Socket Partners, Ltd.'s ("Plastronics Socket") or Plastronics H-Pin, Ltd.'s ("Plastronics H-Pin") or was part of or participated in any conspiracy in any way. Hwang denies that Mr. Hwang breached any contractual agreement with Plastronics, including but not limited to the Royalty Agreement or the Assignment Agreement. Hwang denies that Mr. Hwang "assisted or encouraged" any party, including but not limited to HiCon Co., Ltd., to tortiously interfere with any of Plastronics' alleged prospective business relations.[3] Hwang denies that Plastronics is entitled to damages whether general or special, other monetary relief, injunctive relief, or any other kind of relief, including but not limited to any enhanced, exemplary, or punitive damages. Hwang denies that Plastronics is entitled to an accounting or reporting of any kind from Hwang. Hwang denies that Plastronics is entitled to pre-judgment or post-judgment interest. Hwang denies that any alleged infringement was willful. Hwang denies that this case is exceptional as to Hwang's actions. Hwang denies that Plastronics is entitled to recover any of its attorneys' fees or costs from Hwang.

---

[3] The Texas Supreme Court has not adopted § 876(b) of the Restatement (Second) of Torts, which is the genesis of the "assisting and encouraging" cause of action. *Juhl v. Airington*, 936 S.W.2d 640, 643-44 (Tex. 1996). Further, even if it had, the Texas Supreme Court has observed that the purpose of such a cause of action in other states "is to deter antisocial or dangerous behavior." *Id.* at 644-54 (collecting cases from other states). The Court further noted that, in other states, scenarios to which §876(b) applies "almost always involved conduct posing a high degree of risk to others." *Id.* Cited examples of such "highly dangerous, deviant, or anti-social group activity which was likely to cause serious injury or death to a person or certain harm to a large number of people" include drag racing on public streets, extreme reckless driving, and irresponsible firearm use. *Id.* at 645.
Plastronics has not shown that "assisting and encouraging" is a viable cause of action in Texas. Even if it were, Plastronics cannot possibly allege that Mr. Hwang, HiCon, or HiCon Co., Ltd. ever engaged in "highly dangerous, deviant, or anti-social group activity which was likely to cause serious injury or death to a person or certain harm to a large number of people." *Id.*

Hwang claims that Plastronics fraudulently induced him to enter into the Royalty Agreement and the Assignment Agreement. Mr. Hwang contends that both Agreements should be rescinded due to Plastronics' fraud. Alternatively, if the Royalty Agreement and Assignment Agreement are found to be valid contracts and binding on Mr. Hwang, Hwang contends that Plastronics has breached both the Royalty Agreement and the Assignment Agreement. Specifically, Hwang contends Plastronics Socket and Plastronics H-Pin breached the Royalty Agreement by failing to pay Mr. Hwang the royalties Plastronics owed him under the Agreement. Hwang contends Plastronics Socket further breached the Royalty Agreement by assigning rights in the '602 Patent to Plastronics H-Pin without Mr. Hwang's approval or consent. Hwang alleges Plastronics beached the Assignment Agreement by failing to provide Mr. Hwang with the accountings the Assignment Agreement requires. Hwang contends that Plastronics' breaches of the Royalty Agreement and Assignment Agreement have damaged Hwang. Hwang alleges it is entitled to recover its costs and attorneys' fees from Plastronics under both federal patent law and Texas law.

## D. CONTENTIONS OF THE PARTIES

**Plastronics' Contentions:**

In addition to the disclosures contained in their disclosures, and Amended Infringement Contentions, Plastronics contends the following:

1. Plastronics contends that HiCon Ltd. has infringed and continues to infringe, directly or through intermediaries, claim 1 of the '602 Patent literally by making, using, selling, and offering to sell the "Hi-CONTACT" pin, the "Hs-CONTACT" pin, and the "Hr-CONTACT" pin (collectively, the "Accused Devices"). Details of the Accused Devices and infringed claim are set forth in Plastronics' Amended Disclosure of Asserted Claims and Infringement Contentions dated February 14, 2019, including all exhibits and attachments, hereby incorporated by reference

in their entirety.

2.      Plastronics contends that HiCon Ltd. has infringed claim 1 of the '602 Patent by inducing infringement or contributing to the infringement of the '602 Patent by others literally.

3.       Plastronics seeks damages for the infringement of the '602 Patent in the amount of lost profits for past sales or a reasonable royalty for past sales.  Plastronics contends they also entitled to injunctive relief against HiCon Ltd. enjoining all future sales, or future royalties, enhanced, in the event that HiCon Ltd. continues to make, sell or offer for sale the Accused Devices.

4.      Further details of Plastronics contentions concerning damages can be found in the expert reports of Chase Perry, dated February 18, 2019, and March 11, 2019, and in his subsequent supplement on March 19, 2019.

5.      Plastronics contends that HiCon Ltd. has willfully infringed the '602 Patent.

6.      Plastronics contends that this case is exceptional, and it should therefore be awarded its reasonably attorneys' fees pursuant to 35 U.S.C. § 285.

7.      Plastronics contends that they are entitled to enhanced damages up to three times the amount of actual damages found or assessed as appropriate under 35 U.S.C. § 284, as well as pre- and post-judgment interest and costs fixed by the Court.

8.      Plastronics contends that HiCon Ltd. may not rely upon an opinion of counsel as a defense to willful infringement since HiCon Ltd. did not notify Plastronics of its reliance on opinion of counsel and did not produce any such opinion.

9.      Plastronics contends that HiCon Co. has infringed and continues to infringe claim 1 of the '602 Patent literally by making, using, selling, and offering to sell the "Hi-CONTACT" pin, the "Hs-CONTACT" pin, and the "Hr-CONTACT" pin (collectively, the "Accused Devices").

Details of the Accused Devices and infringed claim are set forth in Plastronics' Amended Disclosure of Asserted Claims and Infringement Contentions dated February 14, 2019, including all exhibits and attachments, hereby incorporated by reference in their entirety.

10.     Plastronics contends that HiCon Co. has infringed claim 1 of the '602 Patent by inducing infringement or contributing to the infringement of the '602 Patent by others literally.

11.      Plastronics seeks damages for the infringement of the '602 Patent in the amount of lost profits for past sales or a reasonable royalty for past sales.  Plastronics contends they also entitled to injunctive relief against HiCon Co. enjoining all future sales, or future royalties, enhanced, in the event that HiCon Co. continues to make, sell or offer for sale the Accused Devices.

12.     Further details of Plastronics contentions concerning damages can be found in the expert reports of Chase Perry, dated February 18, 2019, and March 11, 2019, and in his subsequent supplement on March 19, 2019.

13.     Plastronics contends that HiCon Co. has willfully infringed the '602 Patent.

14.     Plastronics contends that this case is exceptional, and it should therefore be awarded its reasonably attorneys' fees pursuant to 35 U.S.C. § 285.

15.     Plastronics contends that they are entitled to enhanced damages up to three times the amount of actual damages found or assessed as appropriate under 35 U.S.C. § 284, as well as pre- and post-judgment interest and costs fixed by the Court.

16.     Plastronics contends that HiCon Co. may not rely upon an opinion of counsel as a defense to willful infringement since HiCon Co. did not notify Plastronics of its reliance on opinion of counsel and did not produce any such opinion.

17.     Plastronics contends that HiCon Ltd. is not licensed or otherwise authorized,

explicitly or implicitly, to practice the '602 Patent.

18.     Plastronics contends that HiCon Ltd. has committed acts of infringement in the United States, namely HiCon Ltd. has sold or offered to sell the Accused Devices in the United States.

19.     Plastronics contends that HiCon Co. is not licensed or otherwise authorized, explicitly or implicitly, to practice the '602 Patent.

20.     Plastronics contends that HiCon Co. is an entity separate from Hwang.

21.     Plastronics contends that HiCon Co. is not a sole proprietorship of Hwang.

22.     Plastronics contends that HiCon Co. has committed acts of infringement in the United States, namely HiCon Co. has sold or offered to sell the Accused Devices in the United States.

23.     Plastronics contends that the Royalty Agreement is a valid, enforceable contract between Plastronics and Hwang.

24.     Plastronics contends that Hwang has breached the Royalty Agreement by failing to pay Plastronics royalties due under the Royalty Agreement.

25.     Plastronics contends that Hwang has further breached the Royalty Agreement by licensing the invention to the H-Pin, including that described in claimed in the '602 Patent and/or the Korean Application to HiCon Ltd., HiCon Co., and HiCon USA without obtaining consent from Plastronics.

26.     Plastronics seeks damages for Hwang's breaches of the Royalty Agreement in the form of lost profit damages or a reasonable royalty damages, and related costs and expenses.

27.     Further details of Plastronics contentions concerning damages can be found in the expert reports of Chase Perry, dated February 18, 2019, and March 11, 2019, and in his subsequent

supplement on March 19, 2019.

28.     Plastronics seeks attorneys' fees for Hwang's breaches of the Royalty Agreement under Section 38 of the Texas Civil Practice & Remedies Code.

29.     Plastronics contends that the Assignment Agreement is a valid, enforceable contract between Plastronics and Hwang.

30.     Plastronics contends that Hwang has breached the Assignment Agreement by transferring an interest in and/or licensing the invention of the '602 Patent to each of HiCon Ltd. and HiCon Co. without obtaining written consent of Plastronics.

31.     Plastronics contends that Hwang further breached the Assignment Agreement by failing to inform Plastronics of any improvement to the '602 Patent including without limitation the Korean Improvement Application, the PCT Application, and the '015 Patent.

32.     Plastronics contends that Hwang further breached the Assignment Agreement by not providing an accounting to Plastronics as prescribed by the Assignment Agreement.

33.     Plastronics contends that Hwang further breached the Assignment Agreement again by transferring an interest in and/or licensing the invention of the '602 Patent to HiCon USA and/or HighRel without obtaining the written consent of Plastronics.

34.     Plastronics seeks damages for Hwang's breaches of the Assignment Agreement in the form of lost profit damages or a reasonable royalty damages, and related costs and expenses.

35.     Further details of Plastronics contentions concerning damages can be found in the expert reports of Chase Perry, dated February 18, 2019, and March 11, 2019, and in his subsequent supplement on March 19, 2019.

36.     Plastronics seeks attorneys' fees for Hwang's breaches of the Assignment Agreement under Section 38 of the Texas Civil Practice & Remedies Code.

37. Plastronics contends that HiCon Ltd. tortiously interfered with Plastronics Socket's pre-existing business relationship with at least HighRel.

38. Plastronics contends that HiCon Ltd., through its President and CEO Hwang, had knowledge of the continuing relationship between Plastronics Socket and HighRel and intentionally interfered by negotiating and entering into an exclusive distribution agreement with HiCon USA and/or HighRel to sell to HiCon USA and/or HighRel competing products, including test sockets which include at least one of the Accused Devices.

39. Plastronics seeks damages in the form of lost profits. Further details of Plastronics contentions concerning damages can be found in the expert reports of Chase Perry, dated February 18, 2019, and March 11, 2019, and in his subsequent supplement on March 19, 2019.

40. Plastronics contends that Hwang assisted or encouraged HiCon Ltd. to tortiously interfere with Plastronics Socket's relationships with at least HighRel by improperly transferring or licensing the invention to the H-Pin, including that described in claimed in the '602 Patent and/or the Korean Application to HiCon Ltd. which in turn entered into the Distribution Agreement with HiCon USA to sell the Accused Devices and sockets that include the Accused Devices.

41. Plastronics seeks damages in the form of lost profits. Further details of Plastronics contentions concerning damages can be found in the expert reports of Chase Perry, dated February 18, 2019, and March 11, 2019, and in his subsequent supplement on March 19, 2019.

42. Plastronics contends that each of Hwang and HiCon Ltd. conspired in that each of Hwang and HiCon Ltd. was a member of a combination of two or more persons or entities, namely Hwang, HiCon Ltd., HiCon Co., HiCon USA, and/or HighRel.

43. Plastronics contends that the object of the combination of Hwang, HiCon Ltd., and HiCon USA and/or HighRel was to accomplish: (1) an unlawful purpose, namely to commit patent

infringement as described above, breaches of contract as described above, and/or tortious interference with prospective relations as described above; or (2) a lawful purpose by unlawful means, namely to improperly enter into the exclusive distribution agreement by committing patent infringement as described above, breaches of contract as described above, and/or tortious interference with prospective relations as described above.

44.     Plastronics contends that Hwang, HiCon Ltd., HiCon Co., HiCon USA, and/or HighRel had a meeting of the minds on the object or course of action.

45.     Plastronics contends that Hwang and HiCon Ltd. had a meeting of the minds to improperly transfer or license the invention to the H-Pin, including that described and claimed in the '602 Patent and/or the Korean Application to HiCon Ltd. and/or HiCon Co., HiCon USA, and/or HighRel had a meeting of the minds to improperly enter into the Distribution Agreement to distribute, make, use, import, provide, supply, sell, and/or offer for sale competing products, including test sockets that include at least one of the Accused Devices in the United States.

46.     Plastronics contends that Hwang, HiCon Ltd., HiCon Co., HiCon USA, and/or HighRel had a meeting of the minds to first improperly transfer and/or license of the invention to the H-Pin, including that described and claimed in the '602 Patent and/or the Korean Application to HiCon Ltd. and/or HiCon Co. in order to then improperly enter into the Distribution Agreement with HiCon USA and/or HighRel.

47.     Plastronics contends that one of the members committed an unlawful, overt act to further the object or course of action.

48.     Plastronics contends that HiCon Ltd. committed patent infringement as described above, HiCon Co. committed patent infringement as described above, HiCon USA and/or HighRel committed patent infringement as described above, Hwang committed breaches of contract as

described above, HiCon Ltd. committed tortious interference with prospective relations as described above, and/or Hwang assisted or encouraged HiCon Ltd. in committing a tort as described above.

49.     Plastronics seeks damages in the form of lost profits, or barring that measure, a reasonable royalty.  Further details of Plastronics contentions concerning damages can be found in the expert reports of Chase Perry, dated February 18, 2019, and March 11, 2019, and in his subsequent supplement on March 19, 2019.

50.     Plastronics seeks exemplary damages from Hwang and/or HiCon Ltd. pursuant to Chapter 41 of the Texas Civil Practice & Remedies Code, as Hwang's and/or HiCon Ltd.'s actions were grossly negligent and/or malicious, and were of such a nature and character, and committed with such a degree of culpability, as to justify the award of exemplary damages. Indeed, Hwang's and/or HiCon Ltd.'s conduct here offends the public sense of justice and propriety, and justice will be well served by the imposition of exemplary damages against Hwang and/or HiCon Ltd.

51.     Plastronics contends that Hwang had intimate and personal knowledge of the business relationships of Plastronics Socket, including its existing relationship with HighRel due to his employment with Plastronics Socket.

52.     Plastronics contends that Hwang's assistance, encouragement, and/or conspiracy to interfere with this business relationship with HighRel, when viewed objectively from Hwang's standpoint at the time of such interference, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plastronics Socket, namely the risk of loss of business, profits, revenue, and customers to Plastronics Socket, which did occur.

53.     Plastronics contends that Hwang had actual, subjective awareness of this risk due to his intimate and personal knowledge of the business relationships of Plastronics Socket, but

proceeded with conscious indifference to the rights of Plastronics Socket.

54.     Plastronics contends that Hwang further had a specific intent to cause substantial injury or harm to Plastronics Socket by assisting, encouraging, and/or conspiring to interfere with the business relationships of Plastronics Socket, specifically usurping a longtime customer of Plastronics Socket, namely HighRel, NXP, Intel, ON Semiconductor, and Micron, for his own financial gain. As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

55.     Plastronics contends that HiCon Ltd., through its President and CEO Hwang, had intimate and personal knowledge of the business relationships of Plastronics Socket, including its relationship with HighRel due to his employment with Plastronics Socket.

