# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| PLASTRONICS SOCKET PARTNERS, LTD., PLASTRONICS H-PIN, LTD., | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:18-CV-00014-JRG |
| | § | |
| DONG WEON HWANG, HICON CO., LTD., HICON COMPANY, | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are (1) Defendant Dong Weon Hwang's Renewed Motion for Judgment as a Matter of Law (Dkt. No. 349); (2) Plaintiffs Plastronics Socket Partners, Ltd. ("Plastronics Socket") and Plastronics H-Pin Ltd.'s ("Plastronics H-Pin") (collectively, "Plastronics") Renewed Motion for JMOL on Defendants' Royalty Counterclaim or Alternatively, Motion for New Trial (Subject to Remittitur) (Dkt. No. 353); and (3) Plastronics' Verified Motion to Amend Judgement or for New Trial (Dkt. No. 351). For the reasons set forth herein, the Court is of the opinion that each of these motions should be and hereby is **DENIED**.

Also before the Court are (1) Plastronics' Motion for Attorneys' Fees (Dkt. No. 355); and (2) Defendants HiCon Co. Ltd. ("HiCon Ltd.") and HiCon Company's (the "DBA") Motion for Attorneys' Fees Under 35 U.S.C. § 285 (Dkt. No. 350). For the reasons set forth herein, the Court is of the opinion that both of these motions should be and hereby is **DENIED**.

Also before the Court are (1) Defendants Mr. Hwang, HiCon Ltd, and the DBA's Motion for Bill of Costs (Dkt. No. 354); and (2) Plastronics' Motion for Bill of Costs (Dkt. No. 356). For

the reasons set forth herein, the Court is of the opinion that Defendants' motion should be and hereby is **GRANTED** while Plastronics' motion should be and hereby is **DENIED**.

Finally, before the Court is Plastronics' Motion to Compel Payment of Unpaid Expenses in Connection with Defendants' Deposition of Plaintiff's Expert Witness Won H. Cho (Dkt. No. 352). For the reasons set forth herein, the Court is of the opinion that this motion should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART** insofar as Plastronics is entitled to some but not all of its requested expenses.

## I.     Factual Background

In the Fall of 2005, Mr. Hwang entered into two agreements with the successor entity of Plastronics. (PX16 (the "Assignment Agreement); PX30 (the "Royalty Agreement).) Generally speaking, the Assignment Agreement assigned 50% of Mr. Hwang's interest in his invention for H-pin contacts to Plastronics. (PX16.) The Royalty Agreement obligated Plastronics to pay a royalty to Mr. Hwang for H-pins and corresponding sockets sold using the invention. (PX30.) It also obligated Mr. Hwang to pay a royalty to Plastronics if Mr. Hwang was "paid [royalties on the invention] by a third party" or "work[ed] directly for another entity" that practiced the invention. (*Id.*) Both the Royalty and Assignment Agreements required both parties to obtain the permission of the other before licensing the invention. (PX16; PX30.) The parties dispute the exact contours of these obligations, particularly whether the Royalty or Assignment Agreement covered Mr. Hwang's Korean patent on the invention and whether the agreements required licensing permission and the payment of royalties if the invention was practiced by an entity controlled by Mr. Hwang, such as HiCon Ltd.[1]

---

[1] The Court previously granted summary judgment that Mr. Hwang's DBA is indistinguishable from him and enjoys the same rights to freely practice the invention as Mr. Hwang. (*See* Dkt. No. 287 at 3.)

Although each plaintiff and each defendant did not joint in every claim or motion urged by their respective side, because their interests do not diverge, the Court refers to them as "Plastronics" and "Defendants" respectively.

Plastronics brought suit against Defendants alleging patent infringement, breach of the Royalty and Assignment Agreements, tortious interference, and various derivative claims stemming from HiCon Ltd.'s practice of the invention covered by the Royalty and Assignment Agreements. (*See* Dkt. No. 65.) Defendants counterclaimed alleging that Plastronics had breached the Royalty and Assignment Agreements.[2] (Dkt. No. 84.)

This case was tried to a jury, which returned a verdict finding that each side prevailed on a single claim: breach of the Royalty Agreement. These post-trial motions followed.

## II.    Defendants' Renewed Motion for Judgment as a Matter of Law (Dkt. No. 349)

Defendants argue that there was not sufficient evidence from which the jury could conclude that Mr. Hwang breached the Royalty Agreement by licensing his Korean patent to HiCon Ltd. To the contrary, the Court finds substantial evidence from which the jury could have concluded that the Royalty Agreement (1) covered the Korean patent and (2) covered licenses granted to third parties like HiCon Ltd.

### A.    Legal Standard

"Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). The non-moving party must identify "substantial evidence" to support its positions. *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D. Tex. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant

---

[2] Defendants also brought claims for patent infringement, which were dismissed before trial. (*See* Dkt. Nos. 140, 183.)

evidence as a reasonable mind might accept as adequate to support a conclusion." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004).

"The Fifth Circuit views all evidence in a light most favorable to the verdict and will reverse a jury's verdict only if the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010)). A court must "resolve all conflicting evidence in favor of [the verdict] and refrain from weighing the evidence or making credibility determinations." *Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 937-38 (5th Cir. 2006).