56.     Plastronics contends that HiCon Ltd.'s interference and conspiracy to interfere, through its President and CEO Hwang, with this existing business relationship with HighRel, when viewed objectively from HiCon Ltd.'s standpoint at the time of such interference, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plastronics Socket, namely the risk of loss of business, profits, revenue, and customers to Plastronics Socket, which did occur.

57.     Plastronics contends that HiCon Ltd., through its President and CEO Hwang, had actual, subjective awareness of this risk due to its intimate and personal knowledge, via its President and CEO Hwang, of the existing business relationships of Plastronics Socket, but proceeded with conscious indifference to the rights of Plastronics Socket.

58.     Plastronics contends that HiCon Ltd., through its President and CEO Hwang, further had a specific intent to cause substantial injury or harm to Plastronics Socket by interfering and conspiring to interfere with the existing business relationships of Plastronics Socket,

specifically usurping a longtime customer of Plastronics Socket, namely HighRel, NXP, Intel, ON Semiconductor, and Micron, for its own financial gain. As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

59.     Plastronics contends that Hwang is the listed inventor of the '602 Patent.

60.     Plastronics contends that Plastronics paid a law firm to obtain an H1-B visa for Hwang.  The parties disagree as to the exact amount.

Plastronics object to Defendants' Contentions below as follows.  Defendants have repeatedly changed their contention paragraphs, with the latest arriving at 11:40 p.m. on June 3, 2019.  Plastronics do not waive any right to object due to Defendants' continuous changes, and reserve the right to supplement and update their objections.

| Defendants' Contention No(s). | Objection |
| --- | --- |
| 7, 11 (including footnote), 58, 71, 77, 79, 99, 102, 103, 1124, 118, 119, 120, 121, 122, 123, 124, 125, 129, 131, 135, 136, 137, 138, 140, 141, 142, 148, 149, 150, 151, 152, 161, 165, 166, 167, 170, 172, 181, 182, 184, 193, 194, 195, 201, 202, 203, 210, 211, 212, 220, 221, 222, 223, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, | Plastronics object to these contentions of Defendants because they contain new allegations, causes of actions, and/or defenses that Defendants' have not pleaded in any pleading.<br><br>Defendants notified Plastronics on June 3, 2019 at 5:41 p.m. that Defendants decided to not pursue their estoppel and implied license theories.  Without waiving any objection, Plastronics will work with Defendnats on Plastronics' objections. |
| 5, 6, 11, 12, 144 | Plastronics objects to these contentions of Defendants because they include arguments that have been stricken by the Court. Plastronics object to Defendants' inclusion of the argument that "HiCon" is "indistinguishable" from Hwang.  This specific argument has been stricken by the Court.  *See* Dkt. No. 223 at 3. |
| 7 | Plastronics object to this contention of Defendants because it contains arguments that the Court has already ruled on.  Namely, the Court has already ruled that Plastronics |

| | |
|---|---|
| | has standing. *See* Dkt. No. 168 at 4-5; *see also* Dkt. No. 183. |
| 11, 58, 99, 184, 187, 218 | Plastronics object to these contentions of Defendants because they contain new allegations, causes of actions, and/or defenses that Defendants' have abandoned. For example, Defendants have expressly abandoned any claim for fraudulent inducement by deleting it from Hwang's amended answer. Further, Defendants have abandoned and agreed to dismiss any counterclaim for breach of the licensing provision in the Royalty Agreement. Also, Defendants have abandoned any claim for an exceptional case under 35 U.S.C. § 285. *See* Dkt. No. 234 at 7. |

**Defendants' Contentions:**

In providing these contentions, Hwang does not concede that all of these issues are appropriate for trial, nor does it waive any of the issues presented or that will be presented in its motions for summary judgment, motions to strike, or motions in limine. Hwang objects to Plastronics' attempts to characterize Hwang's claims and defenses and Hwang's view of this case

1.      Hwang contends that he is the sole listed inventor on the '602 Patent.

2.      Hwang contends that the '602 Patent expires on September 30, 2025.

3.      Hwang contends that Plastronics paid a law firm approximately $15,000 in legal fees to obtain an H1-B visa for Mr. Hwang.

4.      Hwang contends that HiCon is Mr. Hwang's sole proprietorship.

5.      Hwang contends that Mr. Hwang and HiCon are the same and legally indistinguishable for all purposes in this case and otherwise.

6.      Hwang contends that Mr. Hwang and HiCon are separate and legally distinct from HiCon Co., Ltd. for all purposes in this case and otherwise.

7.      Hwang contends that Plastronics H-Pin lacks standing to assert any claim in this

action based on the Royalty Agreement, the Assignment Agreement, or the '602 Patent. Plastronics H-Pin (i) is not a party to the Royalty Agreement or the Assignment Agreement, (ii) has no rights under or interest in the Royalty Agreement or the Assignment Agreement, (iii) is not an assignee of the '602 Patent, and (iv) has no rights under or interest in the '602 Patent.

8. Hwang further contends that Plastronics lacks standing to assert any claim under the '602 Patent in this action because not all owners of the '602 Patent—namely Mr. Hwang/HiCon—have joined in the action.

9. Hwang contends that Mr. Hwang did not agree to or otherwise authorize any assignment of rights in the Royalty Agreement, the Assignment Agreement, or the '602 Patent to Plastronics H-Pin.

10. Hwang contends that Plastronics should take nothing by way of its patent-infringement claims.

11. Hwang contends that, because Mr. Hwang and HiCon are legally indistinguishable, HiCon owns an undivided one-half interest in the '602 Patent.

12. Hwang contends that, because HiCon is legally indistinguishable from Mr. Hwang, HiCon was authorized at all times to practice all claims of the '602 Patent in the United States because Mr. Hwang owns an undivided one-half interest in the '602 Patent.

13. Hwang contends that any alleged making, offering to sell, selling, or importing into the United States of the Accused Devices by Mr. Hwang or HiCon could not infringe the '602 Patent because Mr. Hwang/HiCon own an undivided one-half interest in the '602 Patent and are thus authorized to practice the '602 Patent.

14. Hwang contends that Plastronics will be unable to prove that HiCon Co., Ltd. or HiCon directly or indirectly infringed the '602 Patent.

15.     Hwang contends that HiCon Co., Ltd. and HiCon have not infringed, and do not infringe, directly or indirectly, any claim of the '602 Patent for at least the reasons set forth in Hwang's Motion for Summary Judgment Regarding Patent Infringement and Breach of Contract (Dkt. No. 209).

16.     Hwang contends that, if the fact finder determines that Mr. Hwang licensed the '602 Patent to HiCon Co., Ltd. and/or HiCon, then HiCon Co., Ltd. and HiCon have not infringed, do not infringe, and cannot infringe, directly or indirectly, any claim of the '602 Patent because they are licensed to practice the '602 Patent.

17.     Hwang contends that Plastronics will be unable to prove that HiCon Co., Ltd.'s or HiCon's actions induced any third party's actions that allegedly directly infringed the '602 Patent.

18.     Hwang contends that Plastronics will be unable to prove that HiCon Co., Ltd. or HiCon knew or should have known that any of its actions would induce actual infringement of the '602 Patent.

19.     Hwang contends that Plastronics will be unable to prove that HiCon Co., Ltd. or HiCon had a specific intent to induce any third party to infringe the '602 Patent.

20.     Hwang contends that Plastronics will be unable to prove that HiCon Co., Ltd.'s or HiCon's actions contributed to any third party's actions that allegedly directly infringed the '602 Patent.

21.     Hwang contends that Plastronics will be unable to prove that HiCon Co., Ltd. or HiCon knew or should have known that any of its actions would contribute to actual infringement of the '602 Patent.

22.     Hwang contends that Plastronics will be unable to prove that HiCon Co., Ltd. or HiCon had any intent to contribute to any third party's alleged infringement of the '602 Patent.

23. Hwang contends that Plastronics will be unable to prove any specific act of infringement by HiCon Co., Ltd. or HiCon regarding the '602 Patent.

24. Hwang contend that Plastronics will be unable to prove any specific act of infringement by any third party regarding the '602 Patent.

25. Hwang contends that the doctrine of patent exhaustion bars all of Plastronics' patent-infringement claims.

26. Hwang contends that HiCon has not infringed, and does not infringe, directly or indirectly, any claim of the '602 Patent because all sales of the Accused Devices to HiCon or from HiCon were authorized sales that exhausted all rights to the '602 Patent and an authorized sale outside of the United States exhausts all patent rights just as if the sale had been made inside the United States.

27. Hwang contends that HiCon Co., Ltd. has not indirectly infringed, and does not indirectly infringe, any claim of the '602 Patent because all sales of the Accused Devices from HiCon Co. Ltd. were authorized sales that exhausted all rights to the '602 Patent and an authorized sale outside of the United States exhausts all patent rights just as if the sale had been made inside the United States.

28. Hwang contends that Plastronics did not provide actual notice of its infringement claims to Hwang with respect to the '602 Patent prior to suing Hwang on January 1, 2018.

29. Hwang contends that, even if the jury finds infringement of the '602 Patent, Plastronics will be unable to prove that it is entitled to the damages it claims for such infringement, at least for the reasons set forth in the reports of Hwang's damages expert, Dr. James Woods.

30. Hwang contends that, even if the jury finds infringement of any asserted claim of the '602 Patent, Plastronics' proposed and claimed damages award is excessive and unsupportable,

at least for the reasons set forth in the reports of Hwang's damages expert, Dr. James Woods.

31.     Hwang contends that Plastronics is not entitled to any form of injunctive relief, even if the jury finds infringement of the '602 Patent.

32.     Hwang contends that the Court should not condition the denial of injunctive relief for Plastronics on Hwang's payment of reasonable royalties for future infringement.

33.     Hwang contends that Plastronics cannot show it would be irreparably harmed by any continued use of the Accused Devices.

34.     Hwang contends that Plastronics cannot show that there is no remedy at law that would be adequate to compensate Plastronics for continued use of the Accused Devices.

35.     Hwang contends that Plastronics cannot show that, considering the balance of hardships between Hwang and Plastronics, a remedy in equity is warranted.

36.     Hwang contends that Plastronics cannot show that the public interest would be served by a permanent injunction.

37.     Hwang contends that Plastronics will be unable to prove that any alleged infringement by HiCon Co., Ltd. or HiCon was willful.

38.     Hwang contends that Plastronics will be unable to prove that HiCon Co., Ltd. or HiCon intentionally or knowingly infringed any asserted claim of the '602 Patent.

39.     Hwang contends that Plastronics will be unable to prove that HiCon Co., Ltd. or HiCon was engaged in allegedly infringing conduct that was willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

40.     Hwang contends that Plastronics should take nothing by way of its claims for breach of contract.

41.     Hwang contends that the Royalty Agreement is not a valid, binding, and

enforceable contract as to Mr. Hwang.

42.     Hwang contends that Plastronics will be unable to prove that that the Royalty Agreement is a valid, binding, and enforceable contract as to Mr. Hwang.

43.     Hwang contends that Plastronics will be unable to show that Mr. Hwang breached the Royalty Agreement.

44.     Hwang contends that all of Plastronics' claims for alleged breach of the Royalty Agreement are barred by the statute of limitations.

45.     Hwang contends that the discovery rule does not apply to Plastronics' claims for alleged breach of the Royalty Agreement.

46.     Hwang contends that all of the conduct that Plastronics contends constitutes a breach of the Royalty Agreement occurred more than four years before Plastronics filed this action.

47.     Hwang contends that Plastronics knew about, was aware of, or reasonably should have been aware of all of the conduct that it contends constitutes a breach of the Royalty Agreement more than four years before Plastronics filed this action.

48.     Hwang contends that, to the extent the Royalty Agreement is a valid, binding, and enforceable contract as to Mr. Hwang, Mr. Hwang performed all of his obligations under the Royalty Agreement, if any.

49.     Hwang contends that any obligation Mr. Hwang had to perform under the Royalty Agreement was excused or discharged by Plastronics prior material breach of the Royalty Agreement.

50.     Hwang contends that Plastronics repudiated the Royalty Agreement.

51.     Hwang contends that Plastronics indicated to Hwang by unconditional words or actions that Plastronics would not perform its obligations under the Royalty Agreement.

52.      Hwang contends that Plastronics did not have a just excuse to refuse to perform Plastronics' obligations under the Royalty Agreement.

53.      Hwang contends that Plastronics' refusal to perform its obligations under the Royalty Agreement was not based on a genuine mistake or misunderstanding by Plastronics.

54.      Hwang contends that Plastronics did not timely retract its repudiation of the Royalty Agreement.

55.      Hwang contends that Plastronics' own fraud bars any right Plastronics may have to recover under the Royalty Agreement.

56.      Hwang contends that Plastronics or one or more of its agents knowingly made material, false representation to Mr. Hwang with the intent to induce Mr. Hwang to execute the Royalty Agreement.

57.      Hwang contends that Mr. Hwang reasonably relied on the material, knowingly false representations that Plastronics or one or more of its agents made when he decided to execute the Royalty Agreement.

58.      Hwang contends that Mr. Hwang was damaged by relying on the material, knowingly false representations that Plastronics or one or more of its agents made when he decided to execute the Royalty Agreement.

59.      Hwang contends that the Royalty Agreement should be rescinded as a result of Plastronics' fraud.

60.      Hwang contends that Plastronics could have but failed to mitigate the alleged damages it suffered, if any, from Mr. Hwang's alleged breached of the Royalty Agreement, that such alleged damages could have been remediated, and that Plastronics' failure to remediate its alleged damages bars Plastronics from recovering any damages under the Royalty Agreement.

61.     Hwang contends that Plastronics waived all of its rights, if any, under the Royalty Agreement.

62.     Hwang contends that Plastronics showed a conscious intent to waive all of its rights, if any, under the Royalty Agreement, through Plastronics' express actions or conduct inconsistent with an intent to claim its rights, if any, under the Royalty Agreement.

63.     Hwang contends that Plastronics waived all of it rights, if any, under the Royalty Agreement, through (i) Plastronics' prolonged silence regarding Mr. Hwang's alleged breaches of the Royalty Agreement or (ii) Plastronics' inactions in asserting its alleged rights under the Royalty Agreement.

64.     Hwang contends that it is entitled to offset against the amounts Plastronics owes to Hwang under the Royalty Agreement any amounts Hwang may owe to Plastronics under the Royalty Agreement.

65.     Hwang contends that the Royalty Agreement is ambiguous.

66.     Hwang contends that extraneous evidence, including but not limited to written correspondence between Mr. Hwang and agents of Plastronics Socket and drafts of the Royalty Agreement, bears on and evidences the parties' intended meaning of the language of the Royalty Agreement.

67.     Hwang contends that, at the time they entered into the Royalty Agreement, Mr. Hwang and Plastronics Socket agreed that the Royalty Agreement provides as follows:

      a.     the term "H-Pin project," as used in the Royalty Agreement, excludes Mr. Hwang's Korean patent; and

      b.     the terms "third party" and "another entity" do not include entities over which Mr. Hwang has a controlling interest.

68.     Hwang contends that the Royalty Agreement does not cover any Korean patent or Korean patent application.

69.     Hwang contends that Plastronics is not entitled to recover any damages under the Royalty Agreement.

70.     Hwang contends that Plastronics will be unable to prove that it is entitled to recover any damages under the Royalty Agreement, at least for the reasons set forth in the reports of Hwang's damages expert, Dr. James Woods.

71.     Hwang contends that the Assignment Agreement is not a valid, binding, and enforceable contract as to Hwang.

72.     Hwang contends that Plastronics will be unable to prove that that the Assignment Agreement is a valid, binding, and enforceable contract as to Mr. Hwang.

73.     Hwang contends that Plastronics will be unable to show that Mr. Hwang breached the Assignment Agreement.

74.     Hwang contends that that the Assignment Agreement did not and does not require Hwang to assign or otherwise transfer to Plastronics any other inventions or patents, whether United States patent or otherwise, including but not limited to patents on which Mr. Hwang is the sole named inventor and of which Mr. Hwang is the sole owner.