### B. The Jury's Charge and Verdict

In interpreting the Royalty Agreement, the Court found several ambiguities. (*See* Dkt. No. 295 at 11–13.) "When a contract contains an ambiguity . . . the interpretation of the instrument becomes a fact issue." *Corker v. Corker*, 650 S.W.2d 391, 394 (Tex. 1983). Therefore, the Court tasked the jury with determining, as a factual matter, (1) "whether the term 'H-Pin Project' includes any rights and interests in the Korean patent"; and (2) "whether the terms 'third party' and 'another entity' mean any entity that is not a party to the Royalty Agreement or whether they were intended to exclude entities controlled by the parties to the agreement, such as HiCon Limited." (Dkt. No. 345 at 54:2–3, 11–15.)

The parties do not dispute that the jury's verdict indicates that the jury found Mr. Hwang breached the Royalty Agreement by licensing the Korean patent to HiCon Ltd. (Dkt. No. 349 at 2–5; Dkt. No. 367 at 2.) Thus, the verdict indicates that the jury found the term "H-Pin Project" did include the Korean patent and the terms "third party" and "another entity" did include HiCon Ltd. The Court determines that these conclusions are supported by substantial evidence and that breach of the Royalty Agreement in this manner is not barred by the statute of limitations.

### C. There was sufficient evidence for the jury to conclude that the Royalty Agreement required Plastronics' permission to license the invention to HiCon Ltd.

Defendants first argue that there is no substantial evidence from which the jury could conclude that "the terms 'third party' and 'another party' as used in the Royalty Agreement were intended to exclude entities controlled by the parties to the agreement such as HiCon Ltd." (Dkt. No. 349 at 8.) The Court disagrees.

As Plastronics notes, Section 5 of the Royalty Agreement states that neither party "can grant a license for the patents covering the 'H-Pin Project' without approval from the other party." (PX30.2; Dkt. No. 367 at 3.) David Pfaff, CEO of Plastronics, who negotiated the agreement with Mr. Hwang, testified that his understanding of the contract was that it barred Mr. Hwang from licensing to HiCon Ltd. without Plastronics' permission. (Dkt. No. 340 at 168:6–13.)

Defendants argue that Mr. Pfaff's testimony should be discounted because it is self-serving. This is not an argument that the Court will entertain on a Rule 50(b) motion. Plastronics correctly notes that "[i]n deciding a Rule 50(b) motion, the Court must be careful to 'draw all reasonable inferences in the light most favorable to the verdict,' and to not substitute its own inferences for those made by the jury." (Dkt. No. 367 at 3 (citing *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 451 (5th Cir. 2013)).) The question before this Court is not whether the jury should have believed contrary evidence, but whether there is substantial evidence to support the jury's verdict. Mr. Pfaff's testimony forms part of the body of evidence that the jury was free to credit if they so chose.

The jury also heard testimony that Mr. Hwang repeatedly asked for Plastronics' consent to license the invention to HiCon Ltd., which he did not receive. (Dkt. No. 340 at 118:11–18; 146:13–147:6.) This testimony was supported by emails between Mr. Hwang and Mr. Pfaff wherein Mr. Hwang expressed a belief that he needed Plastronics' consent to sell products in the United States

through HiCon Ltd. (*E.g.*, DX198; Dkt. No. 340 at 147:11–148:24.) Mr. Hwang himself testified that he asked for consent to license the U.S. patent because he was "not allowed to do so" otherwise under the agreement. (Dkt. No. 341 at 64:12–65:21; PX75.)

The jury thus had substantial evidence, in the form of testimony from both parties to the contract, that each side understood the contract to require Mr. Hwang to get permission from Plastronics to license the invention to HiCon Ltd. The jury was free to credit this testimony and evidence, even in the face of evidence to the contrary.

> **D.  There was sufficient evidence for the jury to conclude that the Royalty Agreement required Plastronics' permission to license the invention in South Korea.**

Defendants also argue that there was not substantial evidence for the jury to conclude that "the term 'H-Pin Project' as used in the Royalty Agreement includes any rights and interest in the Korean Patent." (Dkt. No. 349 at 8.) The Court disagrees on this point as well.

As Plastronics notes, the language of the Royalty Agreement itself provides support for interpreting the contract to include the Korean patent as part of the "H-Pin Project." (Dkt. No. 367 at 3.) Indeed, the Royalty Agreement defines the "H-Pin Project" as "an invention in South Korea" that was "patented . . . on October 6th, 2004." (PX30.1) It is not until the next sentence that any exclusions to the invention in Korea are spelled out. In that provision, the term "H-Pin Project" is not used, and the exclusion is to the assignment of the invention, not any licensing or royalty provisions. (*Id.*) Thus, the plain language of the contract evinces an intent to include the Korean patent in the "H-Pin Project."