75.     Hwang contends that all of Plastronics' claims for alleged breach of the Assignment Agreement are barred by the statute of limitations.

76.     Hwang contends that the discovery rule does not apply to Plastronics' claims for alleged breach of the Assignment Agreement.

77.     Hwang contends that all of the conduct that Plastronics contends constitutes a breach of the Assignment Agreement occurred more than four years before Plastronics filed this

action.

78.    Hwang contends that Plastronics knew about, was aware of, or reasonably should have been aware of all of the conduct that it contends constitutes a breach of the Assignment Agreement more than four years before Plastronics filed this action.

79.    Hwang contends that, to the extent the Assignment Agreement is a valid, binding, and enforceable contract as to Mr. Hwang, Mr. Hwang performed all of his obligations under the Assignment Agreement, if any.

80.    Hwang contends that any obligation Mr. Hwang had to perform under the Assignment Agreement was excused or discharged by Plastronics' prior material breach of the Assignment Agreement.

81.    Hwang contends that Plastronics repudiated the Assignment Agreement.

82.    Hwang contends that Plastronics indicated to Hwang by unconditional words or actions that Plastronics would not perform its obligations under the Assignment Agreement.

83.    Hwang contends that Plastronics did not have a just excuse to refuse to perform Plastronics' obligations under the Assignment Agreement.

84.    Hwang contends that Plastronics' refusal to perform its obligations under the Assignment Agreement was not based on a genuine mistake or misunderstanding by Plastronics.

85.    Hwang contends that Plastronics did not timely retract its repudiation of the Assignment Agreement.

86.    Hwang contends that Plastronics' own fraud bars any right Plastronics may have to recover under the Assignment Agreement.

87.    Hwang contends that Plastronics or one or more of its agents knowingly made material, false representation to Mr. Hwang with the intent to induce Mr. Hwang to execute the

Assignment Agreement.

88.     Hwang contends that Mr. Hwang reasonably relied on the material, knowingly false representations that Plastronics or one or more of its agents made when he decided to execute the Assignment Agreement.

89.     Hwang contends that Mr. Hwang was damaged by relying on the material, knowingly false representations that Plastronics or one or more of its agents made when he decided to execute the Assignment Agreement.

90.     Hwang contends that the Assignment Agreement should be rescinded as a result of Plastronics' fraud.

91.     Hwang contends that Plastronics could have but failed to mitigate the alleged damages it suffered, if any, from Mr. Hwang's alleged breached of the Assignment Agreement, that such alleged damages could have been remediated, and that Plastronics' failure to remediate its alleged damages bars Plastronics from recovering any damages under the Assignment Agreement.

92.     Hwang contends that Plastronics waived all of its rights, if any, under the Assignment Agreement.

93.     Hwang contends that Plastronics showed a conscious intent to waive all of its rights, if any, under the Assignment Agreement, through Plastronics' express actions or conduct inconsistent with an intent to claim its rights, if any, under the Assignment Agreement.

94.     Hwang contends that Plastronics waived all of it rights, if any, under the Assignment Agreement through (i) Plastronics' prolonged silence regarding Mr. Hwang's alleged breaches of the Assignment Agreement or (ii) Plastronics' inactions in asserting its alleged rights under the Assignment Agreement.

95.     Hwang contends that it is entitled to offset against the amounts Plastronics owes to Hwang under the Assignment Agreement against any amounts Hwang may owe to Plastronics under the Assignment Agreement.

96.     Hwang contends that the Assignment Agreement is ambiguous.

97.     Hwang contends that extraneous evidence, including but not limited to written correspondence between Mr. Hwang and agents of Plastronics Socket and drafts of the Royalty Agreement and Assignment Agreement, bears on and evidences the parties' intended meaning of the language of the Assignment Agreement.

98.     Hwang contends that, at the time they entered into the Assignment Agreement, Mr. Hwang and Plastronics Socket agreed that the term "invention disclosed in said application" in the Assignment Agreement does not include Mr. Hwang's Korean patent.

99.     Hwang contends that the Assignment Agreement does not cover any Korean patent or Korean patent application.

100.    Hwang contends that Plastronics is not entitled to recover any damages under the Assignment Agreement.

101.    Hwang contends that Plastronics will be unable to prove that it is entitled to recover any damages under the Assignment Agreement, at least for the reasons set forth in the reports of Hwang's damages expert, Dr. James Woods.

102.    Hwang contends that Plastronics should take nothing by way of its claim for tortious interference with prospective business relations.

103.    Hwang contends that HiCon Co., Ltd. did not tortiously interfere with any of Plastronics' alleged prospective business relations.

104.     Hwang contends that Plastronics will be unable to show that HiCon Co., Ltd. tortiously interfered with any of Plastronics' alleged prospective business relationships.

105.     Hwang contends that HiCon Co., Ltd. did not intentionally interfere with or act with a conscious desire to intentionally interfere with any alleged business relationship that Plastronics had but had not yet reduced to a contract at the time of the alleged interference.

106.     Hwang contends that HiCon Co., Ltd. did not intentionally interfere with any of Plastronics' alleged continuing business relationships that were not formalized in a contract.

107.     Hwang contends that Plastronics will be unable to show that it had a business relationship that it not yet reduced to a contract or continuing business relationship that was not formalized in a contract with which HiCon Co., Ltd. interfered.

108.     Hwang contends that any alleged act of tortious interference with Plastronics' alleged prospective business relationship by HiCon Co., Ltd. was not independently tortious.

109.     Hwang contends that HiCon Co., Ltd. did not commit any tortious acts with respect to Plastronics or anyone else.

110.     Hwang contends that Plastronics' claim for tortious interference with prospective business relations is barred by the economic-loss doctrine.

111.     Hwang contends that Plastronics did not suffer any damages as a result of HiCon Co., Ltd.'s alleged tortious interference with Plastronics' alleged prospective business relationships.

112.     Hwang contends that Plastronics will be unable to show that it suffered any damages as a result of HiCon Co., Ltd.'s alleged tortious interference with Plastronics' alleged prospective business relationships.

113.     Hwang contends that Plastronics could have but failed to mitigate the alleged

damages it suffered, if any, from HiCon Co., Ltd.'s alleged tortious interference with Plastronics' alleged prospective business relationships.

114.     Hwang contends that all of Plastronics' claims for alleged tortious interference with prospective business relations are barred by the statute of limitations.

115.     Hwang contends that all of the conduct that Plastronics contends constitutes tortious interference with prospective business relations occurred more than two years before Plastronics filed this action.

116.     Hwang contends that Plastronics knew about, was aware of, or reasonably should have been aware of all of the conduct that it contends constitutes tortious interference with prospective business relations two years before Plastronics filed this action.

117.     Hwang contends that Plastronics' claims for tortious interference with prospective business relations is barred because all of the complained-of conduct involved HiCon Co., Ltd. exercising its own rights in good faith.

118.     Hwang contends that Plastronics' claims for tortious interference with prospective business relations is barred because at all times HiCon Co., Ltd. was exercising its own rights that were equal to or superior to Plastronics' rights.

119.     Hwang contends that Plastronics' claims for tortious interference with prospective business relations is barred because at all times HiCon Co., Ltd.'s interfering conduct, if any, was a justified exercise of (i) HiCon Co., Ltd.'s own legal rights or (ii) a good-faith claim to a colorable legal right.

120.     Hwang contends that Plastronics' claim for tortious interference with prospective business relations is preempted by federal patent law, including but not limited to 35 U.S.C. § 1 et seq.

121.     Hwang contends that "assisting and encouraging" is not a recognized cause of action under Texas law.

122.     Hwang contends that Plastronics should take nothing by way of its claim for assisting and encouraging.

123.     Hwang contends that Mr. Hwang did not assist and encourage HiCon Co., Ltd.'s alleged tortious interference with any of Plastronics' alleged prospective business relations.

124.     Hwang contends that Plastronics will be unable to show that Mr. Hwang assisted or encouraged HiCon Co., Ltd.'s alleged tortious interference with any of Plastronics' alleged prospective business relations.

125.     Hwang contends that Mr. Hwang did not know that any of HiCon Co., Ltd.'s alleged conduct constituted tortious interference with any of Plastronics' alleged prospective business relations.

126.     Hwang contends that Mr. Hwang did not intend to assist HiCon Co., Ltd. in committing any tort, including but not limited to tortious interference with any of Plastronics' alleged prospective business relations.

127.     Hwang contends that Plastronics' claim for assisting and encouraging is barred by the economic-loss doctrine.

128.     Hwang contends that Plastronics did not suffer any damages as a result of Mr. Hwang's alleged assisting and encouraging HiCon Co., Ltd.'s alleged tortious interference with Plastronics' alleged prospective business relationships.

129.     Hwang contends that Plastronics will be unable to show that it suffered any damages as a result of Mr. Hwang's alleged assisting and encouraging HiCon Co., Ltd.'s alleged tortious interference with Plastronics' alleged prospective business relationships.

130.     Hwang contends that Plastronics could have but failed to mitigate the alleged damages it suffered, if any, from Mr. Hwang's alleged assisting and encouraging HiCon Co., Ltd.'s alleged tortious interference with Plastronics' alleged prospective business relationships.

131.     Hwang contends that all of Plastronics' claims for alleged assisting and encouraging tortious interference with prospective business relations are barred by the statute of limitations.

132.     Hwang contends that all of the conduct that Plastronics' contends constitutes assisting and encouraging tortious interference with prospective business relations occurred more than two years before Plastronics filed this action.

133.     Hwang contends that Plastronics knew about, was aware of, or reasonably should have been aware of all of the conduct that it contends constitutes assisting and encouraging tortious interference with prospective business relations two years before Plastronics filed this action.

134.     Hwang contends that Plastronics' claims for assisting and encouraging tortious interference with prospective business relations is barred because all of the complained-of conduct involved HiCon Co., Ltd. or Mr. Hwang exercising their own rights in good faith.

135.     Hwang contends that Plastronics' claims for assisting and encouraging tortious interference with prospective business relations is barred because at all times HiCon Co., Ltd. and Mr. Hwang were exercising their own rights that were equal to or superior to Plastronics' rights.

136.     Hwang contends that Plastronics' claims for assisting and encouraging tortious interference with prospective business relations is barred because at all times HiCon Co., Ltd.'s and Mr. Hwang's allegedly tortious conduct, if any, was a justified exercise of (i) HiCon Co., Ltd.'s and Mr. Hwang's own legal rights or (ii) a good-faith claim to a colorable legal right.

137.     Hwang contends that Plastronics' assisting and encouraging tortious interference

with prospective business relations claim fails for all the same reasons Hwang contends Plastronics' claim for tortious interference with prospective business relations fails.

138. Hwang contends that Plastronics' claim for assisting and encouraging tortious interference with prospective business relations is preempted by federal patent law, including but not limited to 35 U.S.C. § 1 et seq.

139. Hwang contends that Plastronics should take nothing by way of its conspiracy claim.

140. Hwang contends that Mr. Hwang did not conspire with anyone, including but not limited to HiCon Co., Ltd. and/or HiCon, to accomplish an unlawful purpose. Furthermore, he could not conspire with HiCon, as HiCon is legally the same as Mr. Hwang.

141. Hwang contends that Plastronics will be unable to show that Hwang conspired with anyone, including but not limited to HiCon Co., Ltd. and/or HiCon, to accomplish an unlawful purpose.

142. Hwang contends that Mr. Hwang did not conspire with anyone, including but not limited to HiCon Co., Ltd. and/or HiCon, to accomplish a lawful purpose by unlawful means.

143. Hwang contends that Plastronics will be unable to show that Hwang conspired with anyone, including but not limited to HiCon Co., Ltd. and/or HiCon, to accomplish a lawful purpose by unlawful means.

144. Hwang contends that Plastronics' conspiracy claims are preempted by federal patent law, including but not limited to 35 U.S.C. § 1 et seq.

145. Hwang contends that Plastronics' conspiracy claims based on an underlying claim for infringement of the '602 Patent fail for all the same reasons Hwang contends Plastronics' patent-infringement claims fail.

146.     Hwang contends that Plastronics' conspiracy claims are bared by Mr. Hwang's and HiCon's ownership of the '602 Patent.

147.     Hwang contends that Plastronics' conspiracy claims are bared because breach of contract is not a tort and cannot form the basis of a conspiracy claim.

148.     Hwang contends that Plastronics' conspiracy claims based on an underlying claim for breach of contract fail for all the same reasons Hwang contends Plastronics' breach of contract claims fail.

149.     Hwang contends that Plastronics' conspiracy claims are bared because there was no tortious interference with Plastronics' alleged prospective business relations.

150.     Hwang contends that Plastronics' conspiracy claims are bared because no party is liable for tortiously interfering with Plastronics' alleged prospective business relations.

151.     Hwang contends that Plastronics' conspiracy claims based on an underlying claim of tortious interference with prospective business relations fail for all the same reasons Hwang contends Plastronics' claim for tortious interference with prospective business relations fails.

152.     Hwang contends that Plastronics' conspiracy claims based on an underlying claim of assisting and encouraging tortious interference with prospective business relations fail for all the same reasons Hwang contends Plastronics' claim for assisting and encouraging tortious interference with prospective business relations fails.

153.     Hwang contends that there was no meeting of the minds among HiCon Co., Ltd., HiCon, and/or Mr. Hwang to further the object or course of the alleged conspiracy.

154.     Hwang contends that Plastronics will be unable to show that there was a meeting of the minds among HiCon Co., Ltd., HiCon, and/or Mr. Hwang to further the object or course of the alleged conspiracy.

155.    Hwang contends that HiCon Co., Ltd., HiCon, and Mr. Hwang committed no unlawful, over act in furtherance of the alleged conspiracy.

156.    Hwang contends that Plastronics will be unable to show that HiCon Co., Ltd., HiCon, or Mr. Hwang committed an unlawful, overt act in furtherance of the alleged conspiracy.

157.    Hwang contends that Plastronics' conspiracy claims are barred by the economic-loss doctrine.

158.    Hwang contends that Plastronics did not suffer any damages as a result of any alleged conspiracy.

159.    Hwang contends that Plastronics will be unable to show that it suffered any damages as a result of any alleged conspiracy.

160.    Hwang contends that Plastronics could have but failed to mitigate the alleged damages it suffered, if any, from any alleged conspiracy.

161.    Hwang contends that all of Plastronics' conspiracy claims are barred by the statute of limitations.

162.    Hwang contends that all of the conduct that Plastronics contends constitutes a conspiracy occurred more than two years before Plastronics filed this action.

163.    Hwang contends that Plastronics knew about, was aware of, or reasonably should have been aware of all of the conduct that it contends constitutes a conspiracy occurred two years before Plastronics filed this action.

164.    Hwang contends that Plastronics should receive nothing by way of its First Amended Complaint.

165.    Hwang contends that Plastronics will be unable to prove that it is entitled to receive anything by way of its First Amended Complaint.

166.    Hwang contends that Hwang's alleged conduct did not damage Plastronics and that Plastronics is not entitled to damages of any kind whatsoever (including any pre-judgment or post-judgment interest), at least for the reasons set forth in the reports of Hwang's damages expert, Dr. James Woods.

167.    Hwang contends that Plastronics will be unable to prove that it suffered or is entitled to any damages from Hwang, at least for the reasons set forth in the reports of Hwang's damages expert, Dr. James Woods.

168.    Hwang contends that all of Plastronics' claims for damages in tort are barred by the economic-loss doctrine.

169.    Hwang contends that Plastronics could have but failed to mitigate all of the alleged damages it seeks by way of this action.

170.    Hwang contends that Plastronics is not entitled to any supplemental, enhanced, exemplary or punitive damages; any accounting or reports from Hwang; or attorneys' fees, experts' fees, expenses, or costs.

171.    Hwang contends that Plastronics' claim to and right to recover damages, if any, is limited and controlled by 35 U.S.C. § 286.

172.    Hwang contends that Plastronics' claim to and right to recover supplemental, enhanced, exemplary, or punitive damages on its non-patent-infringement claims, if any, is limited and controlled by Chapter 41 of the Texas Civil Practice and Remedies Code.