Such an interpretation is not unreasonable, as the Court implicitly found in determining that the term "H-Pin Project" was ambiguous. (*See* Dkt. No. 295 at 13.) Defendants make much of the magistrate judge's criticisms of Plastronics proposed interpretation in the Report and Recommendation adopted by the Court. (Dkt. No. 349 at 12–13.) However, regardless of whether

"[t]he Court finds it unlikely that the parties intended to grant Plastronics' rights in the 'H-pin project' that were greater than its rights to the patents themselves," this determination was reserved for the jury, not the Court. (Dkt. No. 295 at 11.) Excluding the Korean patent from the assignment of the invention while still including it in the license and royalty provisions is not without benefit to Mr. Hwang. For example, such an arrangement entirely forecloses Plastronics' ability to practice the invention in South Korea, even if it requires Mr. Hwang to pay royalties to Plastronics in certain circumstances for use of the invention in South Korea. It was not unreasonable, under this record, for the jury to conclude that this was the balance the parties intended to strike in their agreement.

The jury's conclusion is further supported by the testimony of Mr. Pfaff, who explained that under the Royalty and Assignment Agreements, Mr. Hwang retained full ownership of the "patent in Korea" but does not have the authority to license that patent without Plastronics' permission pursuant to the Royalty Agreement. (Dkt. No. 340 at 168:15–169:6.) Defendants criticize Mr. Pfaff's testimony as "self-serving," but again, such credibility determinations were for the jury to decide, not the Court. *See Gomez*, 442 F.3d at 937–38 (commanding trial courts to "resolve all conflicting evidence in favor of [the verdict] and refrain from weighing the evidence or making credibility determinations").

The Court properly instructed the jury that they "may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the testimony and evidence you believe that single witness." (Dkt. No. 345 at 31:18–23.) The authorities offered by Defendants to the contrary are inapposite. (*See* Dkt. No. 349 at 9 n.27.) *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust* and *Vais Arms, Inc. v. Vais* both relate to whether "a party's uncorroborated self-serving testimony" was sufficient to "prevent summary judgment." *Vinewood*, 541 F. App'x 443, 447 (5th

Cir. 2013); *see also Vais Arms*, 383 F.3d 287, 294 (5th Cir. 2004). Neither case considered the appropriate evidentiary standard to overturn a jury's verdict. *Conmaco/Rector L.P. v. L & A Contracting Co.* considered whether "self-serving, uncorroborated testimony" was sufficient to imply a term missing from a contract "as a matter of" Louisiana law, not whether it was sufficient to interpret an express term as a matter of Texas law. No. CIV.A. 12-2337, 2014 WL 1796651, at *13 & n.6 (E.D. La. May 6, 2014).

Moreover, even if these cases were on point, Mr. Pfaff's testimony is not "uncorroborated." As the Court has already noted, Mr. Pfaff's testimony is supported by a reasonable interpretation of the plain language of an admitted exhibit, the Royalty Agreement. (PX30.) These together are substantial evidence that support the jury's verdict.

> **E.  The statute of limitations does not bar Plastronics' claim for breach of the Royalty Agreement.**

Defendants also argue that Plastronics claim for breach of the Royalty Agreement was barred by the statute of limitations. (Dkt. No. 349 at 5–8.) To the contrary, the Court properly instructed the jury that it could award "damages for failure to make periodic royalty payments" under the royalty Agreement "where such periodic payment was called for and due after January the 19th, 2014." (Dkt. No. 345 at 59:13–16.) The Court finds that the jury's verdict conformed with this instruction and was supported by substantial evidence.

As part of their argument, Defendants state that "[t]he Court granted summary judgment on Plastronics' unpaid-royalties theory because Plastronics failed to present evidence that Mr. Hwang received any royalties, much less that he owed any such royalties to Plastronics." (Dkt. No. 349 at 6 (citing Dkt. No. 287 at 2).) The Court did grant summary judgment as to any theory of breach of the Royalty Agreement as to Section 4, requiring Mr. Hwang to split any royalties

paid to him with Plastronics, because Plastronics had "not shown that any payment constituting a royalty was ever paid to Hwang." (Dkt. No. 287 at 17.)

However, the Court's did not grant summary judgment on Plastronics' theory that Mr. Hwang breached the Royalty Agreement by improperly "licensing the invention . . . to HiCon Ltd. without obtaining the consent of Plastronics" in violation of Section 5 of the Royalty Agreement. (Dkt. No. 65 ¶¶ 85, 93.) Nor did the Court decide whether such a breach of Section 5 would itself give rise to a duty to pay royalties. The jury, considering these questions, clearly answered them in the affirmative.

The Court instructed the jury that it could award "damages for failure to make periodic royalty payments" under the royalty Agreement "where such periodic payment was called for and due after January the 19th, 2014." (Dkt. No. 345 at 59:13–16.) This instruction was consistent with Texas law: "if the terms of an agreement call for periodic payments during the course of the contract, a cause of action for such payments may arise at the end of each period." *Hooks v. Samson Lone Star, LP*, 457 S.W.3d 52, 68 (Tex. 2015) (quoting *Intermedics, Inc. v. Grady*, 683 S.W. 2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)).