173.    Hwang contends that Plastronics' claim to and right to recover supplemental, enhanced, exemplary or punitive damages on any claim is barred, in whole or in part, because such an award would be grossly excessive and in violation of the Texas and United States Constitutions.

174.    Hwang contends that Plastronics is not entitled to recover any exemplary damages

because Hwang did not engage in conduct involving intentional fraud, malice, or gross negligence.

175.     Hwang contends that Plastronics will be unable to show by clear and convincing evidence that Hwang engaged in conduct involving intentional fraud, malice, or gross negligence with respect to all claims governed by Texas substantive law.

176.     Hwang contends that the Royalty Agreement is a valid and enforceable contract against Plastronics Socket and Plastronics H-Pin.

177.     Hwang contends that Plastronics Socket could not legally assign its obligations and liabilities under the Royalty Agreement to Plastronics H-Pin and that any attempt to do so is null and void.

178.     Hwang contends that, to the extent Plastronics Socket assigned its rights and obligations under the Royalty Agreement to Plastronics H-Pin, Plastronics Socket remains liable under the Royalty Agreement.

179.     Hwang contends that Plastronics Socket and Plastronics H-Pin failed to pay Mr. Hwang the royalties they owe him under the Royalty Agreement.

180.     Hwang contends that Plastronics Socket improperly attempted to or did assign rights to the '602 Patent to Plastronics H-Pin.

181.     Hwang contends that Mr. Hwang performed or tendered performance of all of his obligations under the Royalty Agreement, if any, and has satisfied all other conditions precedent to his recovering damages from Plastronics under the Royalty Agreement.

182.     Hwang contends that Plastronics Socket breached the Royalty Agreement by failing to pay Mr. Hwang the royalties he was due on the '602 Patent under the Royalty Agreement.

183.     Hwang contends that Plastronics Socket breached the Royalty Agreement by attempting to or actually assigning rights in the '602 Patent to Plastronics H-Pin.

184.    Hwang contends that Plastronics H-Pin breached the Royalty Agreement by failing to pay Mr. Hwang the royalties he was due on the '602 Patent under the Royalty Agreement.

185.    Hwang contends that Plastronics' breaches of the Royalty Agreement were material.

186.    Hwang contends that Plastronics' material breaches of the Royalty Agreement have harmed and damaged Mr. Hwang.

187.    Hwang contends that Plastronics owes Mr. Hwang contractual damages for Plastronics' breaches of the Royalty Agreement, including at least those damages set forth in the expert reports of Hwang's damages expert, Dr. James Woods.

188.    Hwang contends that Plastronics' breaches of the Royalty Agreement required Mr. Hwang to retain the undersigned counsel to enforce his rights under the Royalty Agreement and that Mr. Hwang has incurred attorneys' fees and costs in enforcing his rights under the Royalty Agreement.

189.    Hwang contends that Plastronics will be unable to show that Mr. Hwang's claims for breach of the Royalty Agreement are barred by the statute of limitations.

190.    Hwang contends that Plastronics will be unable to show that all of Plastronics' conduct that breached its obligations under the Royalty Agreement occurred more than four years before Mr. Hwang sued Plastronics for breach of the Royalty Agreement.

191.    Hwang contends that Plastronics' obligations under the Royalty Agreement, including but not limited to Plastronics' obligations to pay royalties to Mr. Hwang, were continuing obligations.

192.    Hwang contends that Plastronics will be unable to show that Mr. Hwang repudiated the Royalty Agreement.

193.    Hwang contends that Plastronics will be unable to show that Mr. Hwang, by unconditional words or actions, indicated to Plastronics that Mr. Hwang would not perform his obligations, if any, under the Royalty Agreement.

194.    Hwang contends that Plastronics will be unable to show that Mr. Hwang did not have a just excuse to refuse to perform his obligations, if any, under the Royalty Agreement.

195.    Hwang contends that Plastronics will be unable to show that Mr. Hwang's refusal to perform his obligations under the Royalty Agreement, if any, was not based on a genuine mistake or misunderstanding by Mr. Hwang.

196.    Hwang contends that Plastronics will be unable to show that Mr. Hwang did not timely retract his repudiation, if any, Royalty Agreement.

197.    Hwang contends that the Assignment Agreement is a valid and enforceable contract against Plastronics Socket and Plastronics H-Pin.

198.    Hwang contends that Plastronics Socket could not legally assign its obligations and liabilities under the Assignment Agreement to Plastronics H-Pin and that any attempt to do so is null and void.

199.    Hwang contends that, to the extent Plastronics Socket assigned its rights and obligations under the Assignment Agreement to Plastronics H-Pin, Plastronics Socket remains liable under the Assignment Agreement

200.    Hwang contends that Plastronics Socket and Plastronics H-Pin breached the Assignment Agreement by failing to deliver to Mr. Hwang accountings he is due under the Assignment Agreement.

201.    Hwang contends that Mr. Hwang performed or tendered performance of all of his obligations under the Assignment Agreement, if any, and has satisfied all other conditions

precedent to his recovering damages from Plastronics under the Royalty Agreement.

202.    Hwang contends that Plastronics' breaches of the Assignment Agreement were material.

203.    Hwang contends that Plastronics' material breaches of the Assignment Agreement have harmed and damaged Mr. Hwang.

204.    Hwang contends that Plastronics owes Mr. Hwang contractual damages for Plastronics' breaches of the Assignment Agreement, including at least those damages set forth in the expert reports of Hwang's damages expert, Dr. James Woods.

205.    Hwang contends that Plastronics' breaches of the Assignment Agreement required Mr. Hwang to retain the undersigned counsel to enforce his rights under the Assignment Agreement and that Mr. Hwang has incurred attorneys' fees and costs in enforcing his rights under the Assignment Agreement.

206.    Hwang contends that Plastronics will be unable to show that Mr. Hwang's claims for breach of the Assignment Agreement are barred by the statute of limitations.

207.    Hwang contends that Plastronics will be unable to show that all of Plastronics' conduct that breached its obligations under the Assignment Agreement occurred more than four years before Mr. Hwang sued Plastronics for breach of the Assignment Agreement.

208.    Hwang contends that Plastronics will be unable to show that Mr. Hwang repudiated the Assignment Agreement.

209.    Hwang contends that Plastronics will be unable to show that Mr. Hwang, by unconditional words or actions, indicated to Plastronics that Mr. Hwang would not perform his obligations, if any, under the Assignment Agreement.

210.    Hwang contends that Plastronics will be unable to show that Mr. Hwang did not

have a just excuse to refuse to perform his obligations, if any, under the Assignment Agreement.

211.    Hwang contends that Plastronics will be unable to show that Mr. Hwang's refusal to perform his obligations under the Assignment Agreement, if any, was not based on a genuine mistake or misunderstanding by Mr. Hwang.

212.    Hwang contends that Plastronics will be unable to show that Mr. Hwang did not timely retract his repudiation, if any, Assignment Agreement.

213.    Hwang contends that, under Chapter 38 of the Texas Civil Practice and Remedies Code, Mr. Hwang is entitled to recover from Plastronics his reasonable attorneys' fees and costs he incurred in enforcing his rights under the Royalty Agreement and the Assignment Agreement and a corresponding award.

214.    Hwang contends that this is an exceptional case entitling Hwang to recover from Plastronics Hwang's reasonable attorneys' fees incurred in connection with this action, as provided in 35 U.S.C. § 285, and a corresponding award.

215.    Hwang contend that Plastronics practices the claims of the '602 Patent.

216.    Hwang contends that Plastronics is attempting in this Pretrial Order to introduce theories of recovery that it did not plead.  Hwang contends that Plastronics is barred from presenting any unpleaded theories of recovery and any related alleged facts at trial, including but not limited to the issues listed below.

217.    Hwang contends that Plastronics is barred from presenting any evidence or theories of recovery in support of Plastronics' claims that Plastronics failed to disclose in discovery, including but not limited to in Plastronics' responses to Hwang's written discovery requests.

218.    Hwang contends that Plastronics did not plead any cause of action for patent infringement or seek any related relief against Mr. Hwang and, therefore, Plastronics is barred

from presenting any such theory or evidence at trial.

219.    Hwang contends that Plastronics did not plead any cause of action for patent infringement based on a patent other than the '602 Patent and, therefore, Plastronics is barred from presenting any such theory or evidence at trial.

220.    Hwang contends that Plastronics did not plead any cause of action for breach of contract or seek any related relief against HiCon Co., Ltd. or HiCon and, therefore, Plastronics is barred from presenting any such theory or evidence at trial.

221.    Hwang contends that Plastronics did not plead any cause of action for breach of contract or seek any related relief against Hwang based on any Korean patent or application, including but not limited to the alleged assignment, practice, or infringement of any Korean patent or application (including but not limited to Korean patent application no. 10-2004-0079649) and, therefore, Plastronics is barred from presenting any such theory at trial.

222.    Hwang contends that Plastronics did not plead the existence of any contractual relationship of any kind between Plastronics Socket or Plastronics H-Pin on the on hand and HiCon Co., Ltd. or HiCon on the other and, therefore, Plastronics is barred from presenting any such theory or evidence at trial.

223.    Hwang contends that Plastronics did not plead any cause of action for tortious interference of any kind or seek any related relief against Mr. Hwang or HiCon and, therefore, Plastronics is barred from presenting any such theory or evidence at trial.

224.    Hwang contends that Plastronics did not plead any cause of action for assisting and encouraging, to the extent such a cause of action exists under Texas law, or seek any related relief against HiCon Co., Ltd. or HiCon and, therefore, Plastronics is barred from presenting any such theory or evidence at trial.

225. Hwang contends that Plastronics did not plead any cause of action for conspiracy or seek any related relief against HiCon and, therefore, Plastronics is barred from presenting any such theory or evidence at trial.

226. Hwang contends that Plastronics did not plead any theory of veil piercing—including but not limited to traditional veil piercing, reverse veil piercing, alter ego, or "sham transactions"—and, therefore, Plastronics is barred from presenting any such theory or evidence at trial. Further, Hwang contends there is no basis in fact or law to disregard the corporate separateness of HiCon Co., Ltd. in any regard.

227. Hwang contends that Plastronics did not plead any cause of action regarding trade secrets, misappropriation, or unauthorized use of Plastronics' allegedly confidential information or seek any related relief against HiCon Co., Ltd. HiCon, or Mr. Hwang and, therefore, Plastronics is barred from presenting any such theories or evidence at trial.

228. Hwang contends that Plastronics did not plead affirmative defenses to Hwang's claims for breaches of the Royalty Agreement and Assignment Agreement other than repudiation and limitations and, therefore, Plastronics is barred from presenting any unpleaded breach of contract affirmative defenses or related evidence at trial.

229. Hwang contends that Plastronics did not plead any breach of contract theory related to Mr. Hwang's grant of an implied license to either HiCon Co., Ltd. or HiCon and, therefore, Plastronics is barred from presenting any such theory or evidence at trial.

230. Hwang contends that Plastronics did not plead or disclose in any way, including but not limited to in Plastronics' discovery responses or expert report, any market-share theory regarding lost-profit damages and, therefore, Plastronics is barred from presenting any such theory or evidence at trial.

231. Hwang objects to Plastronics contentions to the extent the contentions advance theories or subject matter that Plastronics failed to plead or are inconsistent with Plastronics' discovery responses, including but not limited to the contentions in Plastronics' contention paragraphs 2, 10, 25, 31, 37, 40, 41, 45, 46, 50, and 54.

## E.  STIPULATIONS AND UNCONTESTED FACTS

1. Subject to Hwang's subject matter and personal jurisdictional challenges[4], venue is proper in this Court.

2. Plastronics Socket is a limited partnership organized and existing under the laws of the State of Texas, having an assumed name of Plastronics Socket Partners LP, with a principal place of business at 2601 Texas Drive, Irving, Texas 75062.

3. Plastronics Socket was formed on June 30, 2003.

4. Plastronics H-Pin is a limited partnership organized and existing under the laws of the State of Texas with a principal place of business at 2601 Texas Drive, Irving, Texas 75062.

5. Mr. Hwang is an individual who is a citizen of the Republic of Korea and resides in the Republic of Korea.

6. HiCon Co., Ltd. is a Korean company with a principal place of business at 9th floor, Star Tower, 37, Sagimakgol-ro 62 beon-gil, Jungwon-gu, Seongnam-si, Gyeonggi-do, Republic of Korea, 13211.

7. HiCon has a principal place of business at 9th floor, Star Tower, 37, Sagimakgol-ro 62 beon-gil, Jungwon-gu, Seongnam-si, Gyeonggi-do, Republic of Korea, 13211.

8. Generally speaking, district courts have original jurisdiction over patent cases. [5]

---

[4] Plastronics' assert that this Court has personal jurisdiction over all Defendants. *See* Dkt. No. 84 at 4, ¶ 17; *see also* Dkt. No. 212 at 4, ¶ 19; *see also* Dkt. No. 136; *see also* Dkt. No. 163.

[5] Plastronics contend that Mr. Hwang has admitted that this Court has subject matter jurisdiction over this case at least because this Court is a "district court[]" that has "jurisdiction over patent cases."

9.	Diversity jurisdiction exists under 28 U.S.C. § 1332.

10.	This Court has specific personal jurisdiction over Mr. Hwang for Plaintiffs' alleged breach-of-contract claims against him.

11.	This Court has specific personal jurisdiction over HiCon to the same extent it has personal jurisdiction over Mr. Hwang.

12.	Mr. Hwang previously worked for a Korean company named Micro Contact Solutions ("MCS") as a chief engineer.

13.	Plastronics Socket was a partner with MCS on burn-in sockets for the memory market.

14.	In or around 2002 or 2003, Mr. Hwang (as an MCS employee) and David Pfaff of Plastronics Socket traveled to Germany to visit Siemens electronics memory division, as Plastronics had relationships with Siemens. The purpose of this trip was to establish MCS as a vendor of Siemens. During that trip, Mr. Hwang asked Mr. Pfaff to hire Mr. Hwang and bring Mr. Hwang and his family to the USA.  Mr. Pfaff thought it was a good idea.

15.	Plastronics hired Mr. Hwang shortly after the H1-B visa was approved on or about October 2004.

16.	Mr. Hwang is the listed inventor of the '602 Patent.

17.	The application from which the '602 Patent issued was filed on September 30, 2005 and received U.S. Application No. 11/240,438 (the "'438 Application").

18.	The '438 Application claimed priority to Korean Application No. 10-2004-0079649, filed October 6, 2004 (the "Korean Application").

19.	Prior to filing the '438 Application on September 30, 2005, Mr. Hwang and Plastronics Socket executed a document titled "Contract Agreement on 'H-Pin Project' Royalty

between Mr. DW Hwang (Hwang) and Plastronics Socket Partners, LP (PSP)" (the "Royalty Agreement") on September 24, 2005. The Royalty Agreement states that it was "made and entered into" on September 21, 2005.

20. Plastronics produced a representative copy of the Royalty Agreement in this litigation bearing Bates numbers PLAS00000775-776.

21. Mr. Hwang and Plastronics Socket were both residents of Texas when they executed the Royalty Agreement.

22. The parties agree that Texas substantive law governs the parties' claims and defenses regarding alleged breaches of the Royalty Agreement and its construction and meaning.

23. The Royalty Agreement states that Plastronics Socket will pay for the development of the invention disclosed in the Korean Application (the "H-Pin Project")[6] and worldwide patent rights where needed and Plastronics Socket will be assigned the patent in all worldwide areas jointly with Mr. Hwang except Korea.

24. The Royalty Agreement states that neither Plastronics Socket nor Mr. Hwang can grant a license for the patents covering the H-Pin Project without approval from the other party.