Section 5 of the Royalty Agreement requires Mr. Hwang to obtain Plastronics consent before licensing the invention. (PX30.2.) Section 4 explains the appropriate royalty rate to be paid in the event such a license is granted. (PX30.1.) It follows that Plastronics would at least be entitled to the amount of royalties that would be due under Section 4 had Mr. Hwang complied with his obligations under Section 5 by receiving Plastronics' consent. "Accordingly, if [Mr. Hwang] did indeed breach, then [Plastronics] is entitled to damages for royalties owed within four years of filing suit. This accords with the nature of damages: providing 'just compensation for the loss or

damage actually sustained.'" *Hooks*, 457 S.W.3d at 68 (quoting *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952)).

Defendants argue correctly that Plastronics sought lost profits damages and not damages calculated based upon unpaid royalties. However, Defendants elicited evidence of what appropriate royalty payments would be have been under the Royalty Agreement through the testimony of Dr. James Woods. (Dkt. No. 344 at 55:7–58:6.) Moreover, the Court properly instructed the jury that it could award damages for unpaid royalties that were due and payable during the limitations period. The Court has no reason to believe that the jury disregarded this instruction and returned a verdict of anything other than the amount of periodic payments it found were due during the limitations period.

For the reasons set forth herein, the Court concludes that Defendants' JMOL of No Breach of Contract should be denied.

### III. Plastronics' Renewed Motion for JMOL on Defendants' Royalty Counterclaim (Dkt. No. 353)

In its Rule 50(b) motion, Plastronics argues that "the jury's award of $1,361,860 on Hwang's counterclaim for unpaid royalty against Plastronics H-Pin was unsupported by any record evidence and was instead impermissibly based primarily upon sales of sockets made by the separate corporate entity, Plastronics Sockets, despite the allocation of such liability solely to Plastronics [H-Pin] in the divisive merger plan." (Dkt. No. 353 at 5.) This argument is a repeat of the argument Plastronics made in its Motion for Summary Judgment Regarding Statute of Limitations and Damages, which the Court appropriately denied. (Dkt. No. 201 at 14–15; Dkt. No. 281 at 12–13; Dkt. No. 316.) For the reasons set forth in the magistrate's Report and Recommendation, adopted by the Court, the Court rejects this same argument again. (Dkt. No. 281 at 12–13.)

## IV.     Plastronics' Motion to Amend Judgment (Dkt. No. 351)

In its Motion to Amend Judgment, Plastronics asks the court to withdraw its previous grant of "no-evidence summary judgment in favor of Defendants with regard to unpaid royalties," which the Court allegedly granted on the basis that Plastronics had "not provided any evidence that Hwang has been paid a royalty by HiCon Co., Ltd. or any other party." (Dkt. No. 351 at 3–4 (quoting Dkt. No. 287 at 16–17).) Plastronics asserts that new evidence was adduced at trial through the testimony of Mr. Hwang "that HiCon Ltd. had in fact been paying him a royalty in exchange for the utilization of the Korean Patent." (Dkt. No. 351 at 4; *see also* Dkt. No. 342 at 72:1–73:9.) Accordingly, Plastronics asks the Court to withdraw its grant of summary judgment and allow Plastronics to proceed to trial on its "claim against Mr. Hwang for breach of the Royalty Agreement." (Dkt. No. 351 at 12.)

"[T]o succeed on a motion for relief from judgment based on newly discovered evidence, [Fifth Circuit] law provides that a movant must demonstrate: (1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment." *Hesling v. CSX Transp.*, 396 F.3d 632, 639 (5th Cir. 2005). The Court finds that Plastronics' motion fails on both points.

Plastronics complains about its inability to proceed to trial on a claim for violation of Section 4 of the Royalty Agreement for failure to split royalties paid by HiCon Ltd. with Plastronics. However, Plastronics proceeded to trial on a "claim against Mr. Hwang for breach of the Royalty Agreement" (Dkt. No. 351 at 12) for licensing the invention to HiCon Ltd. in the first instance in violation of Section 5. Plastronics obtained a $622,606.00 verdict on that claim (Dkt. No. 337 at 10, 12). Plastronics does not explain how Mr. Hwang's testimony (which the jury heard) would have yielded a different or larger verdict if adduced prior to the filing of summary judgment motions. Thus, Plastronics has not explained how obtaining Mr. Hwang's testimony prior to trial

11

"clearly would have produced a different result if present before the original judgment." *Hesling*, 396 F.3d at 639.

Even if such evidence would have yielded a different result, Plastronics has not demonstrated "that it exercised due diligence in obtaining the information." *Id.* While Plastronics makes much of the fact that Defendants did not identify the Korean license in response to its interrogatory requests until the very end of fact discovery, the license was already in the production given to Plastronics. Moreover, nothing prevented Plastronics from asking Mr. Hwang at his deposition the same questions it asked him at trial or from seeking to re-depose Mr. Hwang if it truly believed it did not have all relevant documents at the time of his deposition. No such request appears to have been made.

For these reasons, the Court concludes that the Motion to Amend Judgment should be denied.