25. The Royalty Agreement states that: in the event that patent royalties are paid by a third party, Plastronics Socket and Mr. Hwang will split the royalties 50%/50% respectively; in the event when Mr. Hwang works directly for another entity, Plastronics Socket will be entitled to 1.5% of royalty (Plastronics Socket and Mr. Hwang will split royalty 50%/50% respectively) of gross sales of patented products from the H-Pin Project from this entity; if socket is sold with H-Pin contact included, this rate is also 3/2% of socket price. Under the Royalty Agreement, Plastronics Socket agreed to pay Mr. Hwang 3% of gross sales of "H-pin project" products after

---

[6] Mr. Hwang contends that the term "H-Pin Project" as used in the Royalty Agreement is ambiguous and that it should be interpreted to exclude Mr. Hwang's Korean patent.

all non-reoccurring capital costs for the life of the patent. Plastronics Socket also agreed to pay 3% of the socket price if it sold a socket with an H-pin contact included. [Dkt. 93, ¶ 231]

26.     The Royalty Agreement states that: remuneration will be made twice annually within 45 days of the close of books on June 30th and December 31st with calculated results with back data.

27.     On October 4, 2005, Mr. Hwang and Plastronics Socket executed a document titled "Assignment and Agreement" (the "Assignment Agreement").

28.     Plastronics produced a representative copy of the Assignment Agreement in this litigation bearing Bates numbers PLAS00000643-645.

29.     Mr. Hwang and Plastronics Socket were both residents of Texas when they executed the Assignment Agreement.

30.     The parties agree that Texas substantive law governs the parties' claims and defenses regarding alleged breaches of the Assignment Agreement and its construction and meaning.

31.     The Assignment Agreement states that Mr. Hwang transferred 50% of the '602 Patent to Plastronics Socket.

32.     The Assignment Agreement further provides that the Assignees, both Mr. Hwang and Plastronics Socket, agree to not transfer any interest in or license the invention disclosed in the '438 Application in the United States and throughout the world, without the written consent of all Assignees, and that each Assignee shall be entitled to accounting for any revenue received, and for profits, if any, made from the invention, for the term of any patents which may issue for the invention, in the United States and throughout the world.

33.     The Assignment Agreement states that Mr. Hwang agrees to "communicate to said

Assignees, or their successors, assigns and legal representatives, any facts known to me respecting any improvements."

34.     The '602 Patent was duly and legally issued on April 11, 2006.

35.     Claim 1 of the '602 Patent is at issue and asserted in this action.

36.     Claim 1 of the '602 Patent recites: A contact for electronic devices, comprising: an upper contact pin, comprising: a contact part having a predetermined shape and contacting a lead of an object to be tested, two support protrusions, and a body; a lower contact pin coupled to the upper contact pin to be orthogonal to the upper contact pin; a spring fitted over a predetermined area between the upper and lower contact pins; the body of the upper contact pin including inclined surfaces and hooks provided on an end of the body, and two elastic parts provided to be symmetrical with respect to each other; a first channel defined by the two elastic parts, and providing a space to allow movement of the lower contact pin, when the lower contact pin is coupled to the upper contact pin; and a second channel defined in the body of the upper contact pin to accommodate hooks of the lower contact pin therein such that the lower contact pin is movable, the second channel being in electrical contact with hooks and side contact surfaces of the lower contact pin.

37.     Plastronics Socket began manufacturing and selling H-pin products covered by the '602 Patent in or around October 2006..

38.     Plastronics H-Pin has manufactured and sold products covered by the '602 Patent since at least December 31, 2012 and continues to do so.

39.     The following Plastronics products embody at least one of the claims of the '602 Patent: the H033 Series H-Pin; the H038 Series H-Pin; the H057 Series H-Pin; and the H077 Series H-Pin.

40.     In or about April 2008, Mr. Hwang left Plastronics Socket.

41.     On or about April 30, 2008, Mr. Hwang founded HiCon Co., Ltd. to manufacture and sell products.

42.     Hwang is the President and CEO of HiCon Co., Ltd.

43.     HiCon Co., Ltd. lists each of the Hi-CONTACT pin, the Hr-CONTACT pin, and the Hs-CONTACT pin (collectively, the "Accused Devices") on its website at http://hi-connector.com.

44.     Hwang registered HiCon on or about July 27, 2009.

45.     HiCon sells the Accused Devices and test sockets.

46.     HiCon has sold the Accused Devices in the United States.

47.     On or about May 27, 2010, Mr. Hwang filed Korean Application No. 10-2010-0049628 entitled "STRUCTURE FOR A SPRING CONTACT" (the "Second Korean Application").

48.     Mr. Hwang did not inform Plastronics about the Second Korean Application.

49.     On or about May 11, 2011, Mr. Hwang filed International Application No. PCT/KR2011/003447 entitled "STRUCTURE FOR A SPRING CONTACT" that claimed priority to the Second Korean Application (the "PCT Application").

50.     Mr. Hwang did not inform Plastronics about the PCT Application.

51.     On or about July 10, 2012, Mr. Hwang filed U.S. Application No. 13/521,233 entitled "STRUCTURE FOR A SPRING CONTACT" that claims priority to the PCT Application (the "'233 Application").

52.     The '233 Application issued as U.S. Patent No. 8,715,015 on May 6, 2014 (the "'015 Patent").

53.     Application number 13/521,233 was published on January 10, 2013, in publication number US 2013/0012076 A1.

54.     The application that issued as the '015 Patent did not claim priority as a division, reissue, substitution, continuation, continuation-in-part, or extension of the '602 Patent.

55.     The application that issued as the '015 Patent could not have been filed as a division, reissue, substitution, continuation, continuation-in-part, or extension of the '602 Patent.

56.     Hwang did not inform Plastronics about the '015 Patent.

57.     The specification of the '015 Patent discloses a spring contact, including: an upper contact pin having a contact portion, a head, a neck, a body and two spring holding protrusions; a lower contact pin having a construction that is the same as or similar to that of the upper contact pin and being coupled to the upper contact pin while crossing at right angles; and a spring fitted over an assembly of the upper and lower contact pins, wherein to increase the strength of the upper contact pin and increase the surface area of the contact portion, the head forms a cylindrical or square column shape or a part of the contact pin within the range from the contact portion to the spring holding protrusions has a thickness greater than the thickness of the body, thereby increasing the strength of the upper contact pin and increasing the surface area of the contact portion.

58.     Figure 18 of the '015 Patent discloses an embodiment of the spring contact. Specifically, Figure 18 is a perspective view illustrating the assembly of the upper contact pin 30, the lower contact pin 70 and the spring 111 of the second spring contact 120 according to the present invention.



59.     On December 19, 2012, Plastronics Socket underwent a divisive merger and divided itself into Plastronics Socket and Plastronics H-Pin, Ltd.HiCon Co., Ltd., through its President and CEO Mr. Hwang, was well aware of the '602 Patent since the '602 Patent issued on April 30, 2008.

60.     HiCon, through Mr. Hwang, was well aware of the '602 Patent since the '602 Patent issued on April 30, 2008.

61.     Neither Plastronics Socket nor Plastronics H-Pin has received a royalty payment from Mr. Hwang as of the filing date of the Original Complaint.

62.     Mr. Hwang has never received a royalty payment from either Plastronics Socket or Plastronics H-Pin.

63.     Plastronics accuses the following products of infringing the asserted claims of the '602 Patent: the Hi-CONTACT pin, the Hr-CONTACT pin, and the Hs-CONTACT pin.

64.     The Hi-CONTACT Pin meets each and every limitation of claim 1 of the '602 Patent.

65.     The Hs-CONTACT Pin meets each and every limitation of claim 1 of the '602 Patent.

66.     The Hr-CONTACT Pin meets each and every limitation of claim 1 of the '602 Patent.

67.     Plastronics H-Pin makes and sells a contact for electronic devices that meets each and every limitation of claim 1 of the '602 Patent. [Dkt. 93, ¶ 262]

68.     Plastronics Socket sells a contact for electronic devices that meets each and every limitation of claim 1 of the '602 Patent.

69.     Plastronics filed this action on January 19, 2018.

## F.     CONTESTED ISSUES OF FACT AND LAW

The parties identify the following issues that remain to be litigated. If any issue of law discussed below is deemed to be an issue of fact, or any issue of fact is deemed to be an issue of law, it is incorporated into the appropriate section. The parties reserve the right to identify additional factual or legal issues that may arise, including those issues raised in any motions *in limine*.

**Plastronics' Contested Issues of Law and Fact:**

1.     This Court has personal jurisdiction over HiCon Ltd.[7]

2.     HiCon Ltd.'s selling and offering for sale of its Accused Devices directly infringes claim 1 of the '602 Patent literally.

3.     HiCon Ltd. has indirectly infringed the '602 Patent by inducing others including HiCon USA and/or HighRel to directly infringe the '602 Patent, through at least the Distribution

---

[7] Only contested to the extent that HiCon Co., Ltd. can still challenge personal jurisdiction. Plastronics asserts that the Court has already ruled it has personal jurisdiction over HiCon Co., Ltd.  *See* Dkt. No. 136; *see also* Dkt. No. 163.

Agreement with HiCon USA and/or HighRel.

4.      HiCon Ltd.'s direct and indirect infringement has been and continues to be willful.

5.      HiCon Ltd. has no authority to practice the '602 Patent.

6.      HiCon Ltd. has directly infringed the '602 Patent by directly selling its Accused Devices in the United States.

7.      HiCon Ltd. directly infringed the '602 Patent by selling the Accused Devices in the United States through one or more intermediaries.

8.      HiCon Ltd. has directly infringed the '602 Patent by offering for sale the Accused Devices in the United States.

9.      HiCon Ltd. should pay Plastronics in the form of lost profits of approximately $27,464,392 to compensate Plastronics for HiCon Ltd.'s past infringement of the '602 Patent.

10.     Alternatively, HiCon Ltd. should pay Plastronics a reasonable royalty of approximately $2,406,061 to compensate Plastronics for HiCon Ltd.'s past infringement of the '602 Patent.

11.     Whether this is an exceptional case entitling Plastronics to attorneys' fees.

12.     Whether Plastronics are entitled to prejudgment interest on their attorneys' fees and costs.

13.     Because HiCon Ltd.'s infringement is willful, Plastronics damages should be enhanced.

14.     Damages should be trebled or increased in such other amount pursuant to 35 U.S.C. § 284 as the Court deems proper for HiCon Ltd.'s infringement.

15.     Whether, if willful infringement is found, this case is exceptional under 35 U.S.C. § 285, entitling Plastronics to recover attorneys' fees, expenses, and costs, due to the willful nature

of HiCon Ltd.'s infringement.

16.     Plastronics has been irreparably injured and is entitled to a permanent injunction against HiCon Ltd. for its infringement of the '602 Patent.

17.     HiCon Co. has no authority to practice the '602 Patent.

18.     HiCon Co. is not a sole proprietorship.

19.     HiCon Co. infringes the '602 Patent.

20.     HiCon Co.'s selling and offering for sale of its Accused Devices directly infringes claim 1 of the '602 Patent literally.

21.     HiCon Co. has indirectly infringed the '602 Patent by inducing others including HiCon USA and/or HighRel to directly infringe the '602 Patent, through at least the Distribution Agreement with HiCon USA and/or HighRel.

22.     HiCon Co.'s direct and indirect infringement has been and continues to be willful.

23.     HiCon Co. has directly infringed the '602 Patent by directly selling its Accused Devices in the United States.

24.     HiCon Co. directly infringed the '602 Patent by selling the Accused Devices in the United States through one or more intermediaries.

25.     HiCon Co. has directly infringed the '602 Patent by offering for sale the Accused Devices in the United States.

26.     HiCon Co. should pay Plastronics in the form of lost profits of approximately $27,464,392 to compensate Plastronics for HiCon Co.'s past infringement of the '602 Patent.

27.     Alternatively, HiCon Co. should pay Plastronics a reasonable royalty of approximately $2,406,061 to compensate Plastronics for HiCon Co.'s past infringement of the '602 Patent.

28. Whether this is an exceptional case entitling Plastronics to attorneys' fees.

29. Whether Plastronics are entitled to prejudgment interest on their attorneys' fees and costs.

30. Because HiCon Co.'s infringement is willful, Plastronics damages should be enhanced.

31. Damages should be trebled or increased in such other amount pursuant to 35 U.S.C. § 284 as the Court deems proper for HiCon Co.'s infringement.

32. Whether, if willful infringement is found, this case is exceptional under 35 U.S.C. § 285, entitling Plastronics to recover attorneys' fees, expenses, and costs, due to the willful nature of HiCon Co.'s infringement.

33. Plastronics has been irreparably injured and is entitled to a permanent injunction against HiCon Co. for its infringement of the '602 Patent.

34. Whether HiCon Co., if HiCon Co. is a sole proprietorship, is an intermediary or agent of HiCon Ltd.

35. Whether HiCon Ltd. is a party to the Distribution Agreement.

36. Whether the Distribution Agreement purports to license the '602 Patent to HiCon USA.

37. The Royalty Agreement is a valid and enforceable contract.

38. Whether any term of the Royalty Agreement is ambiguous.

39. HiCon Co. is a third party under the Royalty Agreement and whose sales of the Accused Devices and sales of sockets that include any of the Accused Devices are subject to royalties owed to Plastronics under the Royalty Agreement.

40. Hwang works directly for HiCon Co. under the Royalty Agreement and whose sales

of the Accused Devices and sales of sockets that include any of the Accused Devices are subject to royalties owed to Plastronics under the Royalty Agreement.

41. HiCon Ltd. is a third party under the Royalty Agreement and whose sales of the Accused Devices and sales of sockets that include any of the Accused Devices are subject to royalties owed to Plastronics under the Royalty Agreement.

42. Hwang works directly for HiCon Ltd. under the Royalty Agreement and whose sales of the Accused Devices and sales of sockets that include any of the Accused Devices are subject to royalties owed to Plastronics under the Royalty Agreement.

43. Whether manufacturing the Accused Devices by HiCon Ltd. within the scope of Korean Application No. 10-2004-0079649, filed October 6, 2006 ("Korean Application") are subject to royalty payments under the Royalty Agreement.

44. Hwang has breached the Royalty Agreement for non-payment of royalties under the Royalty Agreement.

45. Hwang has breached the Royalty Agreement for licensing the invention to the H-Pin, including that described and claimed in the '602 Patent and/or the Korean Application to HiCon Ltd., HiCon Co., and HiCon USA, LLC without obtaining the consent of Plastronics.

46. Hwang should pay Plastronics in the form of lost profits of approximately $26,272,981 to compensate Plastronics for Hwang's breaches of the Royalty Agreement.

47. Alternatively, Hwang should pay Plastronics a reasonable royalty in the amount of $2,360,861 to compensate Plastronics for Hwang's breaches of the Royalty Agreement.

48. Whether Plastronics are entitled to recover their attorneys' fees for Hwang's breaches of the Royalty Agreement under Section 38 of the Texas Civil Practice & Remedies Code.

49.     The Assignment Agreement is a valid and enforceable contract.

50.     Whether any term of the Assignment Agreement is ambiguous.

51.     The provision in the Assignment Agreement "generally do everything possible to vest title in said Assignees and to aid said Assignees, their successors, assigns and legal representatives to obtain and enforce proper protection for said invention in all countries" requires Hwang to join this lawsuit.

52.     Hwang breached his obligations to Plastronics in the Assignment Agreement by transferring an interest in and/or licensing the invention of the '602 Patent to HiCon Ltd. and/or HiCon Co. without obtaining the written consent of Plastronics Socket.

53.     Hwang breached his obligations to Plastronics in the Assignment Agreement by failing to inform Plastronics of any improvement to the '602 Patent, including the '015 Patent and its foreign counterparts.

54.     Hwang breached his obligations to Plastronics in the Assignment Agreement by failing to provide an accounting to Plastronics for any revenue received, and for profits, if any made from the H-Pin invention.

55.     Hwang should pay Plastronics in the form of lost profits of approximately $26,272,981 to compensate Plastronics for Hwang's breaches of the Assignment Agreement.