## V.    Plastronics' Motion for Attorneys' Fees (Dkt. No. 355)

Plastronics asserts that it is entitled to mandatory attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code because it succeeded on its claim for breach of contract as to the Royalty Agreement. (Dkt. No. 355 at 1 (citing Tex. Civ. Prac. & Rem. Code § 38.001(8)).) Defendants respond that attorneys' fees under Chapter 38 are only mandatory if Plastronics proves that it presented it claim to Defendants, and Plastronics has not done so. (Dkt. No. 360 at 9 (citing Tex. Civ. Prac. & Rem. Code § 38.002).) The Court agrees with Defendants.

### A.    Defendants waived their right to attorneys' fees by not attempting to prove presentment at trial.

"The claimant bears the burden of pleading and proving that he made presentment of the claim to the opposing party." *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 824 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citing *Ellis v. Waldrop*, 656 S.W.2d

902, 905 (Tex. 1983); *Gibson v. Cuellar*, 440 S.W.3d 150, 157 (Tex. App.—Houston [14th Dist.] 2013, no pet.)). "Generally, presentment is an issue of fact." *Tex. Black*, 566 S.W.3d at 824. The trier-of-fact in this case was the jury. The Texas Supreme Court has explained that such factual questions can be taken away from the jury only in limited circumstances:

> [E]ven though the evidence [of attorneys' fees] might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact. In order for the court to award an amount of attorneys' fees as a matter of law, the evidence from an interested witness must not be contradicted by any other witness or attendant circumstances and the same must be clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to cast suspicion thereon.

*Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

The Court does not find such circumstances have been met in this instance. The parties hotly dispute whether presentment was made to Mr. Hwang, and the evidence proffered by Plastronics is far from the "clear, direct and positive" proof that would allow the Court to act in place of the jury. Moreover, this case has already been tried, and the evidence Plastronics now seeks to proffer was never presented to the jury. *See Ragsdale*, 801 S.W.2d at 881 (noting that the "[u]ncontroverted evidence" of attorneys' fees "was presented *at trial*" (emphasis added)).

Plastronics failed because it did not attempt to meet its burden of demonstrating presentment, as a factual issue at trial and has not presented the type of clear and unimpeachable evidence to the Court that might allow the Court to excuse this oversight. For this reason alone, Defendants' motion should be denied.

### B. Alternatively, Defendants waived their right to attorneys' fees by failing to argue presentment in their initial motion.

Moreover, even if the Court could, consistent with Texas law, decide this issue after it was not presented to the jury, Defendants also waived the issue by making no attempt to establish or prove presentment in their initial motion for attorneys' fees. Rather, Defendants raised evidence

and argument regarding presentment for the first time in their reply brief. The law of the Fifth Circuit is clear: "Arguments raised for the first time in a reply brief are waived." *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (2015); *see also Dugger v. Stephen F. Austin State Univ.*, 232 F. Supp. 3d 938, 957 (E.D. Tex. 2017) (Bryson, J.) (collecting cases demonstrating that "courts disregard new evidence or argument offered for the first time in the reply brief"). Having failed to offer any evidence of presentment until its reply brief, the Court finds that Defendants' argument is waived.

### C.      Defendants' evidence, proffered for the first time in their reply brief, does not establish presentment.

Finally, even if Defendants had not waived their argument by failing to offer evidence at trial before the jury and even if they had not waived their argument by failing to offer evidence along with their initial motion, the evidence that Defendants did finally offer in their reply brief is not sufficient to establish presentment.

"The term 'presentment,' as applied in section 38.002, is not defined in the Code; however, [the Texas Supreme Court] has construed the word to mean simply a demand or request for payment or performance, whether written or oral." *Gibson v. Cuellar*, 440 S.W.3d 150, 157 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981)). "No particular form of presentment is required." *Id.* (citing *Jones*, 614 S.W.2d at 100). "However, merely filing suit for a breach of contract, by itself, does not constitute presentment." *Genender v. USA Store Fixtures, LLC*, 451 S.W.3d 916, 924 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Huff v. Fid. Union Life Ins. Co.*, 312 S.W.2d 493, 500 (Tex. 1958)).

The Royalty Agreement has two primary obligations that have been made the subject of this suit. Section 5 of the agreement prohibits either party from licensing the "'H-Pin Project' without approval from the other party." (PX30.2.) Section 4 of the agreement requires Mr. Hwang

to "split . . . 50%/50%" with Plastronics any patent royalties "paid by a third party" or to pay 1.5% of "gross sales of patented products" sold by "another entity" for which Mr. "Hwang works directly." (PX30.1.) Thus, any presentment made by Defendants would have to take the form of a demand for payment or performance regarding Mr. Hwang's (1) promise not to license or (2) promise to pay royalties. (*See* Dkt. Nos. 377-2–6.) Defendants offer five pieces of evidence, Exhibits A–E of their reply brief, which they claim demonstrate presentment of their claims. None meet these requirements to establish presentment.

Exhibit A is, by its own terms, a Cease and Desist Letter pertaining to, among other things, the Royalty Agreement. (Dkt. No. 377-2 at 1). As its name suggests, the Cease and Desist Letter is not a demand letter. The letter does not demand performance or payment related to either promise in the contract. Rather, it demands that Mr. Hwang and his affiliates "CEASE AND DESIST" manufacturing, using, or selling "any products or items containing all or any portion of the Technology" made the subject of the Royalty and Assignment Agreements. (*Id.* at 2.) The letter also demands that Mr. Hwang turn over certain information that would help Plastronics ascertain the extent of any breach of the Royalty and Assignment Agreements. (*Id.* at 3.) None of these demands are a demand to perform Mr. Hwang's promises not to license and to pay royalties or demands for payment in lieu thereof.