56.     Alternatively, Hwang should pay Plastronics a reasonable royalty in the amount of $2,360,861 to compensate Plastronics for Hwang's breaches of the Assignment Agreement.

57.     Whether Plastronics are entitled to recover their attorneys' fees for Hwang's breaches of the Assignment Agreement under Section 38 of the Texas Civil Practice & Remedies Code.

58.     HiCon Ltd. has intentionally tortiously interfered with one or more of Plastronics'

business relationships, including Plastronics' relationship with HighRel.

59.     HiCon Ltd., through its President and CEO Hwang, had knowledge of the continuing relationship between Plastronics Socket and HighRel and interfered by negotiating and entering into an exclusive distribution agreement with HiCon USA and/or HighRel to sell to HiCon USA and/or HighRel competing products, including the Accused Devices and test sockets which include at least one of the Accused Devices.

60.     HiCon Ltd.'s conduct was independently tortious or unlawful due to its infringement of the '602 Patent.

61.     HiCon Ltd.'s interference proximately caused Plastronics Socket and Plastronics H-Pin injury. On information and belief, the exclusive distribution agreement between HiCon Ltd. and HiCon USA and/or HighRel obligates HiCon USA and/or HighRel to distribute competing products of HiCon Ltd., including test sockets that include the Accused Devices, instead of Plastronics Socket's products.

62.     HiCon Ltd. should pay Plastronics in the form of lost profits of approximately $27,464,392 to compensate Plastronics for HiCon Ltd.'s tortious interference.

63.     Alternatively, HiCon Ltd. should pay Plastronics a reasonable royalty of approximately $2,406,061 to compensate Plastronics for HiCon Ltd.'s tortious interference.

64.     Hwang assisted or encouraged HiCon Ltd. to tortiously interfere with Plastronics Socket's relationships with at least HighRel by improperly transferring or licensing the invention to the H-Pin, including that described in claimed in the '602 Patent and/or the Korean Application to HiCon Ltd. which in turn entered into the Distribution Agreement with HiCon USA to sell the Accused Devices and sockets that include the Accused Devices.

65.     Hwang should pay Plastronics in the form of lost profits of approximately

$27,464,392 to compensate Plastronics for Hwang's assistance or encouragement of HiCon Ltd.'s tortious interference.

66. Alternatively, Hwang should pay Plastronics a reasonable royalty of approximately $2,406,061 to compensate Plastronics for Hwang' assistance or encouragement of HiCon Ltd.'s tortious interference.

67. Each of Hwang and HiCon Ltd. conspired in that each of Hwang and HiCon Ltd. was a member of a combination of two or more persons or entities, namely Hwang, HiCon Ltd., HiCon Co., HiCon USA, and/or HighRel.

68. The object of the combination of Hwang, HiCon Ltd., and HiCon USA and/or HighRel was to accomplish: (1) an unlawful purpose, namely to commit patent infringement as described above, breaches of contract as described above, and/or tortious interference with prospective relations as described above; or (2) a lawful purpose by unlawful means, namely to improperly enter into the exclusive distribution agreement by committing patent infringement as described above, breaches of contract as described above, and/or tortious interference with prospective relations as described above.

69. Hwang, HiCon Ltd., HiCon Co., HiCon USA, and/or HighRel had a meeting of the minds on the object or course of action.

70. Hwang and HiCon Ltd. had a meeting of the minds to improperly transfer or license the invention to the H-Pin, including that described and claimed in the '602 Patent and/or the Korean Application to HiCon Ltd. and/or HiCon Co., HiCon USA, and/or HighRel had a meeting of the minds to improperly enter into the Distribution Agreement to distribute, make, use, import, provide, supply, sell, and/or offer for sale competing products, including test sockets that include at least one of the Accused Devices in the United States.

71. Hwang, HiCon Ltd., HiCon Co., HiCon USA, and/or HighRel had a meeting of the minds to first improperly transfer and/or license of the invention to the H-Pin, including that described and claimed in the '602 Patent and/or the Korean Application to HiCon Ltd. and/or HiCon Co. in order to then improperly enter into the Distribution Agreement with HiCon USA and/or HighRel.

72. One of the members committed an unlawful, overt act to further the object or course of action.

73. HiCon Ltd. committed patent infringement as described above, HiCon Co. committed patent infringement as described above, HiCon USA and/or HighRel committed patent infringement as described above, Hwang committed breaches of contract as described above, HiCon Ltd. committed tortious interference with prospective relations as described above, and/or Hwang assisted or encouraged HiCon Ltd. in committing a tort as described above.

74. Hwang and/or HiCon Ltd. should pay Plastronics in the form of lost profits of approximately $27,464,392 to compensate Plastronics for Hwang's and/or HiCon Ltd.'s conspiratorial actions.

75. Alternatively, Hwang and/or HiCon Ltd. should pay Plastronics a reasonable royalty of approximately $2,406,061 to compensate Plastronics for Hwang's and/or HiCon Ltd.'s conspiratorial actions.

76. Whether Plastronics are entitled exemplary damages from Hwang and/or HiCon Ltd. pursuant to Chapter 41 of the Texas Civil Practice & Remedies Code, as Hwang's and/or HiCon Ltd.'s actions were grossly negligent and/or malicious, and were of such a nature and character, and committed with such a degree of culpability, as to justify the award of exemplary damages. Indeed, Hwang's and/or HiCon Ltd.'s conduct here offends the public sense of justice

and propriety, and justice will be well served by the imposition of exemplary damages against Hwang and/or HiCon Ltd.

77.     Hwang had intimate and personal knowledge of the business relationships of Plastronics Socket, including its existing relationship with HighRel due to his employment with Plastronics Socket.

78.     Hwang's assistance, encouragement, and/or conspiracy to interfere with this business relationship with HighRel, when viewed objectively from Hwang's standpoint at the time of such interference, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plastronics Socket, namely the risk of loss of business, profits, revenue, and customers to Plastronics Socket, which did occur.

79.     Hwang had actual, subjective awareness of this risk due to his intimate and personal knowledge of the business relationships of Plastronics Socket, but proceeded with conscious indifference to the rights of Plastronics Socket.

80.     Hwang further had a specific intent to cause substantial injury or harm to Plastronics Socket by assisting, encouraging, and/or conspiring to interfere with the business relationships of Plastronics Socket, specifically usurping a longtime customer of Plastronics Socket, namely HighRel, NXP, Intel, ON Semiconductor, and Micron, for his own financial gain. As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

81.     HiCon Ltd., through its President and CEO Hwang, had intimate and personal knowledge of the business relationships of Plastronics Socket, including its relationship with HighRel due to his employment with Plastronics Socket.

82.     HiCon Ltd.'s interference and conspiracy to interfere, through its President and CEO Hwang, with this existing business relationship with HighRel, when viewed objectively from

HiCon Ltd.'s standpoint at the time of such interference, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plastronics Socket, namely the risk of loss of business, profits, revenue, and customers to Plastronics Socket, which did occur.

83. HiCon Ltd., through its President and CEO Hwang, had actual, subjective awareness of this risk due to its intimate and personal knowledge, via its President and CEO Hwang, of the existing business relationships of Plastronics Socket, but proceeded with conscious indifference to the rights of Plastronics Socket.

84. HiCon Ltd., through its President and CEO Hwang, further had a specific intent to cause substantial injury or harm to Plastronics Socket by interfering and conspiring to interfere with the existing business relationships of Plastronics Socket, specifically usurping a longtime customer of Plastronics Socket, namely HighRel, NXP, Intel, ON Semiconductor, and Micron, for its own financial gain. As a result, Plastronics H-Pin has experienced decreased supply sales to Plastronics Socket.

85. Whether Hwang has shown by a preponderance of the evidence that Hwang should be relieved of his obligations under the contracts due to any of the affirmative defenses set forth in Defendants' Answer to the Amended Complaint and Counterclaims (Dkt. 84) including but not limited to Statute of Limitations (¶184), Repudiation (¶185), Lack of Consideration (¶186), Unilateral Mistake (¶187), Mutual Mistake (¶188), Failure to Perform Conditions Precedent (¶189), Prior Material Breach (¶190), Failure of Consideration (¶191), Unconscionability (¶192), License, Unclean Hands, Waiver, Acquiescence, and Estoppel (¶193), Mitigation of Damages (¶194), Discharge or Excuse (¶195), Lack of Standing (¶196), Fraud (¶197), Consent (¶198), Release (¶199), Preemption (¶203), Privilege (¶206), Justification (¶207), Good Faith (¶211).

86. Whether Hwang has shown by a preponderance of the evidence that any of the

terms of any of Assignment Agreement and Royalty Agreement is ambiguous (Ambiguity (¶¶ 200 – 201)).

87.     Whether Hwang has shown by a preponderance of the evidence that Plastronics' claim for assisting or encouraging against Hwang is barred because HiCon Ltd. does not infringe the '602 Patent (Noninfringement ¶202).

88.     Whether Defendants have shown by a preponderance of the evidence that Plastronics' claims for injunctive relief are barred because an adequate remedy at law exists (Injunctive Relief Barred ¶204).

89.     Whether Hwang has shown by a preponderance of the evidence that Plastronics' claims against Hwang for assisting or encouraging and conspiracy are barred wholly or in part because HiCon Ltd. did not tortiously interfere with any prospective relationship of Plastronics (No Tortious Interference ¶205).

90.     Whether Hwang has shown by a preponderance of the evidence that Plastronics' claims against Hwang for assisting or encouraging and conspiracy are barred wholly or in part because HiCon Ltd. did not does not infringe the '602 Patent (Noninfringement ¶208).

91.     Whether Hwang has shown by a preponderance of the evidence that Plastronics' claims against Hwang for assisting or encouraging and conspiracy are barred wholly or in party because HiCon Ltd. did not infringe the '602 Patent because Hwang granted HiCon Ltd. a license to the '602 Patent or the Korean counterpart of the '602 Patent (License ¶209).

92.     Whether Hwang has shown by a preponderance of the evidence that Plastronics' claims against Hwang for assisting or encouraging and conspiracy are barred wholly or in party because Plastronics' infringement claim against HiCon Ltd. is barred wholly or in party due to patent exhaustion (Exhaustion ¶210).

93.     Whether Hwang has shown by a preponderance of the evidence that Plastronics' claims for damages against Hwang must be offset by any amount Plastronics owe Hwang (Offset ¶212).

94.     Whether Defendants have shown by a preponderance of the evidence that Plaintiffs' claim for damages, if any, are barred either wholly or in part by at least 35 U.S.C. §§ 286 and 287 and may additionally be limited by 28 U.S.C. § 1498 (Limitation on Damages ¶213).

95.     Whether Defendants have shown by a preponderance of the evidence that Plastronics' claim for exemplary damages is barred either wholly or in part because Hwang did not engage in conduct involving intentional fraud, malice, or gross negligence. Whether Defendants have shown by a preponderance of the evidence that Plastronics' claim for exemplary damages is barred either wholly or in part because it would result in an award that is grossly excessive and in violation of the Texas and United States Constitutions. Whether Defendants have shown by a preponderance of the evidence that Plastronics' claim for exemplary damages is further controlled and limited by the provisions of Chapter 41 of the Texas Civil Practices and Remedies Code (Limitations on Exemplary Damages ¶214).¶

96.     Whether Hwang is entitled to lost royalties, and related costs and expenses as a result of any breach of the Royalty Agreement by Plastronics H-Pin.

97.     Whether Plastronics Socket breached the Assignment Agreement by transferring its interest in the invention of the '602 Patent to Plastronics H-Pin from on or around December 31, 2012 to the present without obtaining Hwang's written consent.

98.     Whether Plastronics Socket breached the Assignment Agreement by not providing an accounting to Hwang as prescribed by the Assignment and Agreement from on or about September 21, 2005 to the present.

99. Plastronics H-Pin is a proper party to the Assignment Agreement.

100. Whether Plastronics H-Pin breached the Assignment Agreement by not providing an accounting to Hwang as prescribed by the Assignment Agreement from on or about December 31, 2012 to the present.

101. Whether Hwang is entitled to lost royalties, and related costs and expenses as a result of any breach of the Assignment Agreement by Plastronics Socket and/or Plastronics H-Pin.

102. Whether the Royalty Agreement and the Assignment Agreement are enforceable contracts.

103. Whether Defendants have shown by a preponderance of the evidence that Plastronics Socket or Mr. David Pfaff, on behalf of Plastronics Socket, made promises to Hwang about Hwang's invention disclosed in the '602 Patent, the current and future relationship between Hwang and Plastronics, the nature and intent of the Royalty Agreement, and the nature and intent of the Assignment Agreement.

104. Whether Defendants have shown by a preponderance of the evidence that Mr. Pfaff made promises in taking certain actions, including assigning partial rights to the '602 Patent, European Patent EP1797619, Japanese Patent JP4620737, Chinese Patent CN101156282, and other related applications and patents to Plastronics Socket.

105. Whether Hwang indicated by unconditional words or actions that he will not perform his contractual obligations under the Royalty Agreement or the Assignment Agreement.

106. Whether each of Hwang's breach of contract counterclaims is barred wholly or in part by the four-year statute of limitations under TEX. CIV. PRAC. & REM. CODE § 16.051. (Dkt. No. 93, ¶351).

107. Whether each of Hwang's breach of contract counterclaims is barred because

Hwang repudiated each of the Royalty Agreement and the Assignment Agreement. (Dkt. No. 93, ¶352).

108. Whether HiCon Ltd. and/or HiCon Co. has shown by a preponderance of the evidence that Plastronics' claims against HiCon Ltd. and/or HiCon Co. are barred wholly or in part due to license, unclean hands, waiver, acquiescence, or estoppel (License, Unclean Hands, Waiver, Acquiescence, and Estoppel ¶184).

109. Whether HiCon Ltd. and/or HiCon Co. has shown by a preponderance of the evidence that Plastronics' claims against HiCon Ltd. and/or HiCon Co. because Plastronics failed to mitigate any alleged damages (Mitigation of Damages ¶185).

110. Whether HiCon Ltd. and/or HiCon Co. has shown by a preponderance of the evidence that Plastronics H-Pin lacks standing for its tortious interference and conspiracy claims against HiCon Ltd. or that Plastronics Socket lacks standing for any alleged infringement of the '602 Patent (Lack of Standing ¶186).

111. Whether Defendants have shown by a preponderance of the evidence that Plastronics' claims for injunctive relief are barred because an adequate remedy at law exists (Injunctive Relief Barred ¶187)

112. Whether Defendants have shown by a preponderance of the evidence that Plastronics' claims against HiCon Ltd. for conspiracy are barred wholly or in part because HiCon Ltd. did not tortiously interfere with any prospective relationship of Plastronics (No tortious interference ¶188)

113. Whether Defendants have shown by a preponderance of the evidence that Plastronics' claim for tortious interference with prospective relations is barred wholly or in part by the doctrine of privilege (Privilege ¶189).

114.    Whether Defendants have shown by a preponderance of the evidence that Plastronics' claims for conspiracy is barred wholly or in part by the doctrine of justification (Justification ¶190)

115.    Whether Defendants have shown by a preponderance of the evidence that Plastronics' claims against HiCon Ltd. for conspiracy are barred wholly or in part because HiCon Ltd. did not does not infringe the '602 Patent (Noninfringement ¶191).

116.    Whether Defendants have shown by a preponderance of the evidence that Plastronics' claims against HiCon Ltd. for conspiracy are barred wholly or in party because HiCon Ltd. did not infringe the '602 Patent because Hwang granted HiCon Ltd. a license to the '602 Patent or the Korean counterpart of the '602 Patent (License ¶192).

117.    Whether Defendants have shown by a preponderance of the evidence that Plastronics' patent infringement claims against HiCon Ltd. and HiCon Co. are barred wholly or in party due to patent exhaustion (Exhaustion ¶193).

118.    Whether Defendants have shown by a preponderance of the evidence that Plastronics' claim for conspiracy are barred wholly or in part because HiCon Ltd. has and had a good-faith belief in a colorable legal right to take any and all allegedly tortious actions for which Plastronics seek relief (Good Faith ¶194).