Exhibit B is a follow-on letter to Exhibit A. (Dkt. No. 377-3 at 1.) In this letter, Plastronics requests that Defendants "please send the documentation requested in" Exhibit A "so that [Defendants] may ascertain the correct amount owed to Plastronics by Mr. Hwang." (*Id.* at 2.) A request to send information so that Defendants can ascertain the correct amount to demand under the contract is not a demand for performance or payment under the contract. Exhibit B does request performance of "the accounting provision[] of the Assignment Agreement," but Plastronics

prevailed only on its claim for breach of the Royalty Agreement.[3] (*Id.*) Moreover, as the Texas 14th Court of Appeals recently noted, the Court is unaware of "any authority supporting that evidence showing presentment of only a portion . . . of a party's contract claim conclusively establishes the presentment prerequisite for attorney's fees on the party's whole contract claim." *Tex. Black*, 566 S.W.3d at 824.

Exhibit B also offers a "propos[al]" to "amend[] the Assignment Agreement and the Royalty Agreement to clarify and accurately reflect some terms." (Dkt. No. 377-3 at 2.) An offer to amend a contract is not a demand of payment or performance under that contract.

Similarly, Exhibit C is a proposed settlement agreement that includes as its first substantive provision that "[t]he Parties agree to fully rescind in full each of the Royalty Agreement and the Assignment Agreement." (Dkt. No. 377-4 ¶ 2.1, at 2.) Again, an offer to rescind the contract is not a demand for payment or performance under the contract.

Finally, Exhibits D and E and the attorney declaration attached to the reply brief all make references to settlement or mediation discussions but do not offer any concrete proposals or terms. (Dkt. No. 377-1 ¶¶ 9, 11–12; Dkt. Nos. 377-5–6.) Even if these exhibits contained a concrete settlement offer—and they do not—an offer to settle a claim for breach of contract is not, in the abstract, a demand for payment or performance under the contract. To the contrary, it is an offer to compromise such a demand.

In sum, even if the Court were to reach the merits of this issue, Defendants have not established that they made a demand for payment or performance under the contract sufficient to

---

[3] Exhibit B purports to demand performance under "the accounting provision[] . . . of the Royalty Agreement" as well. (Dkt. No. 337-3 at 2.) However, no such provision exists. (*See* PX30.)

demonstrate presentment. Thus, Defendants have not met the requirements of Chapter 38 and are not entitled to an award of attorneys' fees thereunder.

### VI. Defendants' Motion for Attorneys' Fees Under 35 U.S.C. § 285 (Dkt. No. 350)

Defendants seek attorneys' fees from Plastronics arguing that this case was exceptional under section 285 of the Patent Act. (Dkt. No. 350.) However, the Court does not agree that this case was exceptional.

As an initial matter, Plastronics' Unopposed Motion for Leave to Exceed the Page Limits (Dkt. No. 365), which requests leave to exceed the page limit in its response to Defendant's Motion for Attorney Fees Under 35 U.S.C. § 285, is **GRANTED**. The Court therefore considers this briefing in full in reaching its decision.

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 554.

Defendants primarily argue that Plastronics litigated this case in an unreasonable manner by proceeding to trial on unsupported claims and failing to present evidence of certain claims at trial. (Dkt. No. 350 at 3–10.) The Court finds that this case was exceptional in its complexity compared to a typical patent trial, though not necessarily in the way this complicated case was tried. The many patent and non-patent issues presented to this jury necessitated a 21-question verdict form, whereas this Court typically utilizes much less extensive verdict forms in the majority of patent cases. (*See* Dkt. No. 337.) With this in mind, the Court does not find that the manner in

which this case was litigated "exceptional" under section 285. The Court imposes defined time limits on parties for the very purpose of streamlining the issues presented to the jury. Absent a showing of intentional gamesmanship or inequitable conduct, it will not fault a party for electing to forgo presenting evidence on certain issues so as to focus on the issues it finds most important.

Moreover, Defendants are not without fault in allowing certain meritless claims asserted by Plastronics to proceed unchallenged up to the eve of trial and beyond. For example, Defendants fault Plastronics for "pursu[ing] fictional claims" such as conspiracy to commit patent infringement. This was done despite the fact that Defendants "repeatedly objected to Plastronics' pursuit of this claim, citing binding legal authority, including in the Proposed Joint Jury Instructions submitted as part of the Proposed Pretrial Order and in a trial brief requested by the Court." (Dkt. No. 350 at 9.) What Defendants did not do is file a Rule 12 motion challenging this claim. That would have been the appropriate mechanism to raise to both Plastronics and the Court's attention, well in advance of trial, that Plastronics had failed to state a claim. Fed. R. Civ. P. 12(b)(6). It is difficult for the Court to fault Defendants for proceeding with claims that were not challenged at the Rule 12 or Rule 56 stage.