119.    Whether Defendants have shown by a preponderance of the evidence that Plastronics' claim for damages, if any, are barred either wholly or in part by at least 35 U.S.C. §§ 286 and 287 and may additionally be limited by 28 U.S.C. § 1498 (Limitation on Damages ¶195).

120.    Whether Defendants have shown by a preponderance of the evidence that Plastronics' claim for exemplary damages is barred either wholly or in part because HiCon Ltd. and HiCon Co. did not engage in conduct involving intentional fraud, malice, or gross negligence.

Whether Defendants have shown by a preponderance of the evidence that Plastronics' claim for exemplary damages is barred either wholly or in part because it would result in an award that is grossly excessive and in violation of the Texas and United States Constitutions. Whether Defendants have shown by a preponderance of the evidence that Plastronics' claim for exemplary damages is further controlled and limited by the provisions of Chapter 41 of the Texas Civil Practices and Remedies Code (Limitations on Exemplary Damages ¶196).

121.    Whether Plastronics Socket breached the Royalty Agreement by licensing the invention of the '602 Patent to Plastronics H-Pin from on or around December 31, 2012 to the present without obtaining Hwang's consent.

122.    Whether Plastronics Socket breached the Royalty Agreement by not paying any royalties to Hwang as prescribed by the Royalty Agreement from on or about September 21, 2005 to the present.

123.    Plastronics H-Pin is a proper party to the Royalty Agreement.

124.    Whether Plastronics Socket breached the Royalty Agreement by not paying any royalties to Hwang as prescribed by the Royalty Agreement from on or about December 31, 2012 to the present.

125.    Whether Hwang is entitled to "lost revenue" as a result of any breach of the Royalty Agreement by Plastronics Socket and/or Plastronics H-Pin.

Plastronics object to Defendants' Contested Issues below as follows:

| Defendants' Contested Issue No(s). | Objection |
| --- | --- |
| 2, 7, 10, 11, 23, 24, 30, 32, 33, 45, 46, 49, 55, 57, 58, 61, 71, 72, 77 | Plastronics object to these contested issues of Defendants because they contain new allegations, causes of actions, and/or defenses that Defendants' have not pleaded in any pleading. |

| | | |
|---|---|---|
| | 1, 2 | Plastronics object to this contention of Defendants because it contains arguments that the Court has already ruled on.  For example, the Court has already ruled that Plastronics has standing.  *See* Dkt. No.  168 at 4-5; *see also* Dkt. No. 183.  Further, the Court has ruled that this Court has personal jurisdiction over HiCon Ltd.  *See* Dkt. No. 136; *see also* Dkt. No. 163. |
| 51 | | Plastronics object to this issue as it is duplicative of Defendants' Contested Issue No. 46. |

**Defendants' Contested Issues of Law and Fact:**

In providing this statement, Hwang does not concede that all of these issues are appropriate for trial. Further, Hwang does not waive any of its pending motions or motions to be filed, nor does Hwang concede any issues previously decided adversely to Hwang on prior motions, including but not limited to Hwang's motions to dismiss Plastronics' claims, during summary-judgment proceedings, or otherwise.  Hwang objects to Plastronics' attempts to characterize Hwang's claims and defenses and Hwang's view of this case.

1.      Whether Plastronics has proved by a preponderance of the evidence that the Court has personal jurisdiction over HiCon Co., Ltd.

2.      Whether Plastronics H-Pin has established that it has standing to bring any claim under or related to the Royalty Agreement, the Assignment Agreement, or the '602 Patent.

3.      Whether Plastronics has proved by a preponderance of the evidence that HiCon Co., Ltd. or HiCon has directly infringed any of the asserted claims of the '602 Patent.

4.      Whether Plastronics has proved by a preponderance of the evidence that any third party directly infringed any asserted claim of the '602 Patent by using an Accused Devices.

5.      Whether Plastronics has proved by a preponderance of the evidence that HiCon

Co., Ltd. or HiCon induced any third party to directly infringe any asserted claim of the '602 Patent.

6. Whether Plastronics has proved by a preponderance of the evidence that HiCon Co., Ltd. or HiCon contributed to any third party's direct infringement of any asserted claim of the '602 Patent

7. Whether Plastronics' allegations of infringement of the '602 Patent should be dismissed with prejudice.

8. Whether HiCon Co., Ltd. has proved by a preponderance of the evidence that it was at all relevant times licensed to practice the '602 Patent.

9. Whether HiCon and HiCon Co., Ltd. have proved by a preponderance of the evidence that Plastronics' claims for direct and indirect patent infringement are barred by the doctrine of exhaustion.

10. Whether any of Plastronics' claims for tortious interference with prospective business relations, assisting and encouraging tortious interference with prospective business relations, and/or conspiracy are preempted by federal patent law, including but not limited to 35 U.S.C. § 1 et seq.

11. What amount of monetary damages, if any, Plastronics is entitled to if Plastronics proves infringement of the '602 Patent by HiCon Co., Ltd. and/or HiCon by a preponderance of the evidence.

12. Whether, if Plastronics has proved infringement of the '602 Patent by a preponderance of the evidence, Plastronics is entitled to an injunction.

13. If Plastronics is entitled to an injunction, the scope and duration of such an injunction.

14. Whether, if Plastronics has proved infringement of the '602 Patent by HiCon Co.,

Ltd. and/or HiCon by a preponderance of the evidence, whether such infringement was willful.

15. What amount of monetary damages Plastronics is entitled to if Plastronics proves willful infringement of the '602 Patent by HiCon Co., Ltd. and/or HiCon by a preponderance of the evidence.

16. Whether Plastronics is entitled to recover its costs from Hwang and, if so, in what amount.

17. Whether this case is an exceptional case pursuant to 35 U.S.C. § 285 and whether Plastronics is entitled to an award of attorneys' fees against HiCon Co., Ltd. and/or HiCon pursuant to § 285.

18. Whether Plastronics has proved by a preponderance of the evidence that the Royalty Agreement and/or the Assignment Agreement is a valid, binding, and enforceable contract as to Mr. Hwang.

19. Whether Plastronics has proved by a preponderance of the evidence that Mr. Hwang breached the Royalty Agreement and/or the Assignment Agreement.

20. Whether Hwang has proved by a preponderance of the evidence that Plastronics' claims that Mr. Hwang breached the Royalty Agreement and/or the Assignment Agreement are barred by the statute of limitations.

21. Whether Hwang has proved by a preponderance of the evidence that Plastronics repudiated the Royalty Agreement and/or Assignment Agreement.

22. Whether Hwang has proved by a preponderance of the evidence that Plastronics' own fraud bars Plastronics from recovering for any alleged breach of the Royalty Agreement and/or Assignment Agreement.

23. Whether Hwang has proved by a preponderance of the evidence that the Royalty

Agreement and/or Assignment Agreement should be rescinded as a result of Plastronics' own fraud.

24.     Whether Hwang has proved by a preponderance of the evidence that Plastronics waived its rights, if any, under the Royalty Agreement and/or Assignment Agreement.

25.     Whether Hwang has proved by a preponderance of the evidence that any obligation Mr. Hwang had to perform under the Royalty Agreement and/or Assignment Agreement was excused by Plastronics' prior material breaches.

26.     Whether the Royalty Agreement is ambiguous as a matter of law.

27.     If Royalty Agreement is ambiguous as a matter of law, whether:

  a.     the term "H-Pin project," as used in the Royalty Agreement, excludes Mr. Hwang's Korean patent; and

  b.     the terms "third party" and "another entity" do not include entities over which Mr. Hwang has a controlling interest.

28.     Whether the Royalty Agreement covers any Korean patent or Korean patent application.

29.     Whether the Assignment Agreement is ambiguous as a matter of law.

30.     If Assignment Agreement is ambiguous as a matter of law, whether the term "invention disclosed in said application" in the Assignment Agreement does not include Mr. Hwang's Korean patent.

31.     Whether the Assignment Agreement covers any Korean patent or Korean patent application

32.     Whether Hwang has proved by a preponderance of the evidence that Plastronics could have but failed to mitigate its damages, if any, as a result of any breach of the Royalty

Agreement and/or Assignment Agreement.

33.     What amount of monetary damages, if any, Plastronics is entitled to if Plastronics proves by a preponderance of the evidence that Mr. Hwang breached the Royalty Agreement and/or the Assignment Agreement.

34.     Whether Plastronics is entitled to any award of reasonable attorneys' fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code if Plastronics proves by a preponderance of the evidence that Mr. Hwang breached the Royalty Agreement and/or the Assignment Agreement and, if so, the amount of such an award.

35.     Whether Hwang has proved by a preponderance of the evidence that the Royalty Agreement and/or Assignment Agreement are valid, binding, and enforceable contracts as to Plastronics Socket and/or Plastronics H-Pin.

36.     Whether Hwang has proved by a preponderance of the evidence that Plastronics Socket and/or Plastronics H-Pin breached the Royalty Agreement and/or Assignment Agreement.

37.     Whether Plastronics Socket and/or Plastronics H-Pin have proved by a preponderance of the evidence that Mr. Hwang's claims that Plastronics Socket and/or Plastronics H-Pin breached the Royalty Agreement and/or the Assignment Agreement are barred by the statute of limitations.

38.     Whether Plastronics Socket and/or Plastronics H-Pin have proved by a preponderance of the evidence that Mr. Hwang repudiated the Royalty Agreement and/or the Assignment Agreement.

39.     What amount of monetary damages, if any, Mr. Hwang is entitled to if Mr. Hwang proves by a preponderance of the evidence that Plastronics Socket and/or Plastronics H-Pin breached the Royalty Agreement and/or the Assignment Agreement.

40.     Whether Mr. Hwang is entitled to any award of his reasonable attorneys' fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code if Mr. Hwang proves by a preponderance of the evidence that Plastronics Socket and/or Plastronics H-Pin breached the Royalty Agreement and/or the Assignment Agreement and, if so, the amount of such an award.

41.     Whether the Distribution Agreement between HiCon and HiCon USA contains an express or implied license to practice the '602 Patent.

42.     Whether Plastronics has proved by a preponderance of the evidence that HiCon Co., Ltd. tortiously interfered with Plastronics' prospective business relations.

43.     Whether Hwang has proved by a preponderance of the evidence that Plastronics' claim for tortious interference with prospective business relations is barred by the statute of limitations.

44.     Whether Plastronics' claim for tortious interference with prospective business relations is barred by the economic-loss doctrine.

45.     Whether Hwang has proved by a preponderance of the evidence that Plastronics could have but failed to mitigate its damages, if any, as a result of any tortious interference with prospective business relations.

46.     Whether Hwang has proved by a preponderance of the evidence that Plastronics' claim for tortious interference with prospective business relations is barred because all of the complained-of conduct involved HiCon Co., Ltd. exercising its own rights in good faith.

47.      Whether Hwang has proved by a preponderance of the evidence that Plastronics' claim for tortious interference with prospective business relations is barred because at all times HiCon Co., Ltd was exercising its own rights that were equal to or superior to Plastronics' claimed rights.

48.     Whether Hwang has proved by a preponderance of the evidence that Plastronics' claim for tortious interference with prospective business relations is barred because at all times HiCon Co., Ltd.'s interfering conduct, if any, was a justified exercise of HiCon Co., Ltd.'s own legal rights.

49.     Whether Hwang has proved by a preponderance of the evidence that Plastronics' claims for tortious interference with prospective business relations is barred because at all times HiCon Co., Ltd.'s interfering conduct, if any, was a justified exercise by HiCon Co., Ltd. of a good-faith claim to a colorable legal right.

50.     What amount of actual monetary damages, if any, Plastronics is entitled to if Plastronics proves by a preponderance of the evidence that HiCon Co., Ltd. tortiously interfered with Plastronics' prospective business relationships.

51.     If Plastronics proves by a preponderance of the evidence that HiCon Co., Ltd. tortiously interfered with Plastronics' prospective business relationships, whether Plastronics has proved by clear and convincing evidence that any harm to it resulted from HiCon Co., Ltd.'s fraud, malice, or gross negligence.

52.     What amount of exemplary damages, if any, Plastronics is entitled to if Plastronics proves by a preponderance of the evidence that HiCon Co., Ltd. tortiously interfered with Plastronics' prospective business relationships and proves by clear and convincing evidence that it was harmed as a result of HiCon Co., Ltd.'s fraud, malice, or gross negligence.

53.     Whether Texas law recognizes a claim for "assisting and encouraging."

54.     Whether Plastronics has proved by a preponderance of the evidence that Mr. Hwang assisted or encouraged HiCon Co., Ltd. to tortiously interfere with Plastronics' prospective business relations.

55.     Whether Plastronics' assisting and encouraging claim is barred by the economic-loss doctrine.

56.     Whether Hwang has proven by a preponderance of the evidence that Plastronics' claim for assisting and encouraging tortious interference with prospective business relations is barred by the statute of limitations.

57.     Whether Hwang has proven by a preponderance of the evidence that Plastronics could have but failed to mitigate its damages, if any, as a result of any assisting and encouraging tortious interference with prospective business relations.

58.     Whether Hwang has shown by a preponderance of the evidence that Plastronics' claim for assisting and encouraging tortious interference with prospective business relations is barred because all of the complained-of conduct involved HiCon Co., Ltd. exercising its own rights in good faith.

59.     Whether Hwang has shown by a preponderance of the evidence that Plastronics' claim for assisting and encouraging tortious interference with prospective business relations is barred because at all times HiCon Co., Ltd was exercising its own rights that were equal to or superior to Plastronics' claimed rights.

60.     Whether Hwang has shown by a preponderance of the evidence that Plastronics' claim for assisting and encouraging tortious interference with prospective business relations is barred because at all times HiCon Co., Ltd.'s interfering conduct, if any, was a justified exercise of HiCon Co., Ltd.'s own legal rights.

61.     Whether Hwang has shown by a preponderance of the evidence that Plastronics' claim for assisting and encouraging tortious interference with prospective business relations is barred because at all times HiCon Co., Ltd.'s interfering conduct, if any, was a justified exercise

by HiCon Co., Ltd. of a good-faith claim to a colorable legal right.

62.　　What amount of actual monetary damages, if any, Plastronics is entitled to if Plastronics proves by a preponderance of the evidence that Mr. Hwang assisted and encouraged HiCon Co., Ltd.'s tortious interference with Plastronics' prospective business relationships.

63.　　If Plastronics proves by a preponderance of the evidence that Mr. Hwang assisted and encouraged HiCon Co., Ltd.'s tortious interference with Plastronics' prospective business relationships, whether Plastronics has proved by clear and convincing evidence that any harm to it resulted from Mr. Hwang's fraud, malice, or gross negligence.

64.　　What amount of exemplary damages, if any, Plastronics is entitled to if Plastronics proves by a preponderance of the evidence that Mr. Hwang assisted and encouraged HiCon Co., Ltd.'s tortious interference with Plastronics' prospective business relationships and proves by clear and convincing evidence that it was harmed as a result of Mr. Hwang's fraud, malice, or gross negligence.

65.　　Whether Plastronics has proved by a preponderance of the evidence that HiCon Co., Ltd. or Mr. Hwang engaged in an unlawful conspiracy.

66.　　Whether Plastronics has proved by a preponderance of the evidence that some unlawful act or means—i.e., patent infringement, breach of contract, or tortious interference with prospective business relations—supports is conspiracy claims.

67.　　Whether Hwang has proven by a preponderance of the evidence that the alleged unlawful act or means underlying Plastronics' conspiracy claims—i.e., patent infringement, breach of contract, or tortious interference with prospective business relations—are barred by the affirmative defenses Hwang has set forth above regarding those alleged underlying unlawful acts or means.

68.     Whether a claim for breach of contract can support a claim for conspiracy.

69.     Whether Plastronics' conspiracy claims are barred by the economic-loss doctrine.

70.     Whether Hwang has proved by a preponderance of the evidence that Plastronics' conspiracy claims are barred by the statute of limitations.