Parties who believe a claim is fatally flawed, legally or factually, should seek an appropriate judgement from the Court under the Federal Rule of Civil Procedure 12 or 56. They may not, in lieu of this, lay behind the log throughout the trial and then expect attorneys' fees under section 285 for having to defend against such unchallenged claims.

Defendants also accuse Plastronics of unreasonable conduct by making post-litigation demands for royalty payments that Defendants believe are estopped by this litigation. (Dkt. No. 350 at 11–12.) Reasonable or not, a party's post-litigation conduct is not overly probative of "the substantive strength of a party's litigating position . . . or the unreasonable manner in which the

case was litigated." *Octane*, 572 U.S. at 554. Moreover, even if it were appropriate for the Court to consider such conduct, "evidence of the frivolity of the [party's] claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (citation omitted). The Court cannot determine the frivolity of Plastronics' new demands in the face of Defendants' assertion of claim preclusion without conducting such a "mini-trial." If Defendants are forced to seek a declaration of their rights under the patent or are forced to defend against a duplicative claim for patent infringement, such a case could well be exceptional and consequently support an award of attorneys' fees, but this is not that case.

In sum, with a particular view to the many state, federal, contract, and tort issues raised by this case and the Defendants' own decision to forgo opportunities, in advance of trial, to narrow the issues it now claims were meritless, the Court does not find that this case rises to the level of being exceptional, as required to merit an award of attorneys' fees under section 285.

## VII.    The Parties' Motions for Bill of Costs (Dkt. Nos. 354, 356)

Both Plastronics and Defendants have moved for costs as the prevailing party under Rule 54(d). (Dkt. Nos. 354, 356.) The parties do not dispute each other's incurred costs but only which of them should be entitled to their costs as the prevailing party. (Dkt. No. 354 at 1; Dkt. No. 356 at 1.)

Plastronics Socket did not prevail on any of its claims asserted at trial (Dkt. No. 337 at 17–23.) Conversely, HiCon Ltd. prevailed on each of the claims asserted against it. (*Id.* at 3, 17.)  As to Mr. Hwang and Plastronics H-Pin, each prevailed on a single claim: breach of the Royalty Agreement. (*Id.* at 8, 10.) However, Mr. Hwang was awarded $1,361,860, whereas Plastronics was awarded only $622,606, a difference of $738,254 in Mr. Hwang's favor. (*Id.* at 9, 12.) Thus, the

Court finds that Defendants were the prevailing party and should be awarded their costs under Rule 54(d).

### VIII. Plastronics' Motion to Compel Payment of Unpaid Expenses (Dkt. No. 352)

Plastronics asks the Court to compel the payment of expenses and costs related to Defendants' deposition of Won H. Cho, Plastronics' expert witness, pursuant to Rule 26(b)(4)(E). (Dkt. No. 352.)

"Rule 26(b)(4)(E) makes clear that the party who deposes an expert must pay a reasonable fee for the expert's time spent in the deposition." *Script Security Solutions, LLC v. Amazon.com, Inc.*, No. 2:15-cv-1030-WCB, 2016 WL 6649721, at *2 (E.D. Tex. Nov. 10, 2016) (Bryson, J.). "Because the rationale underlying Rule 26(b)(4)(E) is to require the deposing party to pay for the expert's time when the expert's time is being expended for the benefit of that party, it makes sense to require the deposing party to pay not only for the expert's deposition time, but also for time necessary to the expert's appearance, such as travel time and time necessary to make the expert's deposition proceed more smoothly, such as deposition preparation time." *Id.*

Defendants argue that Rule 26(b)(4)(E) requires payment "unless manifest injustice would result." (Dkt. No. 362 at 1–2 (quoting Fed. R. Civ. P. 26(b)(4)(E)).) Defendants contend that manifest injustice would result if they are required to pay for Mr. Cho's deposition because Mr. Cho's rebuttal report failed to actually rebut Defendants' expert Christine Kim's report. "Submitting a rebuttal report that did not actually rebut the main position of Ms. Kim's report was unnecessary and improper." (*Id.* at 3.) "Instead of rebutting Ms. Kim," which opined that Mr. Hwang and his DBA are indistinguishable under Korean Law, "Mr. Cho put forth an alternative veil-piercing theory that should have been presented in an affirmative expert report." (*Id.*) Additionally, Defendants argue that "even if Mr. Cho's rebuttal report could be considered proper,

Mr. Cho clearly lacked the qualifications needed to opine on the issue of corporate veil-piercing."(*Id.*)

"Trial courts have a great deal of discretion in defining what constitutes 'manifest injustice.'" *Isler v. N.M. Activities Ass'n*, No. CV 10-0009 MV/WPL, 2012 WL 13076780, at *1 (D.N.M. Apr. 24, 2012) (citing *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1360–61 (Fed. Cir. 2008)). "Courts have interpreted this language to support awarding fees to indigent parties who would not otherwise be able to conduct discovery, as well as awarding fees when a party has 'engaged in litigation misconduct and inequitable conduct.'" *Id.* (quoting *Nilssen*, 528 F.3d at 1361).