71.     Whether Hwang has proven by a preponderance of the evidence that Plastronics could have but failed to mitigate its damages, if any, as a result of any unlawful conspiracy.

72.     What amount of actual monetary damages, if any, Plastronics is entitled to if Plastronics proves by a preponderance of the evidence that HiCon Co., Ltd. or Mr. Hwang engaged in an unlawful conspiracy.

73.     If Plastronics proves by a preponderance of the evidence that Mr. Hwang or HiCon. Co., Ltd. engaged in an unlawful conspiracy, whether Plastronics has proved by clear and convincing evidence that any harm to it resulted from HiCon Co., Ltd.'s or Mr. Hwang's fraud, malice, or gross negligence.

74.     What amount of exemplary damages, if any, Plastronics is entitled to if (i) Plastronics proves by a preponderance of the evidence that HiCon Co., Ltd. or Mr. Hwang engaged in an unlawful conspiracy (ii) Plastronics proves by clear and convincing evidence that it was harmed as a result of HiCon Co., Ltd.'s or Mr. Hwang's fraud, malice, or gross negligence, and (iii) the tort underlying the conspiracy claims provides for the recovery of exemplary damages.

75.     Hwang objects to Plastronics' contested issues to the extent they advance theories or subject matter that Plastronics failed to plead or are inconsistent with Plastronics' discovery responses, including but not limited to the issues in Plastronics' contested issues paragraphs 3, 21, 24, 35, 38-43, 45, 51, 53, 58, 59, 61, 62-64, 66, and 72.

## G. LIST OF WITNESSES

### 1. Plaintiffs

Plastronics' List of Witnesses is attached hereto as Exhibit A.

### 2. Defendants

Defendants' List of Witnesses is attached hereto as Exhibit B.

## H. LIST OF EXHIBITS

Pursuant to the Court's Second Amended Docket Control Order (Dkt. No. 141), the parties exchanged (i) exhibit lists on April 29, 2019, (ii) objections to exhibits and rebuttal exhibits on May 6, 2019, and (iii) objections to rebuttal exhibits on May 20, 2919.

The parties will meet and confer regarding their respective objections in order to strive to resolve all objections and issues prior to presenting them to the Court.

### 1. Plaintiffs

Plastronics' Trial Exhibit List is attached hereto as Exhibit C.

### 2. Defendants

Defendants' Trial Exhibit List is attached hereto as Exhibit D.

## I. DEPOSITION DESIGNATIONS

Pursuant to the Court's Second Amended Docket Control Order (Dkt. No. 161), the parties exchanged (i) deposition designations on April 29, 2019, (ii) rebuttal deposition designations and objections to the deposition designations on May 6, 2019, and (iii) objections to the rebuttal designations on May 20, 2019.

The parties will meet and confer regarding their respective objections to strive to resolve all disputes and issues prior to presenting them to the Court.

## J. JURY INSTRUCTIONS AND VERDICT FORMS

The Parties have met and conferred regarding jury instructions and verdict forms. Attached

to this order as Exhibit E is a Joint Preliminary Jury Instruction with a comparison of the proposed inclusions from Plaintiffs and Defendants along with objections from the parties. Attached as Exhibit E-1 is a clean version of the Jury Instructions as proposed by Plaintiffs. Attached as Exhibit E-2 is a clean version of the Jury Instructions as proposed by Defendants.

While the Parties met and conferred regarding to the content and format of the jury verdict form, the parties were not able at this time to come to an agreement. The Parties have submitted their proposed verdict forms as Exhibit F (Plaintiffs) and Exhibit G (Defendants).

The Parties will continue to meet and confer to reach further agreement on instructions and the verdict forms.

## K. LIST OF ANY PENDING MOTIONS

The following motions are currently pending before the Court.

| Docket Number | Motion |
|---|---|
| 180 | Plastronics' Motion for Partial Judgment on the Pleadings |
| 199 | Hwang's Motion to Strike the Expert Rebuttal Report of Won Hee Cho |
| 201 | Hwang's Motion for Summary Judgment Regarding Statute of Limitations and Damages |
| 204 | Plastronics' First Motion for Summary Judgment |
| 206 | Plastronics' Second Motion for Summary Judgment |
| 207 | Plastronics' Motion to Strike Expert Report of David Harper and Preclude Testimony (The Court deferred ruling on this motion. *See* Dkt. No. 254.) |
| 209 | Hwang's Motion for Summary Judgment Regarding Patent Infringement and Breach of Contract |
| 211 | Hwang's Motion to Strike the Expert Reports of Chase A. Perry Regarding Damages |
| 246 | Hwang's Objections to Magistrate's Order on Motion to Strike |
| 260 | Plastronics' Motion *in Limine* |
| 267 | Hwang's Motion *in Limine* |

## L. PROBABLE LENGTH OF TRIAL

**Plaintiffs' Position Regarding Length of Trial**

The parties estimate that the probable length of trial is five days. Plastronics request 11 hours per side for direct, cross, and rebuttal examination. Plastronics further request 30 minutes per side for voir dire, 30 minutes per side for an opening statement, and one hour per side for closing argument.

**Defendants' Position Regarding Length of Trial**

Hwang believes the trial should take five days. Hwang requests 12.5 hours per side for direct, cross, and rebuttal examination. Hwang further requests 30 minutes per side for voir dire, 30 minutes per side for an opening statement, and one hour per side for closing argument.

## M.    MANAGEMENT CONFERENCE LIMITATIONS

 Plastronics request that the following items be heard at the pretrial conference, as they would directly impact trial:

1. Plastronics' Motion for Partial Judgment on the Pleadings (Dkt. No. 180).
2. Hwang's Motion to Strike the Expert Rebuttal Report of Won Hee Cho (Dkt. No. 199).
3. Hwang's Motion for Summary Judgment Regarding Statute of Limitations and Damages (Dkt. No. 201).
4. Plastronics' First Motion for Summary Judgment (Dkt. No. 204).
5. Plastronics' Second Motion for Summary Judgment (Dkt. No. 206).
6. Plastronics' Motion to Strike Expert Report of David Harper and Preclude Testimony (Dkt. No. 207). The Court deferred ruling on this motion. See Dkt. No. 254.
7. Hwang's Motion for Summary Judgment Regarding Patent Infringement and Breach of Contract (Dkt. No. 209).
8. Hwang's Motion to Strike the Expert Reports of Chase A. Perry Regarding Damages (Dkt. No. 211).
9. Hwang's Objections to Magistrate's Order on Motion to Strike (Dkt. No. 246).
10. Plastronics' Motion in Limine
11. Hwang's Motion in Limine
12. Any issues and/or motions that the parties did not list or should arise or be filed between the filing of this pre-trial order and the pre-trial hearing that would directly impact trial.

## N.    CERTIFICATIONS

**Plaintiffs' Certifications:**

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1.  Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

2.  Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with and not altered by agreement or otherwise;

3.  Each exhibit in the List of Exhibits herein:

    a.  is in existence;

    b.  will be numbered; and,

    c.  has been disclosed and shown to opposing counsel.[8]

**Defendants' Certifications:**

The undersigned counsel for each of the parties to this action does hereby certify and acknowledge the following:

Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with.

Except as otherwise agreed or ordered, counsel for each party will provide the following certification when their respective exhibit list is filed. Each exhibit in the List of Exhibits: (a) is in

---

[8] Plastronics has produced all exhibits and/or shown all exhibits to Defendants during the course of this case including discovery. To the extent that Plastronics or Defendants have not provided an exhibit, for example, a translation (excluding any certification under Rule 44 or otherwise) such will be provided to the other prior to the pre-trial hearing. In addition, Plastronics will provide all stickered exhibits prior to the pre-trial hearing.

existence, (b) will be numbered, and (c) has been disclosed and shown to opposing counsel.[9]

**O.  TRIAL MANAGEMENT PROCEDURES**

**Stipulation for Trial Management Procedures.**

1. When the case is assigned a trial start date certain, the following notice procedures in paragraphs 2-10 of this section will apply, subject to any changes agreed to in writing by both parties.

2. With respect to opening statements, by no later than 9:00 a.m. Central Time on the day before the opening statements, the parties shall exchange by email lists of (a) any non-pre-admitted exhibits for which there are pending objections remaining and (b) copies of any demonstrative exhibits that they intend to use in their respective opening statements. By no later than 3:00 p.m. Central Time that same day, the party receiving the exhibit list shall inform the party identifying the exhibits of any objections to such exhibits. By no later than 5:00 p.m. Central Time that same day, the parties shall meet and confer to resolve any objections.

3. A party need not provide deposition designations for a witness who is designated as a "will call" witness in the opposing party's trial witness list. If a party decides not to call a witness live who had been previously designated as a "will call" witness, then the opposing party will have the opportunity to provide deposition designations. In such a scenario, rebuttal designations, objections to deposition designations, and objection to rebuttal deposition designations would be allowed.

4. The following procedures shall apply to the identification of witnesses, exhibits, and demonstrative exhibits for a party's direct examination prior to the witness's testimony and/or use of exhibits:

---

[9] Hwang has requested copies of Plastronics' stickered trial exhibits, but Plastronics has refused to provide them. Hwang has tried to locate Plastronics' exhibits based on the description and Bates numbers.

a.      Each party shall provide notice via electronic mail no later than 7:00 p.m. Central Time each day of all witnesses intended to be presented live or by deposition two calendar days later at trial. In other words, if a witness will testify live or by deposition on a Monday, the witness must be identified by 7:00 p.m. on the previous Saturday. Such notice shall indicate the intended order of call and whether the witness will be presented live or by deposition.

b.      By no later than 7:00 p.m. Central Time the day before a witness is expected to first testify, the offering party will provide to the other party via electronic mail a list of any exhibits to be used with each witnesses specified in paragraph 3(a) of this section (excluding exhibits used solely for the purpose of impeachment or cross examination) and final hard and electronic copies of all demonstrative exhibits to be used with such witnesses (subject only to addressing evidentiary objections or rulings) and, if the witness will testify by deposition, the portions of the deposition the offering party intends to play (by page and line number).

c.      By no later than 8:30 p.m. Central Time the day before a witness is expected to first testify, the party receiving the exhibits, including demonstrative exhibits, shall inform the offering party of any objections and, if a witness is to be called by deposition, the receiving party's deposition counter-designations (by page and line number);

d.      By no later than 9:30 p.m. Central Time on the day the disclosures in paragraphs 2(a)-(c) of this section are received (or such later time as agreed upon by the parties), the parties shall meet and confer to resolve any objections;

e.      The parties shall then raise any continuing disputes as to exhibits to be used with witnesses or the witnesses themselves with the Court as appropriate before each trial

day commences, or at the Court's direction or convenience; and

f.     The parties with exchange demonstrative exhibits for use in closing arguments that were not previously exchanged among the parties and used at trial at least one hour prior to any party's closing arguments.

5.     The notice provisions of the immediately preceding paragraphs 4(a)-(f) shall not apply to illustrative exhibits created in the courtroom during testimony or to the enlargement, highlighting, ballooning, excerption, etc. of trial exhibits, demonstrative exhibits, illustrative exhibits, or testimony, provided that such enlargement, highlighting, ballooning, excerption, etc. is performed in the courtroom, so long as the underlying exhibit is pre-admitted or the party has identified its intention to use the exhibit according to paragraph 3 of this section. This exception shall only be used for the purpose of emphasis and callouts may not contain witness or attorney comments or annotations in the exhibit or callout (other than highlighting).

6.     The parties shall make good-faith efforts to resolve all objections over the use of identified witnesses, testimony, exhibits, and demonstrative exhibits prior to the trial day of their intended use/testimony by participating in a meet and confer following the identification of and objections to witnesses, testimony, exhibits, and demonstrative exhibits each day. Materials to be used solely for impeachment of a witness called by the other party need not be identified in advance.

7.     For allocating time between the parties for witnesses presented by deposition, witnesses presented by video will be divided by the actual time for designations and counter-designations by each party. For witnesses presented by read deposition testimony, the allocation of trial time will be determined by the ratio of deposition testimony lines designated by each party to the total number of lines read by that witness.

8.      If a party presents a witness by deposition at trial during its direct examination, the party offering the testimony will play or read both the designated portion of the testimony and the opposing party's counter-designations, omitting (as agreed upon in advance by the parties) objections or colloquy where appropriate. The time for such designations shall be allocated to each party accordingly (time for counter-designations charged to the opposing party).

9.      The listing of a deposition designation or discovery response does not constitute an admission as to the admissibility of the testimony or discovery response nor is it a waiver of any applicable objection.

10.      Plastronics and Hwang each reserve the right to offer into evidence and introduce any exhibit designated by any other party, even if not offered into evidence or introduced by the designating party. All objections to such exhibits are preserved. That an exhibit appears on a party's exhibit list is not an admission that the exhibit is admissible if introduced by any other party. Any exhibit, once admitted into evidence, may be used equally by any party subject to any limitations as to its admission into evidence and subject to the Court's rulings on motions *in limine* that may limit the purpose for which an exhibit may be used.

Approved as to form and substance:

Dated: June 3, 2019                                    Respectfully Submitted,


                                                       */s/ Katarzyna Brozynski*
Andrew W. Lester                                       Katarzyna Brozynski
Texas State Bar No. 12235260                           Texas State Bar No. 24036277
alester@sepencerfane.com                               kbrozynski@spencerfane.com
SPENCER FANE, LLP                                      Antonio S. Devora
9400 North Broadway Extension, Suite 600               Texas State Bar No. 24074133
Oklahoma City, Oklahoma 73114                          adevora@spencerfane.com
(405) 844-9900 Telephone                               Bart Dalton
(405) 844-9958 Fax                                     Texas State Bar No. 24043418
                                                       bdalton@spencerfane.com
Brian T. Bear (pro hac vice)                           SPENCER FANE, LLP
Missouri State Bar No. 61957                            5700 Granite Parkway, Suite 650
bbear@spencerfane.com                                  Plano, TX 75024
SPENCER FANE, LLP                                      (972) 324-0300 Telephone
1000 Walnut Street, Suite 1400                         (972) 324-0301 Fax
Kansas City, MO 64106
(816) 474-8100 Telephone
(816) 474-3216 Fax

Robert Christopher Bunt
State Bar No. 00787165
Charles L. Ainsworth
State Bar No. 00783521
Parker Bunt & Ainsworth, PC
100 E. Ferguson, Suite 418
Tyler, Texas 75702
903-531-3535
rcbunt@pbatyler.com
charley@pbatyler.com


**ATTORNEYS FOR PLAINTIFFS**

*/s/ John R. Emerson*
John R. Emerson
Texas Bar No. 24002053
russ.emerson@haynesboone.com
Debra J. McComas
debbie.mccomas@haynesboone.com
Texas Bar No. 00794261
debbie.mccomas@haynesboone.com
Charles M. Jones II
Texas Bar No. 24054941
charlie.jones@haynesboone.com
Stephanie N. Sivinski
Texas Bar No. 24075080
stephanie.sivinski@haynesboone.com
Tiffany M. Cooke
Texas Bar No. 24087340
tiffany.cooke@haynesboone.com
Jamie Raju
Texas Bar No. 24095717
jamie.raju@haynesboone.com

Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000 (telephone)
(214) 200-0615 (fax)

Samuel Lee
(Admitted *pro hac vice*)
samuellee@yulchon.com
Jay Hoon Byun
(Admitted *pro hac vice*)
jhbyun@yulchon.com

YulChon LLC
Parnas Tower, 38F, 521 Teheran-ro
Gangnam-gu, Seoul 06164
Republic of Korea
Tel +82-2-528-5200
Fax +82-2-528-5228

**ATTORNEYS FOR DEFENDANTS
DONG WEON HWANG, HICON CO.,
LTD. AND HICON**

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 3, 2019, the foregoing document was filed electronically in compliance with Local Rule CV-5(a), and thereby served on all counsel who are deemed to have consented to electronic service, per Local Rule CV-5(a)(3).

*/s/ Katarzyna Brozynski*
Katarzyna Brozynski