In *Isler*, the trial court declined to compel payment of fees for an expert who had "never served as an expert, testified, or consulted in 'anything at all'"; "based his opinion on a 'Google' search"; and "did not write his own expert report." 2012 WL 13076780, at *2. In *Nilssen*, the Federal Circuit found the trial court did not abuse its discretion in declining to award fees where the party seeking fees filed a complaint asserting twenty-six patents before withdrawing fifteen of those patents and committing inequitable conduct before the Patent and Trademark Office. 528 F.3d at 1360. These types of litigation abuses are a far cry from the criticisms Defendants raise as to Mr. Cho's rebuttal report.

The Court does not find that the expertise of Mr. Cho, who is a licensed attorney in South Korea, was so clearly lacking or that Mr. Cho's decision to address a corporate veil-piercing theory was so patently unreasonable that "manifest injustice" would result from requiring Defendants to pay for his time spent complying with their request for a deposition.

Defendants also argue that, even if they are compelled to pay, they should not have to pay all of the costs and fees Plastronics seeks because they are not reasonable. (Dkt. No. 362 at 4–6.)

First, Defendants argue that they should not have to pay for Mr. Cho's full travel expenses to and from the United States because it was unreasonable for Plastronics to retain a Korean law expert who actually lives in South Korea. (*Id.* at 5–6.) The Court disagrees.

Defendants also argue that Mr. Cho's invoice does not make it clear that the time for which he invoiced does not include "time spent consulting with Plastronics' counsel," which is unrecoverable. (*Id.* at 5 (citing *Script*, 2016 WL 6649721, at *7).) Plastronics' responds to this argument by providing a declaration of Mr. Cho in which he declares that his preparations detailed in his invoice on March 24–26, 2019 occurred outside the presence of Plastronics' counsel. (Dkt. No. 373-2 ¶¶ 7–9.) The Court is satisfied with this representation and finds that this time is recoverable.

However, Mr. Cho's declaration is conspicuously silent on his time entry for March 18, 2019, which is described in his invoice as "Draft depo questions for depo preparation." (Dkt. No. 352-1 at 4; *see also* Dkt. No. 373-2.) Indeed, Plastronics does nothing to rebut Defendants argument that this March 18 entry "appears to be a description of time Mr. Cho spent drafting questions for Ms. Kim's deposition—held the same day—as opposed to preparing for his own deposition." (Dkt. No. 362.) In light of the vagueness of this entry and Plastronics' failure to clarify it in any way, the Court finds that Plastronics has failed to meet its burden as the movant to show that this time is recoverable. This time is therefore excluded.

Defendants also criticize Plastronics attempt to recover "$3,114.42 spent on a certified transcript, video, and check interpreter," arguing that "[t]here is no basis for recovery of such costs under Rule 26." (Dkt. No. 362 at 6; *see also* Dkt. No. 352-1 at 5.) The Court agrees. Rule 26 requires a party seeking discovery to "pay *the expert* a reasonable fee for time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(E)(i) (emphasis added). It does not provide for the recovery

of other costs associated with taking a deposition of the expert. *See Script*, 2016 WL 6649721, at *2 ("[T]he party who deposes an expert must pay a reasonable fee for the *expert's time* spent in the deposition." (emphasis added)). These other costs should likewise be excluded.

Finally, Defendants argue that if they are ordered to pay Mr. Cho's fees that payment should be offset by $7,488 in fees for time spent by their own expert, Ms. Kim, in preparation for her deposition, which have not been paid. (Dkt. No. 362 at 6; *see also* 362-1.) The Court finds that these fees are reasonable and compensable under Rule 26. These fees should therefore be offset against Plastronics' award of fees.

Defendants are therefore **ORDERED** to pay Plastronics the amount of the fees invoiced by Mr. Cho less the time entry for March 18, 2019 and less the amount of Ms. Kim's fees.

## IX. Conclusion

For the reasons set forth herein, Defendants' Renewed motion for Judgment as a Matter of Law (Dkt. No. 349) is **DENIED**. Plastronics' Renewed Motion for JMOL on Defendants' Royalty Counterclaim or Alternatively, Motion for New Trial (Subject to Remittitur) (Dkt. No. 353) is also **DENIED**. Plastronics' Verified Motion to Amend Judgement or for New Trial (Dkt. No. 351) is **DENIED**. Plastronics' Motion for Attorneys' Fees (Dkt. No. 355) is **DENIED**. Defendants' Motion for Attorneys' Fees Under 35 U.S.C. § 285 (Dkt. No. 350) is also **DENIED**. Defendants' Motion for Bill of Costs (Dkt. No. 354) is **GRANTED**, and Plastronics' Motion for Bill of Costs (Dkt. No. 356) is **DENIED**. Finally, Plastronics' Motion to Compel Payment of Unpaid Expenses in Connection with Defendants' Deposition of Plaintiff's Expert Witness Won H. Cho (Dkt. No. 352) is **GRANTED-IN-PART** and **DENIED-IN-PART** as specified above.

**So ORDERED and SIGNED this 20th day of March, 2020.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE